UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **NAHID AHMADPOUR** | ) | |
| | ) | |
| | ) | **Chapter 7** |
| | ) | **Case No. 18-11248** |
| _____ | ) | |
| | | |
| **NATIONWIDE REGISTRY** | ) | |
| | ) | |
|     **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Adversary No.  18-00039** |
| | ) | |
| **NAHID AHMADPOUR** | ) | |
| | ) | |
|     **Defendant** | ) | |

<u>**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**</u>

COMES NOW the Plaintiff, Nationwide Registry and Security, Ltd. ("NRS"), and in support of its Motion for Summary Judgment against the Debtor, Nahid Ahmadpour ("Ahmadpour"), states as follows:

<u>**Indisputable Facts and Procedural History**</u>

This matter has a long and torturous history expanding over a period of **ten (10) years** and now **seven (7) separate bankruptcy proceedings**. The following are indisputable facts conclusively established by the pleadings in this Adversary Proceeding and/or the filings and orders of the actions in the state court and other bankruptcy courts:

1.    During the month of October 2006, Ahmadpour wrote a total of $268,150 in bad checks on her Chevy Chase bank account to various casinos in Nevada.  On November 9, 2006, while represented by counsel, Ahmadpour entered into a Plea Agreement to an Amended

Information admitting that she was guilty of "DRAWING AND PASSING A CHECK WITHOUT SUFFICIENT FUNDS IN DRAWEE BANK WITH INTENT TO DEFRAUD" and was found guilty of the crimes. A true and accurate copy of the Plea Agreement and Amended Information is attached as **Exhibit A.** Comp. ¶ 5, Ans. ¶ 5.

2.      On January 17, 2008, NRS obtained a judgment in the Fairfax Circuit Court (Case No. 2007-14478) against Nahid Ahmadpour, in the principal sum of $80,000 with interest thereon at the rate of 18% per annum from October 10, 2005, until paid, and attorney's fees of $16,000. The judgment was based upon a portion of the bad checks referenced above that were written by Ahmadpour on her Chevy Chase Bank account between October 8, 2005 and October 10, 2005, all of which drafts were dishonored by the bank. The Order of the Circuit Court, a copy of which is attached as **Exhibit B**, made an express finding that the debt was incurred as a result of the Debtor's fraud. Comp. ¶ 4, Ans. ¶ 4.

3.      **Bankruptcy Case No. 1**: After NRS obtained its judgment, Ahmadpour filed her first Chapter 7 proceeding in the Virginia Bankruptcy Court, Case No. 08-13766-BFK. Ahmadpour purposefully chose not to list NRS as a creditor in that bankruptcy filing. As Judge Mitchell found, she declined to list NRS because she was in "fear that doing so would adversely impact her probation and restitution plan on the criminal charge." Memorandum Opinion and Order, January 8, 2010, footnote 2, page 2, attached as **Exhibit C**; Transcript August 12, 2009 attached as **Exhibit D**; Comp. ¶ 6, Ans. ¶ 6.

4.      After NRS obtained its judgment, Ahmadpour moved to reopen Case No. 08-13766-BFK to include the debt of NRS and argued that the time for filing an objection to dischargeability had lapsed. Per the Order of Judge Mitchell of the Virginia Bankruptcy Court (Exhibit C), the Court ruled that the debt of NRS had not been discharged and specifically ruled that either NRS or

Ahmadpour could seek to (a) litigate the dischargeability of the judgment debt before the state court or (b) bring an adversary proceeding in the bankruptcy court to obtain such a determination.

5.    That has been accomplished; the Order of the Fairfax County Circuit Court (Exhibit B), made an express finding that the debt was incurred as a result of the Debtor's fraud. Comp. ¶ 4, Ans. ¶ 4.

6.    NRS thereafter sought to recover its debt against Ahmadpour in the state court.  As part of those efforts, through Debtor's Interrogatories, NRS discovered that Ahmadpour had transferred her solely-owned hair salon business, HEMETAF, Inc., into the name of her husband, Youri Beitdashtoo, and her solely owned home, located 4054 - 41st Street, McLean, Virginia, into joint names with her Husband as tenants by the entireties.  Comp. ¶ 7, Ans. ¶ 7.

7.    NRS thereafter filed two additional actions in the state court:

–Cir. Ct. Case No. 2009-17377 was filed on December 4, 2009;

–Cir. Ct. Case No. 2010-15001 was filed on October 25, 2010, and sought to set aside the transfer by Ahmadpour of her interest in the real property known as 4054–41st Street, North, McLean, Virginia (the "Property") to Beitdashtoo and herself as tenants by the entirety in a further effort to make herself judgment proof.

Comp. ¶ 8, Ans. ¶ 8.

8.    Trial was conducted in Case No. 2009-17377 in the Circuit Court on October 18, 2010, consistent with Judge Mitchell's Order, with the state court finding that Ahmadpour's transfer of her stock in HEMETAF was fraudulent as to NRS; the state court therefore set the transfer aside, and awarded NRS $15,000 in attorney's fees.  A copy of the state court's Order is attached as **Exhibit E**.  Ahmadpour, who was represented by counsel in the proceedings, did not make any claims in the trial and/or in her pleadings that the NRS debt was discharged or dischargeable.

9.    NRS proceeded to levy on the stock with the intent to sell it and apply the proceeds to the judgment.  At that point, Ahmadpour and Beitdashtoo entered into a Settlement Agreement

("Agreement") dated July 27, 2011. Consistent with said Agreement, on September 16, 2011, an Order was entered in Cir. Ct. Case No. 2010-15001 removing it from the active docket with leave to reinstate it in the event Ahmadpour and Beitdashtoo failed to comply with the terms of the Settlement Agreement. Conditioned specifically and expressly upon Ahmadpour and Beitdashtoo's compliance with the terms of the Agreement, NRS agreed to accept approximately 50% of the debt then owed to it expressly conditioned upon Ahmadpour and Beitdashtoo listing the McLean home for sale at the price recommended by their realtor so that the home could be promptly sold and the amount agreed upon paid out of the proceeds of sale. The payment itself was secured by a Deed of Trust executed by both Ahmadpour and Beitdashtoo. Agmt. ¶'s 1, 2, 3. In the Agreement, Ahmadpour and Beitdashtoo expressly represented that the realtor had recommended that the list price be $1,499,000. The Agreement further provided that counsel for NRS would be able to communicate directly with the listing realtor to confirm compliance with the same. Agmt. ¶ 4. The Agreement also expressly provided that if Debtor did not comply with the same, NRS's acceptance of $91,000 in full satisfaction of its judgment was "null and void and no longer of any force and effect" and expressly provided that NRS would have the right to collect "the full amount due and owing to it." It was further provided that the Settlement Agreement was not a substitution, novation, accord and satisfaction and/or release of the judgment. Agmt. ¶ 9. A copy of the Agreement is attached as **Exhibit F**; a copy of the Fairfax Circuit Court Order of September 16, 2011 is attached as **Exhibit G**.

10.     On August 4, 2011, in accordance with the Agreement and the Deed of Trust, NRS gave notice to Ahmadpour and Beitdashtoo that they were in default of the Agreement for misrepresenting that the realtor had recommended a list price of $1,499,000. **Exhibit H**.

11.     Ahmadpour and Beitdashtoo failed to timely cure their default rendering the Agreement null and void. Accordingly, NRS renewed its collection efforts, including instituting

foreclosure proceedings on the McLean home, scheduling the sale for September 23, 2011.  A copy of the foreclosure notice is attached as **Exhibit I**.

12.     **Bankruptcy Case No. 2.**  Continuing with their efforts to avoid the foreclosure sale, on September 13, 2011, Beitdashtoo filed a Chapter 13 bankruptcy case, Case No. 11-16702, which ultimately was converted to a Chapter 7 proceeding. On July 12, 2012, the Virginia Bankruptcy Court entered an Order modifying the automatic stay expressly providing that both the pending foreclosure and Cir. Ct. Case No. 2010-15001 could proceed.  A copy of the referenced Order is attached as **Exhibit J**; Comp. ¶ 9, Ans. ¶ 9.

13.     **Bankruptcy Case No. 3**: In a further effort to avoid the foreclosure, on November 1, 2011, Ahmadpour filed her second bankruptcy case, this time a Chapter 13 bankruptcy case, No. 11-17929.  That case was dismissed on March 19, 2012 as a bad faith filing. Specifically, the Court found that "instead of using her disposable income for the purpose of repaying her creditors in a Chapter 13 Plan, the Debtor spent inordinately large sums of money at various casinos during the course of this case."  A copy of the March 19, 2012 Order is attached as **Exhibit K**; Comp. ¶ 9, Ans. ¶ 9.

14.     Fairfax Circuit Court Case No. 2010-15001 was subsequently reinstated on the active docket of the state court and scheduled for trial on August 27, 2012.  Comp. ¶ 10, Ans. ¶ 10.

15.     **Bankruptcy Case No. 4**: In yet another effort to avoid the NRS's collection efforts, on August 16, 2012, just days before the scheduled trial, Ahmadpour filed yet another Chapter 13 bankruptcy proceeding in the Virginia Bankruptcy Court, Case No. 2012-15026, the third such filing in less than a year.   Because of her previous filing, the automatic stay was only in effect for 30 days unless extended by the court upon motion of the debtor.  Continuing with her efforts to avoid the payment of the judgment, Ahmadpour filed such a motion, but the request was denied, the Court

finding that the filing was in "bad faith."  The underlying bankruptcy case was dismissed by Order entered June 6, 2013.  Comp. ¶ 10, Ans. ¶ 10.

16.    **Bankruptcy Cases No. 5 and 6**: On October 31, 2012, Beitdashtoo filed yet another bankruptcy proceeding, this time in the U. S. Bankruptcy Court for the District of Columbia, Case No.  No. 12-00722.  Beitdashtoo used the location of his Wife's business in D.C. as the purported basis for his filing in that jurisdiction.  Beitdashtoo also filed the parties sixth (6th) bankruptcy case, also in D.C., a Chapter 7 proceeding for HEMETAF, Case No. 12-00232. Comp. ¶ 10, Ans. ¶ 10.

17.    As a result of the aforesaid filings, on January 22, 2013, the Fairfax Circuit Court entered an Order staying the state court action.  Comp. ¶ 10, Ans. ¶ 10.

18.    By Order entered in Beitdashtoo's D. C. Chapter 13 case on January 16, 2013, he was

denied a discharge because of the previous filings in Virginia.  Comp. ¶ 10, Ans. ¶ 10.

19.    After Beitdashtoo's Chapter 13 case in D.C. ran its course and all stays related thereto lapsed, NRS again moved to reinstate Fairfax Circuit Court Case No. 2010-15001 on the docket. Over objections of Ahmadpour and Beitdashtoo, the Circuit Court reinstated the matter on the docket and scheduled it for trial on February 12, 2018.  Comp. ¶ 10, Ans. ¶ 10.

20.    In yet another effort to stop the trial, on December 12, 2017, Beitdashtoo filed what he styled as a Motion to Reopen Case No. 11-16702-BFK claiming that the state court action could not proceed as it was in violation of the discharge injunction.  NRS filed its objection thereto.  On January 25, 2018, the Virginia Bankruptcy Court issued its opinion on the Motion, ruling in pertinent part that the Virginia state court action seeking to set aside the transfer of Ahmadpour's residence to avoid collection could proceed.  A copy of that Order is attached as **Exhibit L.** Comp. ¶ 10, Ans. ¶ 10.

21.    **Bankruptcy Case No 7**: In yet another effort to avoid the trial in the state court, Ahmadpour filed the instant Chapter 7 proceedings on January 30, 2018, using a family member's address in Maryland as her address so that she could file an action in this jurisdiction. Comp. ¶ 10, Ans. ¶ 10.

## ARGUMENT

Summary judgment may be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When considering a motion for summary judgment, a court "must consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant." *Humboldt Express*, *Inc*. *v*. *The Wise Co*. *(In re Apex Express Corp*.*)* 190 F.3d 624**,** 633 (4th Cir. 1999).   The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. at 322-23.  However, the non-moving party "'may not rely merely on allegations or denials in [its] own pleading' but must 'set out specific facts showing a genuine issue for trial.'" *Anderson, supra at 248.*

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Hence, to withstand summary judgment, the non-moving party must produce competent evidence sufficient to reveal a genuine issue of material fact. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). "Neither conclusory allegations nor the production of a mere scintilla of evidence in support of a non-moving party's case suffices to forestall summary judgment." *Hash v. Johnson*, 2012 U.S. Dist. LEXIS 25483, at *24-25 (W.D. Va. Feb. 28, 2012). Under these standards, summary judgment must be granted as sought herein.

## Count I

As a result of Debtor's bad faith and intentional omission of the debt owed to NRS in her first Chapter 7 filing, she is barred from claiming that the debt is dischargeable in these proceedings pursuant to 11 USC §523(a)(3); *Samuel v. Baitcher*, 781 F. 2d 1529 (11th Cir. 1986); *In re Gugliada*, 20 B.R. 524 (Bankr. S.D. N.Y. 1982).

## Counts II and III

11 U.S.C. §523(a)(2)(A), provides that a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud" is not dischargeable in bankruptcy. There simply is no disputing that the debt of NRS is of the kind specified in §523(a)(2)(A). There is no dispute that the debt owed to NRS was incurred by Ahmadpour as part of a series of criminal acts: passing over $268,000 in bad checks. Ahmadpour plead guilty to that criminal act, admitting that she passed the subject checks with an intent to defraud. The Fairfax County Circuit Court heard evidence in the matter and made a specific finding that the judgment was based upon Ahmadpour's fraudulent conduct. No matter Ahmadpour's contentions to the contrary, the record establishes the fraud.

The finding of the Fairfax Circuit Court likewise binds Ahmadpour. First, Judge Mitchell specifically ruled that by failing to list NRS:

> Moreover, by failing to list the creditor, the debtor effectively waives the exclusive jurisdiction of the bankruptcy court to determine the dischargeability of the debt,
> and that issue may be determined in a non-bankruptcy court having jurisdiction to adjudicate or enforce the debt. Mitchell Opinion 1/08/2010 p. 3.

Secondly, even absent Judge Mitchell's ruling, the same result would obtain. The law is clear that collateral estoppel is applicable to dischargeability proceedings. *Grogan v. Garner,* 498 U.S. 279, 285, n. 11, 111 S.Ct. 654, 658, n. 11, 112 L.Ed.2d 755, 763 n. 11 (1991) ("We now clarify

that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."). *See also In re Ansari,* 113 F.3d 17 (4th Cir. 1997), *cert. denied,* ___ U.S. ___, 118 S.Ct. 298, 139 L.Ed.2d 230 (1997)   (Fourth Circuit reaffirmed the holding in *Grogan* that "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.")  In applying the principles of collateral estoppel, the 4th Circuit held that bankruptcy courts must look to the law of the state in which the judgment was rendered to determine whether  state law would give the judgment preclusive effect. *Sartin v. Macik,* 535 F.3d 284, 287 (4th Cir.2008).  *Ansari*, *supra*, recognized the Virginia Supreme Court's decision in *Trans-Dulles Center, Inc. v. Sharma,* 252 Va. 19, 20, 472 S.E.2d 274 (1996), as the setting forth Virginia state law defining the elements of collateral estoppel:

> For collateral estoppel to apply, the parties to the two proceedings, or their privies, must be the same; the factual issue sought to be litigated actually must have been litigated in the prior action and must have been essential to the prior judgment; and the prior action must have resulted in a valid, final judgment against the party sought to be precluded in the present action.

In that case, *Trans-Dulles*, the landlord, had obtained a default judgment against the tenant in a previous unlawful detainer action filed in the general district court claiming the tenant had breached its lease.  The tenant, who had been personally served with the summons for unlawful detainer, failed to appear. On the return date, the landlord presented testimonial evidence and exhibits and the district court entered judgment in favor of the landlord against the tenant.  *Trans-Dulles* filed a second action in the circuit court seeking recovery of rent accrued after the default judgment, attorney's fees and costs. The tenant appeared and denied that the landlord was entitled to further recovery under the lease. The Virginia circuit court applied the doctrine of collateral estoppel and ruled that the issue of the tenant's liability under the lease had been determined in the previous district court proceedings and entered judgment in favor of the landlord. Subsequently, the court

granted the tenant's motion for reconsideration, vacated the earlier order and entered an order in favor of the tenant, ruling that a default judgment does not actually litigate issues for the purposes of collateral estoppel.

The Virginia Supreme Court reversed, finding that Virginia law does not support a blanket exemption from the application of collateral estoppel in the case of a default judgment. The Virginia Supreme Court went on to hold that it was clear that the requirements for application of the doctrine had been established: the parties in the two actions were the same; the district court action resulted in a valid, final judgment against the tenant; liability for rent and other charges, including attorney's fees, was actually litigated in the prior action because testimonial and documentary evidence was presented *ex parte* in the district court hearing; and the tenant's personal liability was essential to the district court judgment. 252 Va. 23-24.

*Ansari, surpra*, was an action brought by Reza Pahlavi, the son and heir of the former Shah of Iran, and his corporation, Medina Development Company against Pahlavi's former financial adviser, Ahmad Ali Massoud Ansari in the Circuit Court of Fairfax County, Virginia. Pahlavi claimed that Ansari had committed fraud and breached his fiduciary duties and sought an accounting and damages resulting therefrom. After the parties engaged in discovery, the court issued an order finding that Ansari did act as a fiduciary for Pahlavi and referred the case to a commissioner for an accounting. The parties continued to engage in discovery and the Commissioner held numerous hearings. However, Ansari's dilatory tactics stalled any accounting. Eventually the state court issued an opinion letter in which it found that Ansari had willfully disregarded multiple discovery orders and entered a default judgment for Pahlavi. The state court referred the case back to a commissioner for a calculation of compensatory damages; in doing so, the court ordered that all of the allegations in Pahlavi's complaint be taken as true. Ultimately, the Circuit Court entered a final judgment awarding Phalavi $7,277,425.56 in compensatory damages and $2,000,000 in punitive damages.

One month after the entry of the final judgment, Ansari filed bankruptcy.  Pahlavi filed a Complaint objecting to dischargeability of the judgment.  The bankruptcy court granted Pahlavi summary judgment as to the compensatory damages finding that the default judgment established that Ansari's debt to Pahlavi arose from fraud or defalcation, which Ansari committed while acting as a fiduciary to Pahlavi and was thus nondischargeable under 11 U.S.C. § 523(a)(4).

On appeal to the Fourth Circuit, Ansari argued that findings during the damages phase of the state court litigation could not be used to foreclose litigation as to the dischargeability of the judgment.  The Fourth Circuit rejected that contention, noting that prior to the default, multiple depositions were taken, many documents exchanged and the court and commissioner held numerous hearings in which Ansari appeared in person or by counsel.  The default occurred only when Ansari refused to comply with discovery orders.  The Court went on to opine:

> Moreover, even if the state court in this case had heard no evidence of fraud or defalcation before entering its default judgment against Ansari, the court's subsequent consideration and findings of punitive damages would certainly suffice for collateral estoppel purposes. The court awarded punitive damages to Pahlavi after finding "proof of misconduct or actual malice or such recklessness or negligence as to evince a conscious disregard of the rights of others." The state court's holding under this standard clearly includes the lesser finding of defalcation.

*See also In re Bane*, 236 B.R. 352 (Bankr. W.D.Va. 1999) (state court action for fraudulent conversion in which defendant never appeared but during which plaintiff put on evidence of fraudulent conversion and for punitive damages; the bankruptcy court found that "In order to find punitive damages, the issue of fraudulent conversion had to be litigated and determined in favor of [plaintiff]. Thus, all of the factors set forth in *TransDulles* for application of collateral estoppel exist and, following *Ansari* and *Grogan,* the state court judgment must be given collateral estoppel effect.")

Nothing in the Answer filed by Ahmadpour actually disputes the fact that the debt was incurred as a result of fraud. Instead, she engages in the practice of "throwing things against the wall and seeing if anything sticks" in the form of frivolous Affirmative Defenses. None of those defenses have a good faith basis in the law or the facts–nor does Debtor actually assert any facts that would support the same. It is yet another attempt by Debtor to delay and avoid the inevitable, and to cause the Plaintiff to incur additional attorney's fees and costs.

## Conclusion

For the foregoing reason, the Plaintiff, Nationwide Registry and Security Ltd., prays that this Court enter summary judgment on its behalf, finding that the debt of the Debtor/Defendant, Nahid Ahmadpour, be found to be nondischargeable; for its cost, including reasonable attorney's fees incurred herein; and for such other and further relief as to this Court seems just and proper.

**Nationwide Registry & Security Ltd.**
*By Counsel*

By    /s/ Robert L. Vaughn, Jr.
Fitzgerald Lewis, Md. Bar No. 16912
Robert L. Vaughn, Jr., Va Bar No. 10633
11490 Commerce Park Drive, Suite 510
Reston, Virginia 20191
(703) 689-2100 Telephone
(703) 471-6496 Facsimile
Email: rvaughn@oconnorandvaughn.com
*Counsel for NRS*

**<u>Certificate of Service</u>**

I hereby certify that on the 13th day of July, 2018, a copy of the foregoing Motion for Summary Judgment was served via the Court's CM/ECF system to:

John D. Pels, Esq.
4845 Rugby Avenue, Third Floor
Bethesda, Maryland 20814
*Counsel for Debtor*

Kevin D. Judd, Esq.
601 Pennsylvania Ave., N.W.
Suite 900-South Bldg.
Washington, DC 20004
*Counsel for Debtor*

Laura J. Margulies, Trustee
6205 Executive Blvd.
Rockville, MD 20852

/s/ Robert L. Vaughn, Jr.
Fitzgerald Lewis, Md. Bar No. 16912
Robert L. Vaughn, Jr., Va Bar No. 10633
11490 Commerce Park Drive, Suite 510
Reston, Virginia 20191
(703) 689-2100 Telephone
(703) 471-6496 Facsimile
Email: rvaughn@oconnorandvaughn.com

1   **GMEM**
    DAVID ROGER
2   DISTRICT ATTORNEY
    Nevada Bar #002781
3   BRIAN J. KOCHEVAR
    Chief Deputy District Attorney
4   Nevada Bar #005691
    200 Lewis Avenue
5   Las Vegas, NV 89155-2212
    (702) 671-2500
6   Attorney for Plaintiff

FILED IN OPEN COURT

NOV 1 4 2006

SHIRLEY PARRAGUIRRE, CLERK

BY_____

DEPUTY

7                           DISTRICT COURT

8                      CLARK COUNTY, NEVADA

9   THE STATE OF NEVADA,                    )
                                            )
10              Plaintiff,                  )
                                            )
11      -vs-                                )   CASE NO:   C226058
                                            )   DEPT NO:   VI
12  NAHID AHMADPOUR,                        )
    #1997946                                )
13                                          )
                Defendant.                  )
14  _____)

15                  GUILTY PLEA AGREEMENT

16      I hereby agree to plead guilty to: **DRAWING AND PASSING A CHECK
17  WITHOUT SUFFICIENT FUNDS IN DRAWEE BANK WITH INTENT TO
18  DEFRAUD, PRESUMPTIONS OF INTENT TO DEFRAUD (Gross Misdemeanor -
19  NRS 205.130, 205.132)**, as more fully alleged in the charging document attached hereto as
20  Exhibit "1".

21      My decision to plead guilty is based upon the plea agreement in this case which is as
22  follows:

23      Both parties agree to stipulate to five (5) years probation. Defendant agrees to pay
24  restitution in the amount of $268,150.00. If defendant pays full restitution while on
25  probation, the State will not oppose withdrawl of guilty plea and dismissal of case. Both
26  parties agree to stipulate to guilty plea in abstentia.

27  //
28  //



CW(Pltf) Def.
Date
Judge
Case #

P:\WPDOCS\INF\609\60947203.doc

## CONSEQUENCES OF THE PLEA

I understand that by pleading guilty I admit the facts which support all the elements of the offense(s) to which I now plead as set forth in Exhibit "1".

I understand that as a consequence of my plea of guilty I may be imprisoned in the Clark County Detention Center for a period of not more than one (1) year and that I may be fined up to $2,000.00. I understand that the law requires me to pay an Administrative Assessment Fee.

I understand that, if appropriate, I will be ordered to make restitution to the victim of the offense(s) to which I am pleading guilty and to the victim of any related offense which is being dismissed or not prosecuted pursuant to this agreement. I will also be ordered to reimburse the State of Nevada for any expenses related to my extradition, if any.

I understand that I am eligible for probation for the offense to which I am pleading guilty. I understand that, except as otherwise provided by statute, the question of whether I receive probation is in the discretion of the sentencing judge.

I understand that if more than one sentence of imprisonment is imposed and I am eligible to serve the sentences concurrently, the sentencing judge has the discretion to order the sentences served concurrently or consecutively.

I also understand that information regarding charges not filed, dismissed charges, or charges to be dismissed pursuant to this agreement may be considered by the judge at sentencing.

I have not been promised or guaranteed any particular sentence by anyone. I know that my sentence is to be determined by the Court within the limits prescribed by statute.

I understand that if my attorney or the State of Nevada or both recommend any specific punishment to the Court, the Court is not obligated to accept the recommendation.

I understand that if the State of Nevada has agreed to recommend or stipulate a particular sentence or has agreed not to present argument regarding the sentence, or agreed not to oppose a particular sentence, or has agreed to disposition as a gross misdemeanor when the offense could have been treated as a felony, such agreement is contingent upon my

2

1    appearance in court on the initial sentencing date (and any subsequent dates if the sentencing
2    is continued). I understand that if I fail to appear for the scheduled sentencing date or I
3    commit a new criminal offense prior to sentencing the State of Nevada would regain the full
4    right to argue for any lawful sentence.

5        I understand if the offense(s) to which I am pleading guilty to was committed while I
6    was incarcerated on another charge or while I was on probation or parole that I am not
7    eligible for credit for time served toward the instant offense(s).

8        I understand that as a consequence of my plea of guilty, if I am not a citizen of the
9    United States, I may, in addition to other consequences provided for by federal law, be
10   removed, deported, excluded from entry into the United States or denied naturalization.

11       I understand that the Division of Parole and Probation will prepare a report for the
12   sentencing judge prior to sentencing. This report will include matters relevant to the issue of
13   sentencing, including my criminal history. This report may contain hearsay information
14   regarding my background and criminal history. My attorney and I will each have the
15   opportunity to comment on the information contained in the report at the time of sentencing.
16   Unless the District Attorney has specifically agreed otherwise, then the District Attorney
17   may also comment on this report.

18                         WAIVER OF RIGHTS

19       By entering my plea of guilty, I understand that I am waiving and forever giving up
20   the following rights and privileges:

21       1. The constitutional privilege against self-incrimination, including the right to refuse
22   to testify at trial, in which event the prosecution would not be allowed to comment to the
23   jury about my refusal to testify.

24       2. The constitutional right to a speedy and public trial by an impartial jury, free of
25   excessive pretrial publicity prejudicial to the defense, at which trial I would be entitled to the
26   assistance of an attorney, either appointed or retained. At trial the State would bear the
27   burden of proving beyond a reasonable doubt each element of the offense charged.

28   //

                                    3

3.  The constitutional right to confront and cross-examine any witnesses who would testify against me.

4.  The constitutional right to subpoena witnesses to testify on my behalf.

5.  The constitutional right to testify in my own defense.

6.  The right to appeal the conviction, with the assistance of an attorney, either appointed or retained, unless the appeal is based upon reasonable constitutional jurisdictional or other grounds that challenge the legality of the proceedings and except as otherwise provided in subsection 3 of NRS 174.035.

## VOLUNTARINESS OF PLEA

I have discussed the elements of all of the original charge(s) against me with my attorney and I understand the nature of the charge(s) against me.

I understand that the State would have to prove each element of the charge(s) against me at trial.

I have discussed with my attorney any possible defenses, defense strategies and circumstances which might be in my favor.

All of the foregoing elements, consequences, rights, and waiver of rights have been thoroughly explained to me by my attorney.

I believe that pleading guilty and accepting this plea bargain is in my best interest, and that a trial would be contrary to my best interest.

I am signing this agreement voluntarily, after consultation with my attorney, and I am not acting under duress or coercion or by virtue of any promises of leniency, except for those set forth in this agreement.

I am not now under the influence of any intoxicating liquor, a controlled substance or other drug which would in any manner impair my ability to comprehend or understand this agreement or the proceedings surrounding my entry of this plea.

4

1    My attorney has answered all my questions regarding this guilty plea agreement and

2    its consequences to my satisfaction and I am satisfied with the services provided by my

3    attorney.

4         DATED this ___ day of October, 2006.

5                                                    N. _____
                                                     NAHID AHMADPOUR
6                                                    Defendant   Sharon L. Myles
                                                                 Notary Public, District of Columbia
7                                                                My Commission Expires 2-14-2010

8    AGREED TO BY:                                   NAHID AHMADPOUR

9                                                    _____
     _____                                8th      NOVEMBER    2006
10   Brian J. Kochevar                               _____
     Chief Deputy District Attorney
11   Nevada Bar #005691                              My commission expires          2-14-2010

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF COUNSEL:

I, the undersigned, as the attorney for the Defendant named herein and as an officer of the court hereby certify that:

1. I have fully explained to the Defendant the allegations contained in the charge(s) to which guilty pleas are being entered.

2. I have advised the Defendant of the penalties for each charge and the restitution that the Defendant may be ordered to pay.

3. All pleas of guilty offered by the Defendant pursuant to this agreement are consistent with the facts known to me and are made with my advice to the Defendant.

4. To the best of my knowledge and belief, the Defendant

    a. Is competent and understands the charges and the consequences of pleading guilty as provided in this agreement.

    b. Executed this agreement and will enter all guilty pleas pursuant hereto voluntarily.

    c. Was not under the influence of intoxicating liquor, a controlled substance or other drug at the time I consulted with the defendant as certified in paragraphs 1 and 2 above.

Dated: This _____ day of October, 2006.

ATTORNEY FOR DEFENDANT

rj

6

1 | AINF
DAVID ROGER
2 | Clark County District Attorney
Nevada Bar #002781
3 | BRIAN J. KOCHEVAR
Chief Deputy District Attorney
4 | Nevada Bar #005691
200 Lewis Avenue
5 | Las Vegas, Nevada 89155-2212
(702) 671-2500
6 | Attorney for Plaintiff

DISTRICT COURT
7 | CLARK COUNTY, NEVADA

8

9

10 | THE STATE OF NEVADA,

11 | Plaintiff,                     Case No.   C226058
Dept No.   VI
12 | vs.

13 | NAHID AHMADPOUR,
#1997946                          AMENDED
14 | Defendant.           INFORMATION
15

16 | STATE OF NEVADA )
) ss:
17 | COUNTY OF CLARK )

18 | DAVID ROGER, District Attorney within and for the County of Clark, State of

19 | Nevada, in the name and by the authority of the State of Nevada, informs the Court:

20 | That NAHID AHMADPOUR, the Defendant(s) above named, having committed the

21 | crime of **DRAWING AND PASSING A CHECK WITHOUT SUFFICIENT FUNDS IN**

22 | **DRAWEE BANK WITH INTENT TO DEFRAUD, PRESUMPTIONS OF INTENT**

23 | **TO DEFRAUD (Gross Misdemeanor - NRS 205.130, 205.132)**, on or between October 8,

24 | 2005, and October 24, 2005, within the County of Clark, State of Nevada, contrary to the

25 | form, force and effect of statutes in such cases made and provided, and against the peace and

26 | dignity of the State of Nevada, did willfully, unlawfully, and with intent to defraud, draw

27 | and pass a check to obtain cash and/or gaming chips, drawn upon Chevy Chase Bank,

28 |

*EXHIBIT "1"*

| | Date | Account No. | Made Payable To | In The Amount Of | Check No. |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | 10/08/05 | 1963233921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703338 |
| 3 | | | | | |
| 4 | 10/08/05 | 1963233921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703340 |
| 5 | | | | | |
| 6 | 10/08/05 | 1963233921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703348 |
| 7 | | | | | |
| 8 | | | | | |
| 9 | 10/09/05 | 1963233921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $10,000.00 | 5541148? |
| 10 | | | | | |
| 11 | 10/09/05 | 1963233921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703398 |
| 12 | | | | | |
| 13 | | | | | |
| 14 | 10/09/05 | 1963233921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703398 |
| 15 | | | | | |
| 16 | 10/09/05 | 1963233921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703409 |
| 17 | | | | | |
| 18 | | | | | |
| 19 | 10/09/05 | 1963233921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703420 |
| 20 | | | | | |
| 21 | 10/09/05 | 1963233921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703426 |
| 22 | | | | | |
| 23 | | | | | |
| 24 | 10/09/05 | 1963233921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703427 |
| 25 | | | | | |
| 26 | | | | | |
| 27 | | | | | |
| 28 | | | | | |

P:\WPDOC\TD\P609\9924 2502.DOC

2

| | Date | Account No. | Made Payable To | In The Amount Of | Check No. |
|---|---|---|---|---|---|
| 1 | 10/09/05 | 1963233921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703433 |
| 2 | | | | | |
| 3 | | | | | |
| 4 | 10/10/05 | 1963233921 | BELLAGIO HOTEL AND CASINO, at 3600 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $7,000.00 | 10076264 |
| 5 | | | | | |
| 6 | 10/10/05 | 1963233921 | BELLAGIO HOTEL AND CASINO, at 3600 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $5,000.00 | 10076314 |
| 7 | | | | | |
| 8 | 10/10/05 | 1963233921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $10,000.00 | 57411561 |
| 9 | | | | | |
| 10 | | | | | |
| 11 | 10/10/05 | 1963233921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $10,000.00 | 57411568 |
| 12 | | | | | |
| 13 | 10/20/05 | 1963233921 | BELLAGIO HOTEL AND CASINO, at 3600 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $4,000.00 | 10080446 |
| 14 | | | | | |
| 15 | | | | | |
| 16 | 10/22/05 | 1963233921 | BELLAGIO HOTEL AND CASINO, at 3600 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $5,000.00 | 10081653 |
| 17 | | | | | |
| 18 | 10/22/05 | 1963233921 | BELLAGIO HOTEL AND CASINO, at 3600 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $10,000.00 | 10081666 |
| 19 | | | | | |
| 20 | | | | | |
| 21 | 10/22/05 | 1063233921 | BELLAGIO HOTEL AND CASINO, at 3600 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $20,000.00 | 10081765 |
| 22 | | | | | |
| 23 | | | | | |
| 24 | 10/22/05 | 1963233921 | BELLAGIO HOTEL AND CASINO, at 3600 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $15,000.00 | 10081789 |
| 25 | | | | | |
| 26 | | | | | |
| 27 | | | | | |
| 28 | | | | | |

3

|  | Date | Account No. | Made Payable To | In The Amount Of | Check No. |
|---|---|---|---|---|---|
| 1 | 10/24/05 | 1963215273 | ALADDIN RESORT AND CASINO, at 3667 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $25,000.00 | 242281 |
| 2 |  |  |  |  |  |
| 3 |  |  |  |  |  |
| 4 | 10/24/05 | 1963215273 | ALADDIN RESORT AND CASINO, at 3667 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $25,000.00 | 242324 |
| 5 |  |  |  |  |  |
| 6 | 10/24/05 | 1963215273 | ALADDIN RESORT AND CASINO, at 3667 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $15,000.00 | 242619 |
| 7 |  |  |  |  |  |
| 8 |  |  |  |  |  |

9  when the said Defendant had insufficient money, property, or credit with the drawee of the

10  instrument to pay it in full upon its presentation.

11
12                                             DAVID ROGER
                                            DISTRICT ATTORNEY
                                            Nevada Bar #002781
13
14                              BY
15                                            BRIAN J. KOCHEVAR
                                            Chief Deputy District Attorney
16                                            Nevada Bar #005691

17

18

19

20

21

22

23

24

25

26
     DA#06F09472X/tj
27   DAO EV#0605018090
     D & P NSF CHECKS - F
28   (TK6)

VIRGINIA:

## IN THE CIRCUIT COURT OF THE COUNTY OF FAIRFAX

NATIONWIDE REGISTRY & SECURITY, *
LTD.
                                                    *

        PLAINTIFF
                                                    *

v.
                                                    *      Case No. 2007-14478

NAHID AHMADPOUR
                                                    *

        DEFENDANT

## DEFAULT JUDGMENT O R D E R

THIS MATTER came on for hearing upon the Motion of the Plaintiff, Nationwide registry & Security, Ltd., for default judgment against the Defendant, Nahid Ahmadpour; and

IT APPEARING TO THE COURT that the Defendant, Nahid Ahmadpour, was properly served with the Complaint filed herein and is subject to personal jurisdiction of this Court; that more than twenty-one (21) days has elapsed since service of process upon the Defendant and more than ten (10) days has elapsed since notice was provided to her pursuant to Va. Code § 8.01-296(2)(b); that the Defendant has not filed any responsive pleadings or otherwise responded to said Complaint and is therefore in default; and that judgment by default should be entered herein on behalf of the Plaintiff; it is, therefore,

ADJUDGED, ORDERED AND DECREED as follows:

1. That the Defendant, Nahid Ahmadpour, was properly served with the Complaint filed herein and is subject to personal jurisdiction in this Court.

2. That more than twenty-one (21) days has elapsed since service of process upon the Defendant. Nahid Ahmadpour, and more than ten (10) days has elapsed since notice was provided


EXHIBIT
B

to her pursuant to Va. Code § 8.01-296(2)(b), the Defendant having not filed any responsive

pleadings or otherwise responded to said Complaint, and is in default.

     3. That the Defendant's actions herein constituted actual fraud.

     4. That the Plaintiff, Nationwide registry & Security, Ltd., be and hereby is, awarded

judgment against the Defendant, Nahid Ahmadpour, in the amount of Eighty Thousand and No/100

Dollars ($80,000); punitive damages in the amount of $___∅___; with interest on said sums at

the rate of eighteen percent (18%) per annum from October 10, 2005, until paid in full; reasonable

attorney's fees in the amount of $ _16,000.00_____, and its costs in this behalf expended.

     ENTERED THIS ___17th___ day of January, 2008.

                               JUDGE

I ASK FOR THIS:

O'CONNOR & VAUGHN LLC
11490 Commerce Park Drive, Suite 510
Reston, Virginia 20191
(703) 689-2100 Telephone
(703) 471-6296 Facsimile

By _____
     Robert L. Vaughn, Jr.
     VSB No. 20633
     *Counsel for Plaintiff*

A COPY TESTE.
JOHN T. FREY, CLERK

BY: _Letta M Whilal_
     Deputy Clerk
Date: _113108_
Original retained in the office of
the Clerk of the Circuit Court of
Fairfax County Virginia

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                          )
                                                )
NAHID AHMADPOUR                          )      Case No. 08-13766-SSM
                                                )      Chapter 7
            Debtor                       )

**MEMORANDUM OPINION AND ORDER**

A hearing was held on January 5, 2010, on a motion by Nationwide Registry & Security,

Ltd. ("Nationwide"), to strike the debtor's attempt to amend her list of creditors and for an award

of sanctions. Nationwide and the debtor were each represented by counsel.[1]  Because amended

schedules were never actually filed, there is nothing in literal terms for the court to strike.

Additionally—and because in any event the filing of amended schedules would have no effect on

the dischargeability of Nationwide's claim—the court will not award sanctions. Whether the

judgment Nationwide is seeking to collect from the debtor is excepted from discharge is not

properly before the court at this time but may be decided either by the state court in connection

with proceedings to enforce the judgment or by this court if either the debtor or the creditor files

an adversary proceeding to determine dischargeability.

Background

Nahid Ahmadpour ("the debtor") filed a voluntary petition in this court on June 27, 2008,

for relief under chapter 7 of the Bankruptcy Code. The case was noticed to creditors as a "no

---

[1] The debtor's counsel of record is Jeffrey Sherman, Esquire. At the hearing, however, the
debtor was represented by Tommy Andrews, Jr., Esquire, who has not yet filed a written notice of
appearance, but should promptly do so.

1



asset" case, and no bar date was set for filing proofs of claim. The chapter 7 trustee filed a report

of no distribution on August 27, 2008, and the debtor was granted a discharge on October 6,

2008. The case was then closed on October 10, 2008.

Although Nationwide had obtained a default judgment against the debtor on January 17,

2008—some six months prior to the filing of the bankruptcy petition—in the amount of

$80,000.00 with interest at 18% from October 10, 2005, plus $16,000.00 in attorney's fees,

Nationwide was not listed as a creditor and was not given notice of the commencement of the

case by the clerk. According to the present motion, Nationwide is the assignee of the Las Vegas

Hilton Hotel and Casino, which had a claim against the debtor for $80,000 in bad checks written

in October 2005. On November 9, 2006, the debtor pleaded guilty in Nevada state court to a

criminal information charging her with drawing and passing checks in the amount of $211,000

without sufficient funds in the drawee bank with intent to defraud, including $80,000 in checks

to the Las Vegas Hilton Hotel and Casino. Although the schedules filed in her case listed

$496,683 in unsecured debts, Las Vegas Hilton Hotel and Casino was not listed as a creditor and

was not mailed notice of the commencement of the case.[2]

## Discussion

### A

A chapter 7 discharge discharges a debtor from "all" prepetition debts except those

specified in § 523(a), Bankruptcy Code. § 727(b), Bankruptcy Code. Among the debts excluded

from discharge are debts held by creditors who are not listed in sufficient time to file a timely

---

[2] Counsel for the debtor stated at the hearing that the creditor was not listed based on the advice of her former attorney, who expressed fear that doing so would adversely impact her probation and restitution plan on the criminal charge.

2

proof of claim, or, if their debts would otherwise fall within the discharge exceptions in §§
523(a)(2), (4), or (6) for fraud, fiduciary defalcation, larceny, embezzlement, or willful and
malicious injury, in time to file a timely complaint to determine dischargeability. *Id.* §
523(a)(3)(A), (B). In addition to being unlisted, the creditor must not have had actual knowledge
of the bankruptcy case in time to file a timely proof of claim or timely dischargeability
complaint, as appropriate. *Id.*

In a "no asset" case in which no bar date has been set for filing proofs of claim, an
unlisted debt is discharged—even if the creditor was intentionally omitted—unless the debt is of
the kind specified in § 523(a)(2), (4), or (6), Bankruptcy Code. *Horizon Aviation of Va., Inc. v.
Alexander*, 296 B.R. 380 (E.D. Va. 2003). With respect to a *listed* creditor, only the Bankruptcy
Court may make a determination as to whether a debt is of the kind specified in § 523(a)(2), (4),
or (6), and a complaint seeking such a determination must be filed within 60 days of the first date
set for the meeting of creditors. § 523(c), Bankruptcy Code; Fed.R.Bankr.P. 4007(c). But a
complaint to determine the dischargeability of an unlisted debt may be filed "at any time."
Fed.R.Bankr.P. 4007(b). Moreover, by failing to list the creditor, the debtor effectively waives
the exclusive jurisdiction of the bankruptcy court to determine the dischargeability of the debt,
and that issue may be determined in a non-bankruptcy court having jurisdiction to adjudicate or
enforce the debt. *In re Toussaint*, 259 B.R. 96, 100 (Bankr. E.D. N.C. 2000).

In any event, merely amending the schedules after the bar date has passed for filing a
proof of claim or dischargeability complaint has no effect on the dischargeability of the debt:
either the debt was discharged or it wasn't, and amending the schedules cannot change the result.
*In re Woolard*, 190 B.R. 70, 74 (Bankr. E.D. Va. 1995). At one time, the local rules of this

3

court allowed the filing of amended schedules in a closed case in which there was no distribution
to creditors upon notice to the creditor being added and the filing of an affidavit that the
omission of the creditor was not intentional. Former Loc.Bankr.R. 1009-1(C). That provision,
however, was repealed effective December 1, 2009, and had effectively been a dead letter for
many years. The purpose of the provision, as this court has previously noted, was to address the
"practical difficulty . . . that many collection attorneys, and a significant number of state court
judges, assume that a debt not listed on a debtor's schedules is *per se* excepted from the debtor's
discharge, and that the best evidence the debt was discharged is a copy of the discharge order
and the debtor's filed schedules listing the debt." *Woolard*, 190 B.R. at 75. The rule thus
allowed the filing of amended schedules in a closed case as a "pragmatic response" to those
concerns. *Id.* In recent years, however, the reported opinions of this court have consistently
affirmed that merely amending the schedules has no legal effect, *see, e.g.*, *In re Carberry*, 186
B.R. 401 (Bankr. E.D. Va. 1995), and the rule permitting amended schedules to be filed in a
closed case was ultimately repealed as accomplishing no useful purpose as well as being
inconsistent with Rule 1009(a), Federal Rules of Bankruptcy Procedure, which allows schedules
to be amended by the debtor "as a matter of course at any time *before the case is closed.*"
(emphasis added).

## B.

Because no bar date was set for filing proofs of claim, Nationwide's judgment is not
excepted from discharge under § 523(a)(3)(A) even if the debtor's omission of Nationwide or the
Hilton Hotel or both was intentional. Whether it is excepted from discharge under

4

§ 523(a)(3)(B) depends on whether the debt is of the type specified in § 523(a)(2), (4) or (6),

Bankruptcy Code. As this court explained in *Woolard*:

> If there is a dispute as to whether the debt falls within one of the excepted
> categories, the state court has both the jurisdiction and the duty to decide the
> issue. Alternatively, either the debtors or the creditor could request that the
> bankruptcy case be reopened for the purpose of filing an adversary complaint in
> this court to obtain an authoritative determination as to whether the debt has been
> discharged.

190 B.R. at 76.

C.

Only brief discussion is required with respect to Nationwide's request for sanctions. The

only authority cited by Nationwide is Rule 9011, which allows a court to impose sanctions

against an attorney or unrepresented party who, in "*presenting to the court* (whether by signing,

filing, submitting, or later advocating) a petition, pleading, written motion or other paper"

(emphasis added) does so for an improper purpose or urges legal positions not warranted by

existing law or by a nonfrivolous argument for the extension, modification or reversal of existing

law or the establishment of new law, or makes factual contentions that are without evidentiary

support. Fed.R.Bankr.P. 9011(b). Because the rule addresses only pleadings and papers

"presented to" the court, it has no applicability to pleadings and papers that are served on a party

but, for whatever reason, are never filed with the court. But even if that were not the case, the

present motion, to the extent it seeks an award of sanctions, fails to comply with Rule 9011(c),

which requires (a) that a request for sanctions be made *separately* from other motions or requests

and (b) that it be not be filed with the court, unless within 21 days after service on the opposing

party, the party fails to withdraw the challenged pleading or paper. Fed.R.Bankr.P.

9011(c)(1)(A).

5

ORDER

For the foregoing reasons, it is

**ORDERED:**

1. The motion to strike is denied as moot, since the debtor has not—and may not—file

amended schedules in the closed case.

2. The motion for sanctions is denied.

3. The entry of this order is without prejudice to the right of either the movant or the

debtor (a) to litigate the dischargeability of the judgment debt before the state court or (b) to

bring an adversary proceeding in this court to obtain such a determination.

4. The clerk will mail a copy of this order, or give electronic notice of its entry, to the

parties listed below.

Date: Jan 8 2010

Alexandria, Virginia

/s/ Stephen S. Mitchell

Stephen S. Mitchell
United States Bankruptcy Judge

Entered on Docket: January 8, 2010

Copies to:

Robert L. Vaughn, Jr., Esquire
O'Connor & Vaughn, LLC
11490 Commerce Park Dr., Suite 510
Reston, VA 20191
Counsel for Nationwide Registry & Security, Ltd.

Tommy Andrews, Jr., Esquire
Tommy Andrews, Jr., P.C.
122 N. Alfred Street
Alexandria, VA 22314
Counsel for the debtor

6

Nahid Ahmadpour                    Nationwide Registry & Security v. Ahmadpour
August 12, 2009                               Case No. 2007-14478

Page 1

V I R G I N I A:

        IN THE CIRCUIT COURT OF FAIRFAX COUNTY

--------------------------------x

NATIONWIDE REGISTRY & SECURITY,

        Plaintiff,

-vs-                            Case No.

NAHID AHMADPOUR,                2007-14478

        Defendant.

--------------------------------x

                    Wednesday, August 12, 2009

                    Reston, Virginia


                    PARTIAL TRANSCRIPT

                    -- EXCERPT --

                DEPOSITION OF NAHID AHMADPOUR

        The deposition of NAHID AHMADPOUR was

taken on Wednesday, August 12, 2009, commencing

at 10:04 a.m., at the law offices of O'Connor &

Vaughn, LLC, 11490 Commerce Park Drive, before

CHERYL NICHOLSON, CLR, Stenotype Reporter and

Notary Public in and for the Commonwealth of

Virginia.

**EXHIBIT**
D

Page 2

1   APPEARANCES:

2

3        On behalf of the Plaintiff:

4        ROBERT L. VAUGHN, JR., ESQ.

5        O'Connor & Vaughn, LLC

6        11490 Commerce Park Drive

7        Suite 510

8        Reston, Virginia 20191

9        703.689.2100

10

11

12

13

14

15

16

17

18

19

20

21

22

Page 3

```
 1                    C O N T E N T S

 2

 3              EXAMINATION OF NAHID AHMADPOUR

 4     BY MR. VAUGHN ......... 4

 5

 6                    E X H I B I T S

 7              (Retained by counsel)

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22
```

Page 4

1                    P R O C E E D I N G S

2                    NAHID AHMADPOUR,

3        having been duly sworn, testified as follows:

4            EXAMINATION ON BEHALF OF PLAINTIFF

5

6        Q.   Did you tell your bankruptcy counsel

7    not to list my client as a creditor?

8        A.   No.

9        Q.   Why was my client not listed as a

10   creditor?

11       A.   Because he said -- because I had to

12   deal with the government and you guys not

13   supposed to come after me for five years.

14       Q.   Sounds like you made a conscious

15   decision not to list my client as a creditor,

16   correct?

17       A.   That's what my attorney suggested me.

18   He said that I'm paying $50, and I settle down

19   with the Nevada cases, and I'm paying off to the

20   government for that.  So everything is settled,

21   like your case is settled.  That's what he said.

22       Q.   So your attorney told you that my

Page 5

1    client should not be listed as a creditor

2    because it was his belief that the matter was

3    resolved with whatever settlement you reached

4    with the Nevada government?

5         A.    That's what my attorney said, yes.

6         Q.    So then a conscious decision was made

7    that you would not list my client as a creditor

8    on your bankruptcy case; is that correct?

9         A.    That's all what my attorney said, yes.

10        Q.    Again, make sure you're answering my

11   question.

12              Was it a conscious decision not to

13   list my client as a creditor on your bankruptcy

14   schedules?

15        A.    Well, this question, I'm sorry. I just

16   not clear what's your question is.

17        Q.    Let me rephrase it.  Did you choose --

18   strike that.

19              Did you intentionally leave my client

20   off the list of creditors?

21        A.    Not me, my attorney doing all these

22   things for me.

Page 6

    1        Q.    On your attorney's advice, you

    2   intentionally left my client off of the list of

    3   creditors in your bankruptcy filings?

    4        A.    I don't know.  I know everything is

    5   there.  I don't know what they did, so.

    6        Q.    All right, ma'am.

    7        A.    My attorney for Nevada case, he did

    8   left them I guess, because I settled down with

    9   them already so.

   10        Q.    Did you have a discussion with your

   11   attorney about whether or not my client should

   12   be listed as a creditor on your bankruptcy

   13   schedules?

   14        A.    What I remember, I put everything in

   15   front of him, because I'm not there, and he took

   16   care of everything.

   17        Q.    That wasn't my question.  You have

   18   already said that you had a discussion with your

   19   attorney.

   20        A.    Right.

   21        Q.    You volunteered that information, that

   22   you had a discussion with your attorney as to

 1   whether or not my client should be listed.

 2        A.    Right.

 3        Q.    You said the discussion was that since

 4   you had settled the matter with the state of

 5   Nevada, that you believe that took care of my

 6   client?

 7        A.    Yes.

 8        Q.    And based upon that understanding, you

 9   made a choice not to list my client as a

10   creditor?

11        A.    Yes.   That's what my attorney

12   suggested.

13        Q.    Have I confused you at all about that

14   question?

15        A.    No.

16        Q.    You understand what I'm asking?

17        A.    Sure.   We didn't put your client

18   because my attorney suggested, since it is

19   settled down already with the Nevada, for five

20   years we could not put it in bankruptcy.

21        Q.    Cannot put it in your bankruptcy.

22   That's what he told you.

Page 8

1         A.    That's what he suggested me, that we

2    don't put that in bankruptcy.

3               (Whereupon, at 12:57 p.m., signature

4    having been waived, the deposition was

5    concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Page 9

```
 1    UNITED STATES OF AMERICA )

 2    COMMONWEALTH OF VIRGINIA )

 3              I, Cheryl Nicholson, the reporter

 4    before whom the foregoing deposition was taken,

 5    do hereby certify that the witness whose

 6    testimony appears in said deposition was sworn

 7    by me; that the testimony of the witness was

 8    taken by me in machine shorthand and thereafter

 9    transcribed at my direction; that said

10    deposition is a true record of the testimony

11    given by said witness; that I am neither counsel

12    for, related to, nor employed by any party to

13    the action in which this deposition was taken;

14    and, further, that I am not a relative or

15    employee of any attorney or counsel employed by

16    any party hereto, or financially or otherwise

17    interested in the outcome of this action.

18    _____

19                    Cheryl Nicholson

20    Notary Public for the Commonwealth of Virginia.

21    Notary Registration Number - 270604

22    My Commission expires July 31, 2012.
```

VIRGINIA:

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

Nationwide Registry & Security Ltd

    Plaintiff/Complainant,

v.

Nahid Ahmadpour, et al

    Defendant.

Chancery/Law No. 2009-17377

## ORDER

This matter came to be heard on the 18th day of October, 20 10 on the Plaintiff(s)/Complainant(s)/Defendant(s)'s motion Complaint to Set Aside

Upon the matters presented to the Court it is hereby

ORDERED as follows:

For the reasons stated from the bench, which are incorporated herein by reference,

(1) The transfer by Defendant Ahmadpour of her 100% interest in HEMETAF, INC., a District of Columbia corporation, to Defendant Youri Bekashtop on or about December 7, 2005 is void and is hereby set aside; Defendant Ahmadpour is deemed to be the 100% owner of HEMETAF, Inc.

(2) Plaintiff is awarded attorneys fees of $15,000

ENTERED this 18 day of October, 20 10.

                  Jue Ney

                  Judge

SEEN and No: objection as to stay of claims real estate & be greg to take no consent

Counsel for Plaintiff/Complainant

SEEN and Objected to for finding that statutory elements were met

Counsel for Defendant   #71167
Adam T. Kandell

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement") is made this $\overline{27th}$ day of July, 2011, by and between **NATIONWIDE REGISTRY & SECURITY LTD. ("NRS")** and **NAHID AHMADPOUR ("Ahmadpour")** and **YOURI BEITDASHTOO** **("Beitdashtoo") (collectively "Defendants").**

### WITNESSETH:

WHEREAS, NRS recovered a judgment against Ahmadpour in the Circuit Court of Fairfax County on January 17, 2008, in the principal sum of $80,000 with interest thereon at the rate of 18% per annum from October 10, 2005, until paid, and attorney's fees, *Nationwide Registry & Security, Ltd. v. Ahmapour*, Case No. 2007-14478 (the "Judgment"); and

WHEREAS, NRS thereafter filed a second action seeking to set aside the transfer of stock in HEMETAF, Inc. by Ahmadpour to Beitdashtoo, *Nationwide Registry & Security, Ltd. v. Ahmapour et al.*, Case No. 2009-17377; and

WHEREAS, on October 18, 2010, the Circuit Court of Fairfax County entered an (the "Second Judgment"), Order setting aside the foregoing transfer and deeming Ahmadpour to be the 100% owner of HEMETAF, Inc., which entity owned and operated Youri's Salon located 1800 I Street, Washington, D.C.; and, which Order also granted NRS attorney fees and costs totaling $7,035.75; and

WHEREAS, NRS filed a third action seeking to set aside a transfer by Ahmadpour to herself and Beitdashtoo, as tenants by the entirety, of an interest in certain real property known as 4054 - 41st Street, North, McLean, Virginia 22101 (the "Property"), *Nationwide Registry & Security, Ltd. v. Ahmapour et al.*, Case No. 2010-15001, which action is presently

EXHIBIT

F

pending in the Circuit Court of Fairfax County (all of the foregoing three cases are hereinafter collectively referred to as the "Litigation"); and

WHEREAS, the stock certificate representing Ahmadpour's interest in HEMETAF, Inc. was turned over to the Fairfax Circuit Court in conjunction with Debtor's Interrogatories conducted by NRS and ultimately sold at public auction by the Sheriff's Office of Fairfax County on June 15, 2011, at which auction, Robert L. Vaughn, Jr., counsel for NRS, was the successful bidder; and

WHEREAS, NRS subsequently took physical possession and control of Youri's Salon and has made arrangements for the liquidation of its assets through Rasmus Auctioneers; and,

WHEREAS, NRS and the Defendants now wish to enter into an arrangement to resolve payment of the Judgment and, upon payment of an agreed sum toward said Judgment, to resolve any and all claims relating and/or pertaining to the Litigation, the Property, HEMETAF, Inc., and Youri's Salon, as well as the release of the Judgment as paid and satisfied, but only upon the conditions hereinafter set forth;

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto do hereby agree as follows:

1.      Conditioned upon Defendants compliance with the terms of this Agreement, NRS agrees to accept payment of the sum of NINETY ONE THOUSAND AND NO/100 DOLLARS ($91,000) to satisfy the Judgment, said amount to be paid from the proceeds of the sale of the Property upon the terms and conditions as hereinafter set forth.

2.      The judgment will be secured by a Deed of Trust against the Property

executed by Ms. Ahmadpour and Mr. Beitdashtoo (hereinafter the NRS Trust), which

Deed of Trust NRS will record among the land records of Fairfax County, Virginia.

3.    The Property is currently listed for sale with ~~Keller Williams Realty~~ (~~Keller~~ Long and Forke

~~Williams Realty~~ Long and Foster or any successor listing agent/broker shall hereinafter be referred to as the

"Realtor") for the sum of $1,499,000, and shall remain continuously on the market for sale

until sold on the following terms and conditions:

(i)    The Realtor shall not be changed without the express written consent

of NRS; any substitute or successive Realtor shall have at least five (5) years

full time experience in the sale of real property in the Fairfax

County/McLean area. The listing agreement shall provide for compensation

to the Realtor in an amount customary for the area in which the property is

located, but in no event, greater than 6%.

(ii)    The Defendants affirmatively represent that the current list price is

within the range recommended by the Realtor, and except as otherwise

specified herein, shall remain within the range recommended by the Realtor

but in no event shall the list price be less than the amount necessary to

payoff the first trust held by Wells Fargo ("Wells Fargo Trust"), the second

trust held by SunTrust ("SunTrust Trust"), the NRS Trust, and the expected

expenses of sale;

(iii)    Subject to the minimum list price set forth above, if the Property

remains unsold after 90 days, the list price shall be reduced by two percent

ATK

(2%). The list price shall continue to be adjusted every ninety (90) days *thereafter, or*

*earlier if the parties so agree,* thereafter by 2% until such time as the Property is sold; *however, the total reduction in price during the 365 day term of this Agreement shall not exceed eight percent (8%)*

(iv)    The Defendants shall have an AFFIRMATIVE obligation to

cooperate fully in all aspects of the listing, showing, sale, and settlement of

the Property, including but not limited to, permitting a lock box and "For

Sale" sign to be placed on or about the Property, maintaining the Property in

an orderly and clean fashion, refraining from taking any actions or making

any omissions which will negatively impact on the showing and sale of the

Property, and shall follow the recommendations of the listing Realtor in

matters relating to the showing of the Property, including, but not limited to,

the arrangement of furnishings, de-cluttering, the lights to be left on, dates

and times for open houses, etc. There shall be no requirement for the making

of an appointment for the showing of the Property, such showing being

permitted any day between the hours of 9:00 a.m. and 9:00 p.m.

(v)    Any written offer to purchase shall be reviewed and responded to

within twenty four (24) hours of presentation to the Defendants. Any offer

which is reasonable as to its terms and conditions shall be accepted. For

purposes of this provision, any offer within ninety-eight percent (98%) of

the then list price which is non-contingent other than upon a home and/or

radon inspection and the buyers obtaining a first trust mortgage loan not to

exceed an eighty percent (80%) loan-to-value ratio and closing within 60

days shall be deemed acceptable.

(vi)    The Defendants shall be solely responsible for, and timely pay, in

full, any and all expenses arising out of or in connection with the Property,

including, but not limited to, the Wells Fargo Trust, the SunTrust Trust, real

estate taxes and assessments, hazard insurance, homeowners/cluster dues,

utilities, repairs, and maintenance.

4.    Within three (3) business days after the execution of this Agreement,

Defendants shall provide written authorization/permission to the Realtor, Wells Fargo and

SunTrust so that Robert L. Vaughn, Jr.,counsel for NRS, may communicate directly with

the Realtor, Wells Fargo and SunTrust to verify compliance with the terms of the

agreement, and shall provide counsel for NRS with true copies of any and all documents

relating to the listing of the Property. Thereafter, within one (1) day of receipt thereof, the

Defendants shall provide counsel for NRS with any and all documents relating to the

listing, showing and/or sale of the Property, including but not limited to, any

amendments/modifications to the listing agreement, correspondence in any fashion with

the Realtor and/or potential purchasers, offers to purchase, and proof of payment of the

obligations set forth in subparagraph 3(vi) above. Emailed copies sent to

rvaughn@oconporandvaughn.com shall be deemed to comply with this provision. In the

event the Realtor, Wells Fargo and/or SunTrust will not honor any authorization for

NRS's counsel to obtain information directly from them, Defendants and/or their counsel

agree to provide the same promptly after a request therefore from counsel for NRS, absent

extraordinary circumstances, prompt shall be deemed to be within one (1) business day of
a request therefore. Until this Agreement has been fully executed, Defendants agree to
keep counsel for NRS informed of an email address where they can be contacted, the
sending of an email to such address being deemed sufficient for a request of information
pursuant to the terms of this Agreement.

5.    Upon execution of this Agreement and the Deed of Trust, NRS shall convey *immediately* AK/

the HEMETAF, Inc. stock to Defendant Ahmadpour and turn over the keys to the salon to
her. Defendants accept the transfer of HEMETAF, Inc./Youri Salon in *"AS IS"*
*condition with no warranties, stipulations, conditions and/or representations of any*
*kind or character whatsoever, express or implied.* Without the express written consent of
NRS, Ms. Ahmadpour is expressly prohibited from transferring any interest in
HEMETAF, Inc. to any third party, including Mr. Beitdashtoo. NRS also will take such
steps as are reasonably necessary to cancel the pending sale/auction of the

HEMETAF/Youri Salon assets by Rasmus Auctioneers. NRS shall also return any files it
possesses that were removed from the business premises, including but not limited to financial records and client lists.

6.    The parties will request that the pending action in Fairfax Circuit Court
be removed from the trial docket pending the payment referenced in paragraph 1 above; if
the court declines to do so, the case would be nonsuited by agreement, *with any claims of*
*the statute of limitations, laches, estoppel, or any similar defense, and/or the refiling of*
*the nonsuited action being expressly waived,* the parties further expressly agreeing that
the subject nonsuit would be treated as a first nonsuit, with any refiled action being deemed
timely filed so long as it is filed within 545 days (one (1) year and six (6) months) from
the date this Agreement is fully executed.

7.    If the Property is not sold and settled within 365 days from the date of the this Agreement is fully executed, or in the event tho Defendants fail to comply any of tho terms and conditions of this Agreemont (inclusive of making the payments set in paragraph 3(vi) above), the agreement of NRS to accept tho sum of $91,000 in full satisfaction of the Judgment shall be null void, and no longer of any force and effect. In that event, NRS shall have any and all remedies available to it under tho laws of the Commonwealth of Virginia and/or the terms of this Agreement, to collect the full amount due and owing to it, it being expressly stipulated, covenanted, warranted and agreed that this Agreement is not a substitution for, novation of, or any in respect a release, accord and/or satisfaction of said Judgment, but only a method of satisfying said Judgment.

8.    Upon payment of the sum of $91,000 in good funds and in compliance with the terms of this Agreement, NRS will promptly record a Certificate of Satisfaction of the NRS Trust among tho land records of Fairfax County, and take such action as may be reasonably necessary to release tho Judgment and Second Judgment. In the event the payment will be made by the settlement agent conducting the closing on tho sale of the Property, NRS agrees to provide directly to the settlement agent a fully executed Certificates of Satisfaction, which said settlement agent shall hold in escrow and record only in conjunction with said sale, further conditioned upon the Defendants providing the settlement agent with authority to disburse the funds due to NRS directly to its counsel.

9.    Solely conditioned upon payment of the sum of $91,000 in full and complete compliance with the terms of this Agreement, and only after said payment, the parties

hereto do hereby forever mutually release and discharge each other, their successors, agents, employees, assigns, and attorneys, none of whom admit any liability, from any and all claims, demands, damages and costs of any kind whatsoever, relating or in any way pertaining to the Litigation, the Property, HEMETAF, Inc., Youri's Salon, and the Judgment.

10.    This Agreement shall be interpreted and construed in accordance with the laws of the Commonwealth of Virginia.

11.    In the event either party is required to institute an action to enforce this Agreement and/or because of a breach of the same, the other party shall be obligated to reimburse the prevailing party for their reasonable attorney's fees and costs incurred.

12.    Invalidation for any reason of any portion of this Agreement shall not cause it to be invalidated in its entirety; any remaining provisions hereof to survive and remain in full force and effect.

13.    The provisions herein shall bind, and the benefits and advantages thereof shall inure to, the respective heirs, executors, administrators, successors and assigns of the parties hereto.

14.    This Agreement contains and constitutes the entire understanding and agreement between the parties with respect to the matters contained herein and cancels and supersedes all previous oral and written negotiations, agreements, commitments, and writings in connection therewith, however, as noted above, it shall not be, and is not, a substitution for, novation of, or any in respect a release, accord and/or satisfaction of said Judgment but only a method of satisfying said Judgment.

15.    None of the parties hereto are relying upon any statement or representation not embodied in this Agreement.

16.    The parties do hereby declare that each has completely read, fully understood, and voluntarily accepted the terms of this Agreement for the purpose of making a full and final compromise, adjustment and settlement of any and all claims, disputes or otherwise, and for the express purpose of precluding forever any further additional claims arising out of the matters herein.

17.    The parties hereto represent, covenant, and warrant that no claim herein has been conveyed, assigned or in any manner transferred, in whole or in part, to any third party; and further expressly represent, covenant, and warrant that they have full authority to execute this Agreement.

18.    Each party certifies that they have had the opportunity to consult with independent counsel selected of its own free will, that it has specifically consulted with said counsel and has been represented by them during the negotiations for and the execution of this Agreement, that each party is satisfied with counsel's advice, and understands this Agreement and its contents and is in agreement with it.

19.    The parties agree to promptly execute (defined herein as not more than three (3) business days of a written request therefore) such other and further documents as are reasonably necessary to effectuate the terms of this Agreement.

20.    The recitals set forth in the beginning of this Agreement shall be deemed contractual in nature and deemed a material hereof.

21.    TIME IS OF THE ESSENCE with regard to any and all terms and conditions of this Agreement.

In WITNESS THEREOF, we have hereunto set our hands and seals.

National Registry & Securities, Ltd.

By_____
Robert L. Vaughn, Jr.
Attorney

7/27/11
Date

7/26/11
Date

7/26/11
Date

Nahid Ahmapour

Youri Beitdashtoo

Adam T. Kronfeld, Witness   7/26/11

**VIRGINIA:**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

NATIONWIDE REGISTRY & SECURITY LTD.

    Plaintiff

v.                                          Case No. 2010-15001

NAHID AHMADPOUR, et al.

    Defendants

## ORDER

THIS MATTER CAME ON TO BE HEARD upon the joint motion of the parties hereto; and

IT APPEARING TO THE COURT, as evidenced by the endorsement of all counsel to this Order, that the parties have reached an Agreement which, if fulfilled, will result in a full and final resolution of this matter and the entry of an order dismissing the same with prejudice, and that in accordance with said Agreement the parties wish to have the matter removed from the active docket of this Court subject to being reinstated if Plaintiff be so advised; and

IT FURTHER APPEARING to the Court that based upon the above agreement of the parties, no further action is required of the Court at this time, it is therefore,

ADJUDGED and ORDERED that this case is resolved and removed from the active docket of this Court. Plaintiff may reinstate the case upon failure of the Defendants, Nahid Ahmadpour and/or Youri Beitdashtoo, to comply with the terms of the subject Agreement and payment of the reinstatement fee.

ENTERED this ___16___ day of ~~August~~ Sept, 2011.

                           ___/5/___

                               JUDGE

**EXHIBIT**

G

WE ASK FOR THIS:

**O'CONNOR & VAUGHN LLC**
11490 Commerce Park Drive, Suite 510
Reston, Virginia 20191
(703) 689-2100 Telephone
(703) 471-6496 Facsimile

By _____
       Robert L. Vaughn, Jr.
       *Counsel for Plaintiff*

**THE DUFF LAW FIRM**
11320 Random Hills Road, Suite 630
Fairfax, Virginia 22030
(703) 591-7475 Telephone
(703) 273-4537 Facsimile

By _____
       Adam T. Kronfeld
       *Counsel for Defendants*

**TROUTMAN SANDERS LLP**
1600 International Drive, Suite 600
McLean, Virginia
(703) 734-4356 Telephone
(703) 734-4340 Facsimile

By _____
       Nicholas SanFilippo
       *Counsel for Wells Fargo*

**THOMPSON McMULLAN, P.C.**
100 Shockhope Slip, 3rd Floor
Richmond, Virginia 23219
(804) 649-7545 Telephone
(804) 780-1813 Facsimile

By _____
       Robert R. Musick
       *Counsel for Suntrust*

WE ASK FOR THIS:

**O'CONNOR & VAUGHN LLC**
11490 Commerce Park Drive, Suite 510
Reston, Virginia 20191
(703) 689-2100 Telephone
(703) 471-6496 Facsimile

By _____

      Robert L. Vaughn, Jr.
      *Counsel for Plaintiff*

**THE DUFF LAW FIRM**
11320 Random Hills Road, Suite 630
Fairfax, Virginia 22030
(703) 591-7475 Telephone
(703) 273-4537 Facsimile

By _____

      Adam T. Kronfeld
      *Counsel for Defendants*

**TROUTMAN SANDERS LLP**
1600 International Drive, Suite 600
McLean, Virginia
(703) 734-4356 Telephone
(703) 734-4340 Facsimile

By _____

      Nicholas SanFilippo
      *Counsel for Wells Fargo*

**THOMPSON McMULLAN, P.C.**
100 Shockhope Slip, 3rd Floor
Richmond, Virginia 23219
(804) 649-7545 Telephone
(804) 780-1813 Facsimile

By _____

      Robert R. Musick
      *Counsel for Suntrust*

**ROSENBERG & ASSOCIATES, LLC**
7910 Woodmont Avenue, Suite 750
Bethesda, Maryland 20814
(301) 907-8000 Telephone
(301) 907-8101 Facsimile

By _____
      Mark D. Meyer
      *Counsel for Commonwealth Trustees LLC*

NRS/Ahmadpour

**From:** rvaughn <rvaughn@oconnorandvaughn.com>

**To:** DIHANYD@aol.com
**Cc:** akronfeld@dufflawfirm.com
**Date:** Thursday, August 04, 2011 04:33 pm
**Subject:** NOTICE OF DEFAULT
**Attachments:**

Pursuant to paragraph 3(ii) of the Settlement Agreement dated July 27, 2011 (the "Agreement"), the Defendants affirmatively represented that the current list price of $1,499,000 was within the range recommended by the Realtor, and further covenanted that the list price would remain in the range recommended by the Realtor.

I have spoken with Ms. Jorgenson, the listing agent, and confirmed that the current list price is not within the range recommended by her. Her recommendation as of this point in time is that the list price be $1,299,000.

Notice is hereby given that you are in default of the terms of the subject Agreement. You have fifteen (15) business days from the date of this Notice to adjust the list price to the recommended amount, to-wit: $1,299,000, and to provide this office with evidence of the same. Your failure to do so will result in the entire amount due to NRS becoming immediately due and payable.

By providing the foregoing notice NRS does not waive any right to immediately claim the subject Agreement to be null and void based upon the misrepresenation that the list price was within the range recommended.

**Robert L. Vaughn, Jr.**
**O'CONNOR & VAUGHN, L.L.C.**
**11490 Commerce Park Drive, Suite 510**
**Reston, VA 20191**
**(703) 689-2100**
**(703) 471-6496 (fax)**

## CONFIDENTIAL

The information contained in this email message is attorney privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the above address.



Fwd: Read: NOTICE OF DEF ' ULT                                                    Page 1 of 1

---

**From:** rvaughn <rvaughn@oconnorandvaughn.com>

**To:** Kaye Valerie <VKaye@oconnorandvaughn.com>

**Cc:**

**Date:** Thursday, August 04, 2011 04:48 pm

**Subject:** Fwd: Read: NOTICE OF DEFAULT

**Attachments:** 📎 (233B)

---

*Robert L. Vaughn, Jr.*
*O'CONNOR & VAUGHN, L.L.C.*
*11490 Commerce Park Drive, Suite 510*
*Reston, VA 20191*
*(703) 689-2100*
*(703) 471-6496 (fax)*

**CONFIDENTIAL**

*The information contained in this email message is attorney privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the above address.*

-----Original Message-----
**From:** Adam Kronfeld [mailto:akronfeld@dufflawfirm.com]
**Sent:** Thursday, August 4, 2011 04:36 PM
**To:** rvaughn@oconnorandvaughn.com
**Subject:** Read: NOTICE OF DEFAULT

Your message

   To: DIHANYD@aol.com
   Cc: akronfeld@dufflawfirm.com
   Subject: NOTICE OF DEFAULT
   Sent: 8/4/2011 4:33 PM

was read on 8/4/2011 4:35 PM.

## NOTICE OF TRUSTEE SALE
### 4054 - 41ˢᵗ Street, North
### McLean, Virginia 22101

In execution of a Deed of Trust dated August 2, 2011, recorded in the Clerk's Office of the Circuit Court of the County Of Fairfax, as Instrument No. 2011-029643.001, securing the payment of the principal sum of $91,000 under a Settlement Agreement, default having occurred under the terms of said Settlement Agreement and, at the request of the holder of said Settlement Agreement, the undersigned Trustee will offer for sale at public auction at the main entrance of the Fairfax Circuit Court, 4110 Chain Bridge Road, Fairfax, VA 22030 on

### September 23, 2011 at 11:00 o'clock a.m.

the property described in said Deed of Trust, located at the above address and briefly described as: LOT SIXTY-SIX (66), SECTION FOUR (4), CHAIN BRIDGE FOREST, with improvements thereon. TERMS OF SALE: CASH; the property will sold "AS IS," WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND AND SUBJECT TO conditions, restrictions, reservations, easements, rights of way, and all other matters of record taking priority over the Deed of Trust; a deposit of $10,000.00, or 10% of the sales price, whichever is lower, cash or certified check, will be required at the time of sale with settlement within fifteen (15) days from the date of sale. In the event of default by the successful bidder, the entire deposit shall be forfeited and applied to the costs and expenses of sale and Trustee's fee. The successful bidder will be required to execute and deliver to the Trustee a memorandum of sale at the conclusion of bidding. Additional terms may be announced at the time of sale. Pursuant to the Federal Fair Debt Collection Practices Act, we advise you that this firm is acting as a debt collector attempting to collect the indebtedness referred to herein and any information we obtain will be used for that purpose. This is a communication from a debt collector.    ROBERT L. VAUGHN, JR., Trustee.   FOR INFORMATION CONTACT: Robert L. Vaughn, Jr. 11490 Commerce Park Drive, Suite 510, Reston, Virginia 20191, 703-689-2100. Call Between 9:00 a.m. and 4:00 p.m.



UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: | ) |
| | ) |
| YOURI BEITDASHTOO | ) |
| | ) Case No. 11-16702-BFK |
| | ) Chapter 7 (Converted Chapter 13) |
| | ) |
| _____ | ) |
| | ) |
| NATIONWIDE REGISTRY & | ) |
| SECURITY LTD. | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| YOURI BEITDASHTOO | ) |
| | ) |
| and | ) |
| | ) |
| DONALD F. KING, TRUSTEE | ) |
| | ) |
| Defendants | ) |
| _____ | ) |

## ORDER GRANTING RELIEF FROM THE STAY

Upon consideration of the Motion of Nationwide Registry & Security, Ltd, ("NRS"), to lift
the automatic stay; it is, therefore

**ORDERED** that the automatic stay imposed by 11 U.S.C. § 362 is modified to permit NRS
to enforce its rights under that certain Deed of Trust against the property known as Lot Sixty-six
(66), Section Four (4), Chain Bridge Forest, also known as 4054 - 41st Street, North, McLean,
Virginia 22101 (the "Property") dated August 2, 2011, and recorded as Instrument No. 2011-
029643.001 in Deed Book 21787 at Page 1887 in the Clerk's Office of the Circuit Court of the
County of Fairfax,("NRS Trust"); and it is further,



*Robert L. Vaughn, Jr., VSB 20633*
*11490 Commerce Park Drive, Suite 510*
*Reston, VA 20191*
*(703) 689-2100*

**ORDERED** that the automatic stay imposed by 11 U.S.C. § 362 is modified to permit NRS

to pursue its pending action against the Debtor and his wife, Nahid Ahmadpour in the Circuit Court

of Fairfax County, Virginia, Case No. Case No. 2010-15001.

Dated: **Jul 12 2012** , 2012.

## /s/ Brian F. Kenney

BRIAN F. KENNEY
UNITED STATES BANKRUPTCY JUDGE

Entered on Docket: **7/12/2012 sas**

**I ASK FOR THIS:**

**O'CONNOR & VAUGHN LLC**
11490 Commerce Park Drive, Suite 510
Reston, Virginia 20191
(703) 689-2100 Telephone
(703) 471-6496 Facsimile

By    /s/ Robert L. Vaughn, Jr.
      Robert L. Vaughn, Jr., VSB # 20633
      *Counsel for NRS*

   /s/ Nathan A. Fisher    *[with permission via email of 7/7/12 to Robert L. Vaughn]*
Nathan A. Fisher, Esq.
8977 Chain Bridge Road, #2
Fairfax, Virginia 22030
*Counsel for Debtor*

**ODIN FELDMAN & PITTLEMAN, P.C.**
9302 Lee Highway, Suite 1100
Fairfax, Virginia 22030
(703) 218-2134 Telephone
(703) 218-2160 Facsimile

By    /s/ James W. Reynolds *[via email dated 6/29/2012]*
      James W. Reynolds, VSB #33226
      *Counsel for Donald F. King, Chap. 7 Trustee*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                    )
                                          )
NAHID AHMADPOUR                           )      Case No. 11-17929-BFK
                                          )      Chapter 13
                Debtor                    )

**ORDER DENYING CONFIRMATION AND DISMISSING CASE**

A hearing was held March 14, 2012, on the Objection (Docket No. 44) to Confirmation

filed by Nationwide Registry & Security, Ltd. ("NRS"). The Debtor did not appear at the

hearing, but was present by counsel. NRS was also present by counsel. The Chapter 13 Trustee,

Thomas P. Gorman, Esquire, was also present at the hearing.

The burden is on the Debtor to demonstrate that all of the requirements for confirmation

of a Chapter 13 plan have been satisfied. *See, e.g.*, *Tillman v. Lombard*, 156 B.R. 156, 158 (E.D.

Va. 1993) (holding that "the debtor bears the burden of demonstrating that a proposed Chapter

13 plan meets the requirements of 11 U.S.C. § 1325, including the good faith requirement of

subsection (a)(3)"); *In re Allen*, No. 7-98-01521-WSR-13, 1999 Bankr. LEXIS 1766, at *30

(Bankr. W.D. Va. Sept. 9, 1999) (holding that the debtor "has the obligation to propose a plan

which can be confirmed by the Court under the requirements of the Bankruptcy Code"). This the

Debtor has failed to do. Further, upon consideration of the representations made by the parties at

the hearing, and the arguments of counsel, the Court finds that the Debtor is not proceeding with

the present case in good faith, in violation of 11 U.S.C. §§ 1325(a)(3) and (a)(7). Specifically,

the Court finds that, instead of using her disposable income for the purpose of repaying her

creditors in a Chapter 13 plan, the Debtor has spent inordinately large sums of money at various

Page 1 of 2



casinos during the course of this case. Accordingly, for the reasons stated on the record, it is

### ORDERED:

1. Confirmation of the Debtor's Plan is denied without leave to amend.

2. The case is dismissed.

3. The clerk will mail a copy of this order, or give electronic notice of its entry, to the

parties listed below.

Date: **Mar 19 2012**                              **/s/ Brian F. Kenney**

Alexandria, Virginia

Brian F. Kenney
United States Bankruptcy Judge

Copies to:

Entered on Docket: March 19, 2012

Nahid Ahmadpour
4054 41 Street, N.
Mc Lean, VA 22101
Debtor

Nathan A. Fisher, Esquire
3977 Chain Bridge Road, #2
Fairfax, VA 22030
Counsel for the Debtor

Robert L. Vaughn, Esquire
O'Connor & Vaughn LLC
11490 Commerce Park Drive, Suite 510
Reston, Virginia 20191
Counsel for Nationwide Registry & Security, Ltd.

Thomas P. Gorman, Esquire
300 N. Washington St. Ste. 400
Alexandria, VA 22314
Chapter 13 Trustee

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF VIRGINIA
#### Alexandria Division

In re: )
)
YOURI BEITDASHTOO, )  Case No. 11-16702-BFK
)  Chapter 7
Debtor. )
_____ )

### ORDER GRANTING
### DEBTOR'S MOTION TO REOPEN CASE,
### GRANTING IN PART AND DENYING IN PART DEBTOR'S
### MOTION FOR SANCTIONS AND SETTING HEARING

This matter is before the Court on the Debtor's Motion to Reopen this bankruptcy case

and for sanctions against National Registry and Security, Ltd. ("NRS"). Docket No. 172. NRS

has filed an Opposition to the Debtor's Motion. Docket No. 174. The Court heard the arguments

of the parties on January 2, 2018. For the reasons stated below, the Court will grant the Debtor's

Motion to Reopen. The Court will grant in part and will deny in part the Debtor's Motion for

Sanctions and will set a hearing.

### Uncontested Facts

Although the parties disagree on many facts, the procedural history of this matter is not

genuinely disputed.

*A. NRS's Judgment Against Ms. Ahmadpour and the Transfer of the Property.*

1.      On September 11, 2005, Ms. Nahid Ahmadpour transferred her interest in 4054

41 St. N., McLean, VA 22101 ("the Property"), from herself to herself and her husband, the

Debtor, as tenants by the entirety.



1

2.      In January 2008, NRS obtained a judgment in the Circuit Court of Fairfax County against the Debtor's wife, Ms. Ahmadpour, in the amount of $80,000.00, plus interest at 18% per annum from October 10, 2005, until paid, and attorney's fees of $16,000.00 ("the Judgment").

3.      The Judgment arose out of certain unpaid drafts for gambling debts in Las Vegas in October 2005. Ms. Ahmadpour pled guilty in Nevada to criminal charges related to the unpaid drafts.

*B. NRS's Fraudulent Transfer Lawsuit and the Settlement Agreement.*

4.      On October 22, 2010, NRS filed a lawsuit against Ms. Ahmadpour and the Debtor in the Circuit Court of Fairfax County (Case No. 2010-15001). Motion, Ex. A.

5.      The lawsuit sought to avoid the transfer as a fraudulent transfer under Va. Code § 55-80. *Id.* at 4.

6.      The lawsuit sought in the alternative a money judgment against both of the Defendants in the amount of $80,000.00, plus interest at 18% per annum from October 10, 2005, until paid, attorney's fees of $31,000.00, and additional attorney's fees pursuant to Va. Code § 55-82.1. *Id*.

7.      In July 2011, the parties entered into a Settlement Agreement, under which a portion of the Judgment would be secured by a Deed of Trust against the Property.

*C. Ms. Ahmadpour's First Bankruptcy Case (No. 11-17929-BFK).*

8.      On November 1, 2011, Ms. Ahmadpour filed a Voluntary Petition under Chapter 13 with this Court. Case No. 11-17929-BFK, Docket No. 1.

2

9.    After the Court denied confirmation of two plans (Docket Nos. 41 and 46), it
dismissed Ms. Ahmadpour's bankruptcy case on March 19, 2012. *Id.*, Docket No. 46.[1]

*D.  Mr. Beitdashtoo's First Bankruptcy Case (No. 11-16702-BFK).*

10.   Mr. Beitdashtoo, the Debtor in this case, filed a Voluntary Petition under Chapter
13 with this Court on September 13, 2011.

11.   After a number of denials of confirmation and the filing of Amended Plans
(Docket Nos. 47, 72, 73, 80), the case was converted to Chapter 7 at the Debtor's request on
March 27, 2012. Docket Nos. 82, 84.

12.   NRS filed a Motion to Dismiss the Chapter 7 case. Docket No. 91. The Court
denied this Motion on May 22, 2012. Docket No. 122.

13.   On July 12, 2012, the Court granted relief from the automatic stay to NRS to
pursue: (a) a foreclosure on its Deed of Trust against the Property; and (b) the fraudulent transfer
lawsuit in Fairfax County (Case No. 2010-15001). Docket No. 131 ("the Relief from Stay
Order").

14.   The Chapter 7 Trustee filed a Notice of Abandonment with respect to the
Property. Docket No. 148. No party in interest objected to the Trustee's Notice of Abandonment.
The Property, therefore, was deemed abandoned. *See* Bankruptcy Rule 6007 (requiring any
objection to abandonment to be filed within 14 days of a notice of abandonment).

15.   The Debtor was granted a discharge under Chapter 7. Docket No. 137.

---

[1]  The Court found that Ms. Ahmadpour was not proceeding in good faith because "instead of using her disposable
income for the purpose of repaying her creditors in a Chapter 13 Plan, the Debtor has spent inordinately large sums
of money at various casinos during the course of the case." Case No. 11-17929-BFK, Docket No. 46, at 1-2.

3

16.    The case was closed after approval of the Trustee's Final Report. Docket Nos. 169, 170.

*E. Ms. Ahmadpour's Second Bankruptcy Case (No. 12-15026-BFK).*

17.    On August 16, 2012, Ms. Ahmadpour filed a second Voluntary Petition under Chapter 13 with this Court. Case No. 12-15026-BFK, Docket No. 1.

18.    Ms. Ahmadpour moved to extend the automatic stay pursuant to Bankruptcy Code Section 362(c)(3), as her prior case was dismissed within one year of her second bankruptcy filing. *Id.*, Docket No. 5.

19.    The Court denied Ms. Ahmadpour's Motion to Extend the Automatic Stay on September 24, 2012. *Id.*, Docket No. 31.

20.    After denying confirmation of a series of Chapter 13 plans (Docket Nos. 50, 66, 100), the Court dismissed the case on June 6, 2013. Docket No. 104.

*F. Mr. Beitdashtoo's Second Bankruptcy Case (No. 12-00722).*

21.    After receiving his discharge from this Court, and shortly after the Court denied Ms. Ahmadpour's Motion to Extend the Automatic Stay on September 24, 2012, the Debtor filed a Voluntary Petition under Chapter 13 in the District of Columbia on October 31, 2012. Case No. 12-00722, Docket No. 1.

22.    The Bankruptcy Court in D.C. entered an Order stating that the Debtor was not eligible for a discharge because he had been discharged in his Virginia case within the previous four years, pursuant to Bankruptcy Code Section 1328(f). *Id.*, Docket No. 35.

4

23.     The Debtor obtained confirmation of a Chapter 13 plan, under which he paid

approximately $90,000.00 to NRS, thereby satisfying NRS's secured Deed of Trust claim against

the Property in full.

   *G.  NRS's Motion to Reinstate its Lawsuit and the Debtor's
        Motion to Reopen and for Sanctions.*

24.     Ms. Ahmadpour continues to owe a substantial balance on the debt, owing to the

18% percent interest rate and the passage of time since the entry of the Judgment against her,

plus attorney's fees.

25.     The Debtor, Mr. Beitdashtoo, is not personally obligated on the remaining balance

of the debt.

26.     NRS filed a Motion to Reinstate the fraudulent transfer lawsuit in Fairfax County

on August 8, 2017. Motion to Reopen, Ex. B.

27.     In its Motion to Reinstate the Fairfax action, NRS did not distinguish between the

relief sought in its Complaint - avoidance of the alleged fraudulent transfer and the alternative

relief of a money judgment against both Defendants - and sought to reinstate the lawsuit on all of

its claims. *Id.* at 4.

28.     The Debtor filed an Opposition to the Motion to Reinstate in the Fairfax action,

arguing that his discharge in this case bars any further relief. *Id.* Ex. C.

29.     The Debtor also filed his Motion to Reopen and for Sanctions with this Court on

December 12, 2012. Docket No. 172.

30.     NRS filed an Objection to the Debtor's Motion to Reopen. Docket No. 174.

31.     The Court heard the arguments of the parties on January 2, 2018.

5

### Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this district on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2) (matters concerning the administration of the estate).

### I.  Reopening a Closed Bankruptcy Case – Section 350(b).

Bankruptcy Code Section 350(b) provides that a closed case may be reopened "to administer assets, to accord relief to the debtor or for other cause." 11 U.S.C. § 350(b). A decision whether or not to reopen a bankruptcy case is committed to the Court's discretion. *Hawkins v. Landmark Fin. Co.,* 727 F.2d 324, 326 (4th Cir. 1984). The Court generally should avoid ruling on the underlying merits of a dispute in connection with a motion to reopen. *In re Conner,* 2014 WL 879639, at *1 (Bankr. W.D. Va. 2014); *In re Jones*, 367 B.R. 564, 567 (Bankr. E.D. Va. 2007). The reopening of a case does not afford the parties any substantive relief; rather, reopening provides an opportunity for further relief. *Horizon Aviation of Virginia, Inc. v. Alexander (In re Alexander),* 296 B.R. 380, 382 (E.D. Va. 2003); In re Clary, 440 B.R. 122, 123 (Bankr. E.D. Va. 2010) (quoting *Reid v. Richardson*, 304 F.2d 351, 355 (4th Cir. 1962)). On the other hand, the Court should not reopen a case where no relief can be accorded to the parties and reopening would be a futile act. *In re Conner,* 2014 WL 879639, at *1; *In re Cutright,* 2012 WL 1945703, at *4 (Bankr. E.D. Va. 2012); *In re Potes,* 336 B.R. 731, 732 (Bankr. E.D. Va. 2005). If NRS's lawsuit is purely *in rem*, then its Motion to Reinstate would not violate the discharge injunction and the case should not be reopened. If, on the other hand, at least some element of NRS's lawsuit seeks an *in personam,* money judgment against the Debtor, then the case should be reopened to accord relief to the Debtor.

6

The Court finds that NRS's lawsuit is primarily *in rem* in nature and that NRS's moving
forward on the *in rem* component of its fraudulent transfer claim will not violate the discharge
injunction. Proceeding on its claim for a money judgment against the Debtor, on the other hand,
would violate the discharge injunction. The Court, therefore, will reopen the bankruptcy case to
allow the Debtor to pursue relief related to the *in personam* claim.[2]

## II.    The Nature of NRS's Fraudulent Transfer Claim.

Bankruptcy Code Sections 524(a)(1) states that a discharge operates to void any
judgment "to the extent that such judgment is a determination of the personal liability of the
debtor." 11 U.S.C. § 524(a)(1). Section 524(a)(2) further provides that a discharge operates as an
injunction against the commencement or continuation of any action "to collect, recover or offset
any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). Pre-petition liens, on
the other hand, survive the discharge of a debtor, unless avoided in connection with the case. *In
re Hamlett,* 322 F.3d 342, 347 (4th Cir. 2003) ("More than a century ago, the Supreme Court
held that a bankruptcy discharge of a secured creditor's claim does not affect the status of the
creditor's underlying lien on the debtor's property.") (citing *Long v. Bullard,* 117 U.S. 617, 620-
21 (1886)); *Cen-Pen Corp. v. Hanson*, 58 F.3d 89, 93-94 (4th Cir. 1995). Further, it is not a
violation of the discharge injunction to pursue purely *in rem* claims against the Debtor, post-
discharge. *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991); *In re Hall*, 559 B.R. 456, 460
(Bankr. W.D. Va. 2016); *In re Rountree*, 448 B.R. 389, 401 (Bankr. E.D. Va. 2011). The

---

[2] The Debtor concedes that he has little in the way of damages other than his attorney's fees on this Motion. The
Court, therefore, will set a hearing on the Debtor's Motion, at which: (a) the Court will assess whether NRS has
respected the discharge injunction by dropping any claim for a money judgment against the Debtor in the Fairfax
action; and (b) the Court will assess an appropriate amount of attorney's fees for NRS's violation of the discharge
injunction with respect to its post-discharge request for a money judgment against the Debtor.

question, therefore, is whether NRS's fraudulent transfer claim, in which the Debtor is the

transferee, is in the nature of an *in rem* or an *in personam* claim.[3]

> Virginia Code Section 55-82 provides as follows:
>
> A creditor before obtaining a judgment or decree for his claim may, whether such claim
> be due and payable or not, institute any suit which he might institute after obtaining such
> judgment or decree to avoid a gift, conveyance, assignment or transfer of, or charge upon,
> the estate of his debtor declared void by either § 55-80 or 55-81; and he may in such suit
> have all the relief in respect to such estate to which he would be entitled after obtaining a
> judgment or decree for the claim which he may be entitled to recover. *A creditor availing
> himself of this section shall have a lien from the time of bringing his suit on all the estate,
> real and personal, hereinbefore mentioned, and a petitioning creditor shall be entitled to
> a like lien from the time of filing his petition in the court or in the clerk's office of the
> court in which the suit is brought.* If the proceeds of sale be insufficient to satisfy the
> claims of all the creditors whose liens were acquired at the same time they shall be
> applied ratably to such claims and the court may make a personal decree against the
> debtor for any deficiency remaining on the claim of any creditor after applying thereto his
> share of the proceeds of sale, or, if any creditor be not entitled to share in such proceeds,
> may render a personal decree against the debtor for the full amount of the creditor's
> claim. This section is subject to the provisions of §§ 8.01-268 and 8.01-269.

Va. Code § 55-82 (emphasis added).

NRS has had a Section 55-82 lien against the Property by operation of law from the time

that it brought its fraudulent transfer lawsuit in October 22, 2010. Its lien was not avoided in the

Debtor's bankruptcy case. The lien, therefore, survived the Debtor's discharge.[4]

Whether NRS's fraudulent transfer claim is an *in rem* claim or an *in personam* claim is a

matter of state law. *Butner v. U.S.*, 440 U.S. 48, 55 (1979). The Virginia Supreme Court has

---

[3] NRS argues that the Relief from Stay Order (Docket No. 131) in effect trumps the Debtor's discharge. There is no
support in the case law for that proposition. A relief from stay order only remains in effect for the duration of the
bankruptcy case, because the stay itself terminates when the case is closed or dismissed. 11 U.S.C. § 362(c)(2)(A)
and (B). On the other hand, once the case is reopened, per the Court's Order below, the Relief from Stay Order
previously entered remains in full force and effect in the reopened case. NRS, therefore, will be free to pursue its *in
rem* fraudulent transfer claim against the Property, but it may not proceed with its request for an *in personam,*
money judgment against the Debtor. The fourteen (14) day stay under Bankruptcy Rule 4001(a)(3) ran in July 2012.

[4] The statute does provide that "the court may make a personal decree against the debtor for any deficiency." In this
case Ms. Ahmadpour, against whom NRS already has a judgment, is the debtor under Va. Code § 55-82. Mr.
Beitdashtoo is the transferee, not the debtor, under the statute.

8

addressed the possibility of obtaining an *in personam* judgment against an alleged fraudulent transferee under Section 55-80 in two cases. First, in *Mills v. Miller Harness, Inc.,* the Court unequivocally held: "We find nothing in the statute authorizing a court to award an *in personam* judgment when a fraudulent conveyance is set aside." 326 S.E.2d 665, 667 (Va. 1985).

Later, in *Price v. Hawkins,* the Court allowed an *in personam* judgment where cash was the subject of the alleged fraudulent transfers. The Court specifically noted that "[t] his is not a situation where the property fraudulently conveyed is realty, when a declaration that the conveyance is void allows restoration of title in the name of the grantor to which the lien of the judgment could attach," nor "where the fraudulent grantor conveys personal property that requires title records for proof of ownership, like motor vehicles, and the property is still in existence and can be located for attachment or levy when the fraudulent transfer is declared void." 439 S.E.2d 382,385 (Va. 1994). In effect, the Court allowed an *in personam* judgment in *Price v. Hawkins* in order to avoid leaving the creditor with a right under Section 55-80 but no effective remedy.[5]

---

[5] One other case from the Virginia Supreme Court should be addressed here. In *Iron City Savings Bank v. Isaacson*, the Court held:

> A suit brought by a creditor to set aside a conveyance of real or tangible property, or the assignment and transfer of intangible personal property, by his debtor to a third person on the ground that it was fraudulent as to creditors is primarily a suit in personam. If the court secures jurisdiction of the person of both the grantor and grantee, it proceeds to its conclusion as essentially a suit in personam. But such a suit has this added incident. If the property (the res) conveyed or transferred is within the territorial jurisdiction of court and has been brought under the control of the court, the court, if authorized to do so by statute, may proceed to a judgment against the property as a res, even though it has not acquired such jurisdiction of the parties as is necessary for an adjudication in personam. Where, however, the court has not acquired jurisdiction of all the parties necessary to an adjudication in personam, the suit becomes in its essential nature a proceeding in rem; and the court cannot in such a case proceed unless it has acquired control of the res by actual or constructive seizure thereof, or is by law given control thereof by virtue of its location within the territorial limits to which its process may reach.

158 Va. 609, 627 (1932).

The Debtor relies on Judge St. John's opinion in *In re Rountree* for support. The Court, though, finds the *Rountree* opinion to be distinguishable for two reasons.

First, *Rountree* involved fraudulent transfer claims under the Uniform Fraudulent Transfer Act (UFTA) as enacted in North Carolina. Section 39-23.7 (Remedies of Creditors) of the North Carolina UFTA provides that, in addition to avoidance of the transfer, the plaintiff may obtain "[a]ny other relief the circumstances require," "[s]ubject to applicable principles of equity." N.C. Gen. St. § 39-23.7(a)(3)(c). Virginia has not enacted the UFTA and it does not appear that the UFTA, as enacted in North Carolina, would be subject to the same proscription on the entry of a personal judgment enunciated by the Virginia Supreme Court in *Mills*.

Second, Judge St. John noted that the creditor in *Rountree*, Nunnery, had "not obtained a lien, attachment, or other provisional remedy against [the] property of Rountree." *In re Rountree*, 448 B.R. at 403. In this case, as indicated above, NRS obtained a lien on the Property by virtue of Va. Code § 55-82.[6]

In the end, the Court simply cannot square the holding in *Mills* with the claim that a fraudulent transfer lawsuit constitutes an *in personam* proceeding as against the transferee. The Court holds that NRS's action in Fairfax is an *in rem* action to the extent that it seeks to avoid the transfer of the Property from Ms. Ahmadpour to herself and Mr. Beitdashtoo as tenants by the entirety as a fraudulent transfer under Va. Code § 55-80. NRS, therefore, is entitled to proceed on its *in rem* claim in state court.

---

The Court views the foregoing discussion to be clarified, if not overruled, by the decision in *Mills*. In *Mills*, there was no question that the courts had personal jurisdiction over the transferee and the Virginia Supreme Court held squarely that an *in personam* judgment was not available.

[6] Additionally, the creditor in *Rountree* (Nunnery) conceded that the North Carolina fraudulent transfer action was not an in rem claim. *Id.* at 402.

## III. NRS's Claim for Alternative, In Personam Relief.

NRS's Motion to Reinstate, insofar as it includes its alternative request for an *in personam,* money judgment against the Debtor, on the other hand, clearly violates the discharge injunction. 11 U.S.C. § 524(a)(2). NRS's Motion to Reinstate the case in Fairfax did not distinguish between the *in rem* relief sought with respect to the Property and the alternative request for a money judgment (no doubt because NRS was proceeding on the mistaken belief that the Relief from Stay Order somehow trumped the Debtor's discharge).

The Debtor has obtained a discharge in this case. As noted above, the Relief from Stay Order does not trump the Debtor's discharge. NRS did not seek a declaration of non-dischargeability of any amounts owed to it under the Settlement Agreement. *See* 11 U.S.C. §§ 523(a)(2)(A) (debts non-dischargeable where incurred by false pretenses, a false representation or actual fraud), (c)(1) (debts discharged unless a complaint is timely filed to determine non-dischargeability), *and* Bankruptcy Rule 4007(c) (complaints for non-dischargeability must be filed not later than 60 days after the first date set for the meeting of creditors under Section 341(a)). Any *in personam* claim has been discharged.

Finally, in 2012 the Virginia legislature enacted Va. Code § 55-82.1, which allows for an award of sanctions including attorney's fees "[u]pon a finding of fraudulent conveyance pursuant to § 55-80," against any party "who, with the intent to defraud and having knowledge of the judgment, participated in the conveyance." Va. Code § 55-82.1. It is not clear to the Court whether this statute would apply to the transfer of the Property in this case, which occurred in 2005, or to NRS's lawsuit, which was filed in 2010. The Court does find, however, that any potential liability for sanctions under Section 55-82.1 is *in personam* in nature and is barred by

11

the Debtor's discharge. On the other hand, attorney's fees to be paid solely out of the proceeds of a sale of the Property under Va. Code § 55-82.1 ("Should there be a resulting judicial sale, any award of attorney fees shall be paid out of the proceeds of the sale") are *in rem* in nature and are not barred by the Debtor's discharge.

Although NRS may proceed on its *in rem* fraudulent transfer claim, it may not proceed on its claim in the alternative for a money judgment against Mr. Beitdashtoo. The Court will set a status hearing, below, to monitor NRS's compliance with the terms of this Order.

## Conclusion

For the foregoing reasons, it is **ORDERED**:

A.    The case is reopened. No Trustee need be appointed as the relief sought is personal to the Debtor.

B.    NRS is permitted to pursue its fraudulent transfer claim against the Property, *in rem* (including any attorney's fees to be paid solely out of a sale of the Property), without violating the discharge injunction.

C.    NRS is not permitted to seek a money judgment against the Debtor (including any *in personam* claim for attorney's fees or sanctions under Section 55-82.1 in the fraudulent transfer action).

D.    The Court will hold a hearing in this matter on **March 27, 2018, at 9:30 a.m.,** at which it will: (a) determine whether NRS has complied with this Order; and (b) assess an appropriate amount of attorney's fees against NRS.

12

E.      Debtor's counsel shall file and serve his fee request with billing records by no

later than **March 6, 2018.** Any Objection to the fee request shall be filed by **March 20, 2018.** No

Reply Memorandum will be allowed.

F.      The Clerk will mail copies of this Order, or will provide cm-ecf notice of its

entry, to the parties below.


Date: Jan 24 2018                               /s/ Brian F. Kenney

                                                Brian F. Kenney
Alexandria, Virginia                            United States Bankruptcy Judge

                                    Entered on Docket: 1/25/2018 sas

Copies to:

Youri Beitdashtoo
4054 41 Street, N.
McLean, VA 22101
*Chapter 7 Debtor*

Daniel M. Press
6718 Whittier Ave., Suite 200
McLean, VA 22101
*Counsel for Debtor*

Robert L. Vaughn, Jr.
11490 Commerce Park Dr., Suite 510
Reston, VA 20191
*Counsel for NRS*

13