UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **In re:** ) | |
| ) | |
| **NAHID AHMADPOUR** ) | |
| ) | |
| ) | **Chapter 7** |
| ) | **Case No. 18-11248** |
| ) | |
| ) | |
| **NATIONWIDE REGISTRY** ) | |
| ) | |
|    **Plaintiff** ) | |
| ) | |
| v. ) | **Adversary No.  18-00039** |
| ) | |
| **NAHID AHMADPOUR** ) | |
| ) | |
|    **Defendant** ) | |

**PRETRIAL STATEMENT**

COMES NOW the Plaintiff, Nationwide Registry and Security, Ltd. ("NRS"), and in accordance with the Scheduling Order entered by this Court on June 25, 2018, submits the following Pretrial Statement.

**Statement of Facts**

1. During the month of October 2006, Ahmadpour wrote a total of $268,150 in bad checks on her Chevy Chase bank account to various casinos in Nevada. On November 9, 2006, while represented by counsel, Ahmadpour entered into a Plea Agreement to an Amended Information admitting that she was guilty of "DRAWING AND PASSING A CHECK WITHOUT SUFFICIENT FUNDS IN DRAWEE BANK WITH INTENT TO DEFRAUD" and was found guilty of the crimes. A true and accurate copy of the Plea Agreement and Amended Information was submitted as **Pretrial Exhibit A.**

2.      On January 17, 2008, NRS obtained a judgment in the Fairfax Circuit Court (Case No. 2007-14478) against Nahid Ahmadpour, in the principal sum of $80,000 with interest thereon at the rate of 18% per annum from October 10, 2005, until paid, and attorney's fees of $16,000. The judgment was based upon a portion of the bad checks referenced above that were written by Ahmadpour on her Chevy Chase Bank account between October 8, 2005 and October 10, 2005, all of which drafts were dishonored by the bank. A copy of the Order was submitted as **Pretrial Exhibit B**.

3.      After NRS obtained its judgment, Ahmadpour filed her first Chapter 7 proceeding in the Virginia Bankruptcy Court, Case No. 08-13766-BFK. Ahmadpour purposefully chose not to list NRS as a creditor in that bankruptcy filing. As Judge Mitchell found, she declined to list NRS because she was in "fear that doing so would adversely impact her probation and restitution plan on the criminal charge." See Memorandum Opinion and Order, January 8, 2010, footnote 2, page 2, filed as **Pretrial Exhibit C**; Transcript excerpt August 12, 2009 filed as **Pretrial Exhibit D**.

4.      After NRS obtained its judgment, Ahmadpour moved to reopen Case No. 08-13766-BFK to include the debt of NRS and argued that the time for filing an objection to dischargeability had lapsed. Per the Order of Judge Mitchell of the Virginia Bankruptcy Court (Exhibit C), the Court ruled that the debt of NRS had not been discharged and specifically ruled that either NRS or Ahmadpour could seek to (a) litigate the dischargeability of the judgment debt before the state court or (b) bring an adversary proceeding in the bankruptcy court to obtain such a determination. **Pretrial Exhibit C.**    5.     That has been accomplished. The Order of the Fairfax County Circuit Court (Pretrial Exhibit B), made an express finding that the debt was incurred as a result of the Debtor's fraud and, in addition, is a fraudulent conveyance action between these same parties. After taking evidence and hearing testimony, the Fairfax Circuit Court expressly found that Debtor had

committed a fraud, establishing conclusively that the subject debt was not dischargeable. **Pretrial Exhibit E**

6.     Ahmadpour and her husband have filed a total of seven (7) bankruptcy cases in three different jurisdictions as part of their eleven (11) year effort to avoid collection, inclusive of the current main case. The only case in which Ahmadpour was granted a discharge was the 2008 case in which she purposefully did not list NRS as a creditor and which, as Judge Mitchell opined, did not discharge the debt of NRS. The Court is asked to take judicial notice of the following cases:

1. Case No. 08-13766 (Virginia)
2. Case No. 11-16702 (Virginia)
3. Case No. 11-17929 (Virginia)
4. Case No. 2012-15026 (Virginia)
5. Case No. 12-00722 (D.C.)
6. Case No. 12-00232 (D.C.)
7. Case No. 18-11248 (Maryland, the instant case)

7.     All payments received by NRS which are to be credited to the payment of the judgment are set forth on **Pretrial Exhibit H**.

8.     The balance due is as set forth on the NRS Proof of Claim, **Pretrial Exhibit I**. With the accrual of the additional interest since that Proof of Claim was filed, there is additional interest due and owing as of January 23, 2018 of $6,561.00 (180 days x $36.45/day), a total of $201,377.86.

As set forth in its Memorandum in Support of its Motion for Summary Judgment, there is no credible legal or factual basis to contend that the NRS debt is a nondischargeable debt. The following is a brief summary of the argument set forth in that Motion:

Count I

As a result of Debtor's bad faith and intentional omission of the debt owed to NRS in her first Chapter 7 filing, Debtor is barred from claiming that the debt is dischargeable in these proceedings pursuant to 11 USC §523(a)(3); *Samuel v. Baitcher*, 781 F. 2d 1529 (11th Cir. 1986); *In re Gugliada*, 20 B.R. 524 (Bankr. S.D. N.Y. 1982).

### Counts II and III

11 U.S.C. §523(a)(2)(A), provides that a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud" is not dischargeable in bankruptcy. There simply is no disputing that the debt of NRS is of the kind specified in §523(a)(2)(A). There is no dispute that the debt owed to NRS was incurred by Ahmadpour as part of a series of criminal acts: passing over $268,000 in bad checks. Ahmadpour plead guilty to that criminal act, admitting that she passed the subject checks with an intent to defraud. No matter Ahmadpour's contentions to the contrary, the record establishes not only fraud, but a series of criminal, larcenous acts. The fact is that Debtor stole over $268,000 from her creditors, that she did it with a pen vs. a gun does not make the theft any less egregious.

The Fairfax County Circuit Court heard evidence in the matter and made a specific finding that the judgment was based upon Ahmadpour's fraudulent conduct; Debtor is bound by that finding. As recited by Judge Mitchell:

> Moreover, by failing to list the creditor, the debtor effectively waives the exclusive jurisdiction of the bankruptcy court to determine the dischargeability of the debt, and that issue may be determined in a non-bankruptcy court having jurisdiction to adjudicate or enforce the debt. Mitchell Opinion 1/08/2010 p. 3.

Even absent Judge Mitchell's ruling, the same result would obtain. The law is clear that collateral estoppel is applicable to dischargeability proceedings. *Grogan v. Garner,* 498 U.S. 279, 285, n. 11, 111 S.Ct. 654, 658, n. 11, 112 L.Ed.2d 755, 763 n. 11 (1991) ("We now clarify that

collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."). *See also In re Ansari,* 113 F.3d 17 (4th Cir. 1997), *cert. denied,* ___ U.S. ___, 118 S.Ct. 298, 139 L.Ed.2d 230 (1997)   (Fourth Circuit reaffirmed the holding in *Grogan* that "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.")  In applying the principles of collateral estoppel, the 4th Circuit held that bankruptcy courts must look to the law of the state in which the judgment was rendered to determine whether  state law  would give the judgment preclusive effect. *Sartin v. Macik,* 535 F.3d 284, 287 (4th Cir.2008).  *Ansari*, *supra*, recognized the Virginia Supreme Court's decision in *Trans-Dulles Center, Inc. v. Sharma,* 252 Va. 19, 20, 472 S.E.2d 274 (1996), as setting forth the Virginia state law defining the elements of collateral estoppel:

> For collateral estoppel to apply, the parties to the two proceedings, or their privies, must be the same; the factual issue sought to be litigated actually must have been litigated in the prior action and must have been essential to the prior judgment; and the prior action must have resulted in a valid, final judgment against the party sought to be precluded in the present action.
>
> The following from the Court's Opinion in *Ansari* is instructive:
>
> Moreover, even if the state court in this case had heard no evidence of fraud or defalcation before entering its default judgment against Ansari, the court's subsequent consideration and findings of punitive damages would certainly suffice for collateral estoppel purposes. The court awarded punitive damages to Pahlavi after finding "proof of misconduct or actual malice or such recklessness or negligence as to evince a conscious disregard of the rights of others." The state court's holding under this standard clearly includes the lesser finding of defalcation.

*See also In re Bane*, 236 B.R. 352 (Bankr. W.D.Va. 1999) (state court action for fraudulent conversion in which defendant never appeared but during which plaintiff put on evidence of fraudulent conversion and for punitive damages; the bankruptcy court found that "In order to find punitive damages, the issue of fraudulent conversion had to be litigated and determined in favor of [plaintiff]. Thus, all of the factors set forth in *TransDulles* for application of collateral estoppel exist

and, following *Ansari* and *Grogan,* the state court judgment must be given collateral estoppel effect.")

### Count IV

NRS submits that the evidence will demonstrate that Debtor has not been truthful in the information provided in her Schedules and Statement of Financial Affairs. Debtor claims that she and her Husband are living apart. Based upon the filing in this Court in late January, that would mean that the purported "separation" occurred at least as of October 2017–more than one year ago. No divorce action has been field in any jurisdiction. By her own admission at the Creditor's Meeting, the evidence will show that Debtor continues to work in what she claims is her husband's business (the same HEMETAF business she fraudulently conveyed to him), drives his car, and that he pays all of her bills because she only earns $400 a month working for her husband. Defendant claims to have no automobile, yet she also claims to live in Maryland and work in Arlington, Virginia. Despite running what she claims to be a monthly deficit of not less than $345, Defendant denies that she has received any gifts or other transfers of property or money in her financial statement. With her filing, she also claims to have paid her current attorney fees of $1,015 and court costs of $335, yet claims no resources from which to pay. Undoubtedly she's incurred thousands of more in attorneys' fees in her efforts to continue to avoid payment of the NRS judgment.

### Purported "Defenses"

It is submitted that Defendant's tactics over the past eleven (11) plus years are among the most egregious that have ever transpired, if not the most. Consistent with that approach, Defendant has attempted to raise non-existent defenses to this claim that have no good faith factual or legal

basis. NRS addressed those claims in detail in its Supplemental Motion for Summary Judgment, which Memorandum it incorporates herein as though fully set forth.

In the interest of being complete, but without in any way conceding that the contention has any bearing whatsoever in this matter, NRS will briefly address Ahmadpour's contention, stated in her discovery responses that there are no amounts due because "In Beitdashtoo's Chapter 13 plan, NRS was listed as a secured creditor and received plan payments....In consideration thereof, NRS executed a 'Deed of Release' instrument to release the Deed of Trust it held against the Settlement Debtors. Since the Settlement Agreement funds have been fully paid and the Deed of Trust released, the Judgment held by NRS is fully cancelled." Ahmadpour and her counsel have actual knowledge that the foregoing is not true. The issue of whether the Settlement Agreement was breached was expressly litigated in Beitdashtoo's 2011 bankruptcy proceeding, Case No. 2011-16702, the second of the seven cases filed, and found in favor of NRS. NRS attached as Exhibit B to its Supplemental Memorandum a copy of the Lift Stay Motion filed in that proceeding by NRS. In paragraph 19 of that Motion, NRS specifically alleged that Ahmadpour and Beitdashtoo had breached the Settlement Agreement, at which point NRS moved to foreclose on the McLean residence–that was the very reason Beitdashtoo filed for bankruptcy in the first place. Beitdashtoo also filed an Answer to the Lift Stay Motion (attached as Exhibit C to the Supplemental Memorandum) denying the allegations of paragraph 19. In paragraph 6 of that response, Beitdashtoo specifically alleged that "debtor did not default under the Settlement Agreement."

An evidentiary hearing was conducted on the Motion during which Beitdashtoo and Ahmadpour were represented by counsel. Beitdashtoo testified, Debtor and her counsel's realtor testified, and appraisals of the property were introduced into evidence. After hearing the evidence and argument, on July 12, 2012, Judge Kenney issued his Order Granting Relief from the Stay,

which order expressly provided that NRS was permitted to proceed with the foreclosure sale of the McLean property, as well as the 2010 set aside action in the state court (the case that NRS has been attempting to get to trial for the past 8 years).  A copy of that Order was submitted as **Pretrial Exhibit F**.  In short, the determination was in July 2012 that Ahmadpour and Beitdashtoo had, in fact, breached the Settlement Agreement.  That Order has never been appealed and certainly is no longer subject to attack.  Accordingly, there is no good faith basis for Ahmadpour and/or her counsel to suggest that there was no such breach.

Ahmadpour's throw in contention that the release of the Deed of Trust also released the judgment is equally without merit, and known to her and to her counsel to be meritless.  The express terms of the Settlement Agreement, specifically paragraph 7, state that:

> "in the event the Defendants fail to comply with any of the terms and conditions of this Agreement ....NRS shall have any and all remedies available to it under the laws of the Commonwealth of Virginia, the NRS Trust, and/or the terms of this Agreement to collect the full amount due and owing to it, it being expressly stipulated, covenanted, warranted and agreed that this Agreement is not a substitution for, novation of, or in any respect a release, accord and/or satisfaction of said Judgment, but only a method of satisfying said Judgment.

Ahmadpour is equally aware that the release of the Deed of Trust did not release the judgment. That Deed of Release (Debtor's Pretrial Exhibit 6) states on its face that while "the secured portion of the judgment has now been paid in full, ***the balance of the judgment remaining [sic] due and owing.***"

In sum and substance, Debtor's position is made up out of whole cloth and is simply a continuation of the tactics that Ahmadpour will not hesitate to employ if she and/or her counsel think it will buy her more time and further increase the cost and duration of these proceedings for NRS.

In accordance with Local Bankruptcy Rule 7016-1(b)(2 - 8), NRS further states as follows:

2.  There are no required pleading amendments;

3. NRS has not abandoned any of the issues/positions plead;

4. There are no stipulations of fact;

5. NRS seeks a ruling determining that the debt due to it, as represented by the judgment entered by the Circuit Court of Fairfax County, Virginia on January 17, 2008 is nondischarageable. NRS reserves the right to seek Rule 9011 sanctions against the Debtor as her actions have been in bad faith and without merit. Accordingly, NRS should be awarded its attorney's fees and costs incurred in these proceedings.

7. NRS does not intend to call any expert witnesses.

8. NRS believes that its Motion for Summary Judgment should be resolved before trial; there is no actual material issue of fact in dispute in this case and it is clear that NRS is entitled to summary judgment as a matter of law.

**Nationwide Registry & Security Ltd.**
*By Counsel*

By  /s/ Robert L. Vaughn, Jr., *pro hac vice*
Robert L. Vaughn, Jr., Va Bar No. 10633
Fitzgerald Lewis, Md. Bar No. 16912
11490 Commerce Park Drive, Suite 510
Reston, Virginia 20191
T (703) 689-2100; F (703) 471-6496
Email: rvaughn@oconnorandvaughn.com
*Counsel for NRS*

Certificate of Service

I hereby certify that on the 23rd day of January, 2019 a copy of the foregoing Pre-Trial Statement was served via the Court's CM/ECF system to:

> John D. Pels, Esq.
> 4845 Rugby Avenue, Third Floor
> Bethesda, Maryland 20814
> *Counsel for Debtor*

Kevin D. Judd, Esq.
601 Pennsylvania Ave., N.W.
Suite 900-South Bldg.
Washington, DC 20004
*Counsel for Debtor*

Laura J. Margulies, Trustee
6205 Executive Blvd.
Rockville, MD 20852

                                              /s/ Robert L. Vaughn, Jr.
                                              Fitzgerald Lewis, Md. Bar No. 16912
                                              Robert L. Vaughn, Jr., Va Bar No. 10633
                                              11490 Commerce Park Drive, Suite 510
                                              Reston, Virginia 20191
                                              T (703) 689-2100; F (703) 471-6496
                                              Email: rvaughn@oconnorandvaughn.com