1  **GMEM**
   DAVID ROGER
2  DISTRICT ATTORNEY
   Nevada Bar #002781
3  BRIAN J. KOCHEVAR
   Chief Deputy District Attorney
4  Nevada Bar #005691
   200 Lewis Avenue
5  Las Vegas, NV 89155-2212
   (702) 671-2500
6  Attorney for Plaintiff

**FILED IN OPEN COURT**

NOV 14 2008

SHIRLEY B. PARRAGUIRRE, CLERK

BY

DEPUTY

7                        DISTRICT COURT

8                     CLARK COUNTY, NEVADA

9  THE STATE OF NEVADA,                    )
10                    Plaintiff,           )
11             -vs-                        )   CASE NO:    C226058
                                           )   DEPT NO:    VI
12  NAHID AHMADPOUR,                       )
    #1997946                               )
13                                         )
                      Defendant.           )
14  _____)

15                  GUILTY PLEA AGREEMENT

16         I hereby agree to plead guilty to: **DRAWING AND PASSING A CHECK**

17  **WITHOUT SUFFICIENT FUNDS IN DRAWEE BANK WITH INTENT TO**

18  **DEFRAUD, PRESUMPTIONS OF INTENT TO DEFRAUD (Gross Misdemeanor -**

19  **NRS 205.130, 205.132)**, as more fully alleged in the charging document attached hereto as

20  Exhibit "1".

21         My decision to plead guilty is based upon the plea agreement in this case which is as

22  follows:

23         Both parties agree to stipulate to five (5) years probation. Defendant agrees to pay

24  restitution in the amount of $268,150.00. If defendant pays full restitution while on

25  probation, the State will not oppose withdrawl of guilty plea and dismissal of case. Both

26  parties agree to stipulate to guilty plea in abstentia.

27  //

28  //

**EXHIBIT**

**A**

## CONSEQUENCES OF THE PLEA

I understand that by pleading guilty I admit the facts which support all the elements of the offense(s) to which I now plead as set forth in Exhibit "1".

I understand that as a consequence of my plea of guilty I may be imprisoned in the Clark County Detention Center for a period of not more than one (1) year and that I may be fined up to $2,000.00. I understand that the law requires me to pay an Administrative Assessment Fee.

I understand that, if appropriate, I will be ordered to make restitution to the victim of the offense(s) to which I am pleading guilty and to the victim of any related offense which is being dismissed or not prosecuted pursuant to this agreement. I will also be ordered to reimburse the State of Nevada for any expenses related to my extradition, if any.

I understand that I am eligible for probation for the offense to which I am pleading guilty. I understand that, except as otherwise provided by statute, the question of whether I receive probation is in the discretion of the sentencing judge.

I understand that if more than one sentence of imprisonment is imposed and I am eligible to serve the sentences concurrently, the sentencing judge has the discretion to order the sentences served concurrently or consecutively.

I also understand that information regarding charges not filed, dismissed charges, or charges to be dismissed pursuant to this agreement may be considered by the judge at sentencing.

I have not been promised or guaranteed any particular sentence by anyone. I know that my sentence is to be determined by the Court within the limits prescribed by statute.

I understand that if my attorney or the State of Nevada or both recommend any specific punishment to the Court, the Court is not obligated to accept the recommendation.

I understand that if the State of Nevada has agreed to recommend or stipulate a particular sentence or has agreed not to present argument regarding the sentence, or agreed not to oppose a particular sentence, or has agreed to disposition as a gross misdemeanor when the offense could have been treated as a felony, such agreement is contingent upon my

2

1  appearance in court on the initial sentencing date (and any subsequent dates if the sentencing
2  is continued). I understand that if I fail to appear for the scheduled sentencing date or I
3  commit a new criminal offense prior to sentencing the State of Nevada would regain the full
4  right to argue for any lawful sentence.

5      I understand if the offense(s) to which I am pleading guilty to was committed while I
6  was incarcerated on another charge or while I was on probation or parole that I am not
7  eligible for credit for time served toward the instant offense(s).

8      I understand that as a consequence of my plea of guilty, if I am not a citizen of the
9  United States, I may, in addition to other consequences provided for by federal law, be
10  removed, deported, excluded from entry into the United States or denied naturalization.

11      I understand that the Division of Parole and Probation will prepare a report for the
12  sentencing judge prior to sentencing. This report will include matters relevant to the issue of
13  sentencing, including my criminal history. This report may contain hearsay information
14  regarding my background and criminal history. My attorney and I will each have the
15  opportunity to comment on the information contained in the report at the time of sentencing.
16  Unless the District Attorney has specifically agreed otherwise, then the District Attorney
17  may also comment on this report.

18                          ## WAIVER OF RIGHTS

19      By entering my plea of guilty, I understand that I am waiving and forever giving up
20  the following rights and privileges:

21      1. The constitutional privilege against self-incrimination, including the right to refuse
22  to testify at trial, in which event the prosecution would not be allowed to comment to the
23  jury about my refusal to testify.

24      2. The constitutional right to a speedy and public trial by an impartial jury, free of
25  excessive pretrial publicity prejudicial to the defense, at which trial I would be entitled to the
26  assistance of an attorney, either appointed or retained.   At trial the State would bear the
27  burden of proving beyond a reasonable doubt each element of the offense charged.

28  //

                                  3

3. The constitutional right to confront and cross-examine any witnesses who would testify against me.

4. The constitutional right to subpoena witnesses to testify on my behalf.

5. The constitutional right to testify in my own defense.

6. The right to appeal the conviction, with the assistance of an attorney, either appointed or retained, unless the appeal is based upon reasonable constitutional jurisdictional or other grounds that challenge the legality of the proceedings and except as otherwise provided in subsection 3 of NRS 174.035.

## VOLUNTARINESS OF PLEA

I have discussed the elements of all of the original charge(s) against me with my attorney and I understand the nature of the charge(s) against me.

I understand that the State would have to prove each element of the charge(s) against me at trial.

I have discussed with my attorney any possible defenses, defense strategies and circumstances which might be in my favor.

All of the foregoing elements, consequences, rights, and waiver of rights have been thoroughly explained to me by my attorney.

I believe that pleading guilty and accepting this plea bargain is in my best interest, and that a trial would be contrary to my best interest.

I am signing this agreement voluntarily, after consultation with my attorney, and I am not acting under duress or coercion or by virtue of any promises of leniency, except for those set forth in this agreement.

I am not now under the influence of any intoxicating liquor, a controlled substance or other drug which would in any manner impair my ability to comprehend or understand this agreement or the proceedings surrounding my entry of this plea.

//

//

//

4

1    My attorney has answered all my questions regarding this guilty plea agreement and

2    its consequences to my satisfaction and I am satisfied with the services provided by my

3    attorney.

4        DATED this _____ day of October, 2006.

5

6                                                    NAHID AHMADPOUR
                                                     Defendant Sharon L. Myles
6                                                            Notary Public, District of Columbia
                                                             My Commission Expires 2-14-2010
7

8    AGREED TO BY:

9

10   Brian J. Kochevar
     Chief Deputy District Attorney
11   Nevada Bar #005691

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    5

1  CERTIFICATE OF COUNSEL:

2      I, the undersigned, as the attorney for the Defendant named herein and as an officer of
3  the court hereby certify that:

4      1. I have fully explained to the Defendant the allegations contained in the charge(s)
   to which guilty pleas are being entered.

5      2. I have advised the Defendant of the penalties for each charge and the restitution
6  that the Defendant may be ordered to pay.

7      3. All pleas of guilty offered by the Defendant pursuant to this agreement are
   consistent with the facts known to me and are made with my advice to the Defendant.

8      4. To the best of my knowledge and belief, the Defendant:

9          a. Is competent and understands the charges and the consequences of pleading
           guilty as provided in this agreement.

10         b. Executed this agreement and will enter all guilty pleas pursuant hereto
11         voluntarily.

12         c. Was not under the influence of intoxicating liquor, a controlled substance or
           other drug at the time I consulted with the defendant as certified in paragraphs
13         1 and 2 above.

14  Dated: This 9 day of October, 2006.

15                              ATTORNEY FOR DEFENDANT

16

17

18

19

20

21

22

23

24

25

26

27

28  rj

6

1 AINF
DAVID ROGER
2 Clark County District Attorney
Nevada Bar #002781
3 BRIAN J. KOCHEVAR
Chief Deputy District Attorney
4 Nevada Bar #005691
200 Lewis Avenue
5 Las Vegas, Nevada 89155-2212
(702) 671-2500
6 Attorney for Plaintiff

7                                    DISTRICT COURT
8                              CLARK COUNTY, NEVADA

9

10 THE STATE OF NEVADA,                    )
                                          )
11                 Plaintiff,             )         Case No.    C226058
                                          )         Dept No.    VI
12         -vs-                           )
                                          )
13 NAHID AHMADPOUR,                       )
   #1997946                               )
14                                        )            AMENDED
                   Defendant.             )
15 _____   )        I N F O R M A T I O N

16 STATE OF NEVADA      )
                        ) ss:
17 COUNTY OF CLARK      )

18        DAVID ROGER, District Attorney within and for the County of Clark, State of

19 Nevada, in the name and by the authority of the State of Nevada, informs the Court:

20        That NAHID AHMADPOUR, the Defendant(s) above named, having committed the

21 crime of **DRAWING AND PASSING A CHECK WITHOUT SUFFICIENT FUNDS IN**

22 **DRAWEE BANK WITH INTENT TO DEFRAUD, PRESUMPTIONS OF INTENT**

23 **TO DEFRAUD (Gross Misdemeanor - NRS 205.130, 205.132)**, on or between October 8,

24 2005, and October 24, 2005, within the County of Clark, State of Nevada, contrary to the

25 form, force and effect of statutes in such cases made and provided, and against the peace and

26 dignity of the State of Nevada, did willfully, unlawfully, and with intent to defraud, draw

27 and pass a check to obtain cash and/or gaming chips, drawn upon Chevy Chase Bank,

28 //

*EXHIBIT "1"*

P:\WPDOCS\INF\609\60947202.DOC

| Date | Account No. | Made Payable To | In The Amount Of | Check No. |
|------|-------------|-----------------|------------------|-----------|
| 10/08/05 | 3921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703338 |
| 10/08/05 | 3921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703340 |
| 10/08/05 | 3921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703348 |
| 10/09/05 | 3921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $10,000.00 | 57411482 |
| 10/09/05 | 3921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703395 |
| 10/09/05 | 3921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703398 |
| 10/09/05 | 3921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703409 |
| 10/09/05 | 3921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703420 |
| 10/09/05 | 3921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703426 |
| 10/09/05 | 3921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703427 |

2

| Date | Account No. | Made Payable To | In The Amount Of | Check No. |
|------|-------------|-----------------|------------------|-----------|
| 10/09/05 | ███3921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703433 |
| 10/10/05 | ███3921 | BELLAGIO HOTEL AND CASINO, at 3600 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $7,000.00 | 10076264 |
| 10/10/05 | ███3921 | BELLAGIO HOTEL AND CASINO, at 3600 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $5,000.00 | 10076314 |
| 10/10/05 | ███3921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $10,000.00 | 57411561 |
| 10/10/05 | ███3921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $10,000.00 | 57411568 |
| 10/20/05 | ███3921 | BELLAGIO HOTEL AND CASINO, at 3600 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $4,000.00 | 10080446 |
| 10/22/05 | ███3921 | BELLAGIO HOTEL AND CASINO, at 3600 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $5,000.00 | 10081653 |
| 10/22/05 | ███3921 | BELLAGIO HOTEL AND CASINO, at 3600 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $10,000.00 | 10081666 |
| 10/22/05 | ███3921 | BELLAGIO HOTEL AND CASINO, at 3600 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $20,000.00 | 10081765 |
| 10/22/05 | ███3921 | BELLAGIO HOTEL AND CASINO, at 3600 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $15,000.00 | 10081789 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

P:\WPDOCS\INF\609\6094 7202.DOC

| Date | Account No. | Made Payable To | In The Amount Of | Check No. |
|---|---|---|---|---|
| 10/24/05 | ███████5273 | ALADDIN RESORT AND CASINO, at 3667 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $25,000.00 | 242281 |
| 10/24/05 | ███████5273 | ALADDIN RESORT AND CASINO, at 3667 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $25,000.00 | 242324 |
| 10/24/05 | ███████5273 | ALADDIN RESORT AND CASINO, at 3667 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $15,000.00 | 242619 |

when the said Defendant had insufficient money, property, or credit with the drawee of the

instrument to pay it in full upon its presentation.

DAVID ROGER
DISTRICT ATTORNEY
Nevada Bar #002781

BY _____

BRIAN J. KOCHEVAR
Chief Deputy District Attorney
Nevada Bar #005691

DA#06F09472X/rj
DAO EV#0605018090
D & P NSF CHECKS - F
(TK6)

4

P:\WPDOCS\INF\609\60947102.DOC

BA

CC

AGT
CEN



← LOAD THIS DIRECTION, THIS SIDE U

CUSTOMER'S RECEIPT

IS SIDE UP



BAD
CLA

LOAD THIS DIRECTION, THIS SIDE UP

LOAD THIS DIRECTION, THIS SIDE UP

MONEY ORDER RECEIPT - NON NEGOTIABLE

BAD CHECK UNITE MARCH - 09
CLARK COUNTY

AGT 231881 LOC 000000 DT 032509 $50.00 **50DOLLARS AND NO ****
CENTS********************************************************



* 0 8 7 8 0 8 1 0 2 7 5 *

---

MONEY ORDER RECEIPT - NON NEGOTIABLE

BAD CHECK UNITE
CLARK COUNTY FEB, 09

AGT 231881 LOC 000000 DT 022509 $50.00 **50DOLLARS AND NO ****
CENTS********************************************************



* 0 9 0 3 1 8 1 3 3 6 2 *

---

...CEIPT - NON NEGOTIABLE

BAD CHECK UNITE
CLARK COUNTY
JAN, 09

AGT 231881 LOC 000000 DT 012209 $50.00 **50DOLLARS AND NO ****
CENTS********************************************************



* 0 8 9 4 9 6 1 2 2 6 3 *



MONEY ORDER RECEIPT - NON NEGOTIABLE

01-08

Apply for your Western Union Prepaid Visa Card and the $9.95
Activation Fee will be waived No credit check Enroll today at
www.mycardplace.com/wuvisa2 Valid to: March 31, 2008

AGT 231881 LOC 000000 DT 010908 $50.00 **50DOLLARS AND NO ****
CENTS**************************************************

* 0 8 8 2 0 9 8 5 0 4 8 *

MONEY ORDER RECEIPT - NON NEGOTIABLE

02-08

Apply for your Western Union Prepaid Visa Card and the $9.95
Activation Fee will be waived No credit check Enroll today at
www.mycardplace.com/wuvisa2 Valid to: March 31, 2008

AGT 231881 LOC 000000 DT 021508 $50.00 **50DOLLARS AND NO ****
CENTS**************************************************

* 0 8 8 2 0 9 8 4 7 0 5 *

**CUSTOMER'S RECEIPT**

03-08

UNITED STATES POSTAL SERVICE®

BAD CHECK UNITE
CLARK COUNTY

Non
NEGOTIABLE

**CUSTOMER'S RECEIPT**

04

UNITED STATES POSTAL SERVICE®

BAD CHECK UNITE
CLARK COUNTY



KEEP THIS
RECEIPT FOR
YOUR RECORDS



KEEP THIS
RECEIPT FOR
YOUR RECORDS

PAY

AODF



**CUSTOMER'S RECEIPT**

KEEP THIS
RECEIPT FOR
YOUR RECORDS

PAY TO: BAD CHECK UNITE C226058
ADDRESS CLARK COUNTY
C.O.D. OR
USED FOR

SEE BACK OF THIS RECEIPT
FOR IMPORTANT CLAIM
INFORMATION
NOT
NEGOTIABLE

SERIAL NUMBER 12454957574
YEAR, MONTH, DAY
POST OFFICE
CLERK

---

**MONEY ORDER RECEIPT - NON NEGOTIABLE**

LOAD THIS DIRECTION, THIS SIDE UP

BAD CHECK UNITE          GLT BYM·8
C226058

Apply for your Western Union Prepaid Visa Card and the $9.95
Activation Fee will be waived No credit check Enroll today at
www.mycardplace.com/wuvisa2 Valid to: December 31, 2008

AGT 231BB1 LOC 000000 DT 102108 $50.00 **50DOLLARS AND NO ****
CENTS*************************************************************

* 0 8 9 7 9 0 1 2 6 8 9 *

LOAD THIS DIRECTION, THIS SIDE UP

---

**UNITED STATES POSTAL SERVICE**

NOV·8

SEE BACK OF THIS RECEIPT
FOR IMPORTANT CLAIM
INFORMATION
NOT
NEGOTIABLE

Pay to BAD CHECK UNITE C226058
Address CLARK COUNTY

KEEP THIS
RECEIPT FOR
YOUR RECORDS

Serial Number 16012608917
Year, Month, Day Nov- paymm 2008-11-18
Post Office 200051
Amount $50.00
Clerk 0003

---

**UNITED STATES POSTAL SERVICE**

DECEMBER

SEE BACK OF THIS RECEIPT
FOR IMPORTANT CLAIM
INFORMATION
NOT
NEGOTIABLE

Pay to CLARK COUNTY DISTRICT
Address BAD CHECK UNITE C226058

KEEP THIS
RECEIPT FOR
YOUR RECORDS

Serial Number 16012619853
Year, Month, Day 2008-12-24
Post Office 200051
Amount $50.00
Clerk 0003



03.07
FIRST PAY

**UNITED STATES POSTAL SERVICE.**
**CUSTOMER'S RECEIPT**

| KEEP THIS RECEIPT FOR YOUR RECORDS | PAY TO: CLARK COUNTY DISTRICT ATTORNEY<br>ADDRESS: BAD CHECK UNIT    # C226058<br>C.O.D. OR USED FOR: 200 LEWIS AVE<br>LAS VEGAS NV 89101 | SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION<br>**NOT NEGOTIABLE** |

09507026867  YEAR, MONTH, DAY  POST OFFICE  AMOUNT  CLERK

---

04.07
2ND PAYMENT

**UNITED STATES POSTAL SERVICE.**
**CUSTOMER'S RECEIPT**

| KEEP THIS RECEIPT FOR YOUR RECORDS | PAY TO: CLARK COUNTY BAD CHECK C226058<br>ADDRESS:<br>C.O.D. OR USED FOR: | SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION<br>**NOT NEGOTIABLE** |

09507026856  YEAR, MONTH, DAY  POST OFFICE  AMOUNT  CLERK

---

3RD
05.07

**UNITED STATES POSTAL SERVICE.**
**CUSTOMER'S RECEIPT**

| KEEP THIS RECEIPT FOR YOUR RECORDS | PAY TO: CLARK COUNTY DISTRICT ATTORNEY<br>BAD CHECK UNIT     # C226058<br>ADDRESS: 200 LEWIS AVE<br>C.O.D. OR USED FOR: LAS VEGAS NV 89101   3RD | SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION<br>**NOT NEGOTIABLE** |

09507050932  YEAR, MONTH, DAY  POST OFFICE  AMOUNT  CLERK

---

06.07

**UNITED STATES POSTAL SERVICE.**
**CUSTOMER'S RECEIPT**

| KEEP THIS RECEIPT FOR YOUR RECORDS | PAY TO: CLARK COUNTY<br>ADDRESS: 200 LEWIS AVE<br>C.O.D. OR USED FOR: C226058 | SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION<br>**NOT NEGOTIABLE** |

09507064825  YEAR, MONTH, DAY  POST OFFICE  AMOUNT  CLERK

---

07.07

**UNITED STATES POSTAL SERVICE.**
**CUSTOMER'S RECEIPT**

| KEEP THIS RECEIPT FOR YOUR RECORDS | PAY TO: CLARK COUNTY DIST ATTORNEY<br>BAD CHECK UNIT<br>ADDRESS: 200 LEWIS AVE    # C226058<br>C.O.D. OR USED FOR: LAS VEGAS NV 89101 | SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION<br>**NOT NEGOTIABLE** |

09507070618  YEAR, MONTH, DAY  POST OFFICE  AMOUNT  CLERK



**CUSTOMER'S RECEIPT** 08

DIST ATTNY
CLECK UNITE
LEWIS AVE # C226058    AUGUST PYMT

SEE BACK OF THIS RECEIPT
FOR IMPORTANT CLAIM
INFORMATION

**NOT NEGOTIABLE**

YEAR, MONTH, DAY    POST OFFICE
2007-08-10



**CUSTOMER'S RECEIPT**

SEE BACK OF THIS RECEIPT
FOR IMPORTANT CLAIM
INFORMATION

**NOT NEGOTIABLE**

YEAR, MONTH, DAY    POST OFFICE
2007



**CUSTOMER'S RECEIPT**

GOVNT

BACK OF THIS RECEIPT
IMPORTANT CLAIM
INFORMATION

**NOT NEGOTIABLE**

YEAR, MONTH, DAY    POST OFFICE    AMOUNT



GLOBAL EXPRESS MONEY ORDERS, INC. PURCHASER CLAIM RECEIPT
RETAIN THIS RECEIPT AS PROOF OF PURCHASE

**261621749**

CLARK COUNTY DISTRICT ATTRNY
BAD CHECK UNITE

PAY TO

11/12/07

$50.00    NOV-07

MONEY ORDER CONDITIONS OF SALE

1) That the purchaser agrees to exercise in ink, the name, address, date and name of the Payee and assumes responsibility for all results of his failure to do so.
2) There is a research/replacement fee in order to receive a refund.
3) That no request for refund be made unless this claim receipt is submitted therewith.
4) Copies of Money Orders will only be provided for 2 years from the date of purchase.
5) Global Express Money Orders, Inc. does not have to stop payment on Money Orders. THERE IS A RECORD MAINTENANCE SERVICE CHARGE (AS PERMITTED BY LAW) IF THIS MONEY ORDER IS NOT CASHED/PRESENTED FOR PAYMENT) WITHIN 1 YEAR FROM DATE OF PURCHASE. SEE REVERSE SIDE FOR DETAILS.

GIFT CERTIFICATE CONDITIONS OF SALE (MERCHANT AGREEMENT)
Unless this Gift Certificate is forged, altered, stolen, counterfeited or fraudly issued, the company named on the "Pay to the order of" line agrees to exchange it for merchandise only.

## MONEY ORDER RECEIPT - NON NEGOTIABLE

DEC - 07

Great news! Now for a great value, you can send money safely and conveniently to a loved one in a correctional facility via the Western Union Quick Collect service.





Payable to:

**RETAIN THIS MONEY ORDER RECEIPT. IT MUST BE INCLUDED WITH ALL REFUND REQUESTS. BE SURE TO READ IMPORTANT INFORMATION BELOW AND ON BACK.**
**PURCHASE AGREEMENT:** You the purchaser agree that Integrated Payment Systems Inc. (IPS) need not stop payment on, or replace, or refund a lost or stolen IPS Money Order unless (1) you fill in the face of the Money Order at the time of purchase, and (2) you report the loss or theft to IPS in writing immediately, and (3) You provide IPS with the original Money Order receipt issued by Integrated Payment Systems Inc., Englewood, Colorado. For customer service, call 1-800-999-9660.

‡  0 8 8 1 8 6 9 9 7 1 8  ‡

**VIRGINIA:**



### IN THE CIRCUIT COURT OF THE COUNTY OF FAIRFAX

NATIONWIDE REGISTRY & SECURITY, *
LTD.
                                                    *
            **PLAINTIFF**
                                                    *
v.
                                                    *       Case No. 2007-14478

NAHID AHMADPOUR
                                                    *
            **DEFENDANT**

## DEFAULT JUDGMENT O R D E R

THIS MATTER came on for hearing upon the Motion of the Plaintiff, Nationwide registry & Security, Ltd., for default judgment against the Defendant, Nahid Ahmadpour; and

IT APPEARING TO THE COURT that the Defendant, Nahid Ahmadpour, was properly served with the Complaint filed herein and is subject to personal jurisdiction of this Court; that more than twenty-one (21) days has elapsed since service of process upon the Defendant and more than ten (10) days has elapsed since notice was provided to her pursuant to Va. Code § 8.01-296(2)(b); that the Defendant has not filed any responsive pleadings or otherwise responded to said Complaint and is therefore in default; and that judgment by default should be entered herein on behalf of the Plaintiff; it is, therefore,

ADJUDGED, ORDERED AND DECREED as follows:

1. That the Defendant, Nahid Ahmadpour, was properly served with the Complaint filed herein and is subject to personal jurisdiction in this Court.

2. That more than twenty-one (21) days has elapsed since service of process upon the Defendant, Nahid Ahmadpour, and more than ten (10) days has elapsed since notice was provided

**EXHIBIT B**

to her pursuant to Va. Code § 8.01-296(2)(b), the Defendant having not filed any responsive pleadings or otherwise responded to said Complaint, and is in default.

3. That the Defendant's actions herein constituted actual fraud.

4. That the Plaintiff, Nationwide registry & Security, Ltd., be and hereby is, awarded judgment against the Defendant, Nahid Ahmadpour, in the amount of Eighty Thousand and No/100 Dollars ($80,000); punitive damages in the amount of $____∅____; with interest on said sums at the rate of eighteen percent (18%) per annum from October 10, 2005, until paid in full; reasonable attorney's fees in the amount of $ _16,000.00_____, and its costs in this behalf expended.

ENTERED THIS ___17th___ day of January, 2008.

JUDGE

I ASK FOR THIS:

O'CONNOR & VAUGHN LLC
11490 Commerce Park Drive, Suite 510
Reston, Virginia 20191
(703) 689-2100 Telephone
(703) 471-6296 Facsimile

By _____
    Robert L. Vaughn, Jr.
    VSB No. 20633
    Counsel for Plaintiff

A COPY TESTE.
JOHN T. FREY, CLERK

BY: _____
       Deputy Clerk
Date: _____1/3/108_____
Original retained in the office of
the Clerk of the Circuit Court of
Fairfax County Viginia

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                    )
                                          )
NAHID AHMADPOUR                           )        Case No. 08-13766-SSM
                                          )        Chapter 7
          Debtor                          )

## MEMORANDUM OPINION AND ORDER

A hearing was held on January 5, 2010, on a motion by Nationwide Registry & Security,

Ltd. ("Nationwide"), to strike the debtor's attempt to amend her list of creditors and for an award

of sanctions. Nationwide and the debtor were each represented by counsel.[1]  Because amended

schedules were never actually filed, there is nothing in literal terms for the court to strike.

Additionally—and because in any event the filing of amended schedules would have no effect on

the dischargeability of Nationwide's claim—the court will not award sanctions. Whether the

judgment Nationwide is seeking to collect from the debtor is excepted from discharge is not

properly before the court at this time but may be decided either by the state court in connection

with proceedings to enforce the judgment or by this court if either the debtor or the creditor files

an adversary proceeding to determine dischargeability.

### Background

Nahid Ahmadpour ("the debtor") filed a voluntary petition in this court on June 27, 2008,

for relief under chapter 7 of the Bankruptcy Code. The case was noticed to creditors as a "no

---

[1]  The debtor's counsel of record is Jeffrey Sherman, Esquire. At the hearing, however, the
debtor was represented by Tommy Andrews, Jr., Esquire, who has not yet filed a written notice of
appearance, but should promptly do so.

1



asset" case, and no bar date was set for filing proofs of claim. The chapter 7 trustee filed a report

of no distribution on August 27, 2008, and the debtor was granted a discharge on October 6,

2008. The case was then closed on October 10, 2008.

Although Nationwide had obtained a default judgment against the debtor on January 17,

2008—some six months prior to the filing of the bankruptcy petition—in the amount of

$80,000.00 with interest at 18% from October 10, 2005, plus $16,000.00 in attorney's fees,

Nationwide was not listed as a creditor and was not given notice of the commencement of the

case by the clerk. According to the present motion, Nationwide is the assignee of the Las Vegas

Hilton Hotel and Casino, which had a claim against the debtor for $80,000 in bad checks written

in October 2005. On November 9, 2006, the debtor pleaded guilty in Nevada state court to a

criminal information charging her with drawing and passing checks in the amount of $211,000

without sufficient funds in the drawee bank with intent to defraud, including $80,000 in checks

to the Las Vegas Hilton Hotel and Casino. Although the schedules filed in her case listed

$496,683 in unsecured debts, Las Vegas Hilton Hotel and Casino was not listed as a creditor and

was not mailed notice of the commencement of the case.[2]

## Discussion

### A

A chapter 7 discharge discharges a debtor from "all" prepetition debts except those

specified in § 523(a), Bankruptcy Code. § 727(b), Bankruptcy Code. Among the debts excluded

from discharge are debts held by creditors who are not listed in sufficient time to file a timely

---

[2] Counsel for the debtor stated at the hearing that the creditor was not listed based on the advice
of her former attorney, who expressed fear that doing so would adversely impact her probation
and restitution plan on the criminal charge.

2

proof of claim, or, if their debts would otherwise fall within the discharge exceptions in §§ 523(a)(2), (4), or (6) for fraud, fiduciary defalcation, larceny, embezzlement, or willful and malicious injury, in time to file a timely complaint to determine dischargeability. *Id.* § 523(a)(3)(A), (B). In addition to being unlisted, the creditor must not have had actual knowledge of the bankruptcy case in time to file a timely proof of claim or timely dischargeability complaint, as appropriate. *Id.*

In a "no asset" case in which no bar date has been set for filing proofs of claim, an unlisted debt is discharged—even if the creditor was intentionally omitted—unless the debt is of the kind specified in § 523(a)(2), (4), or (6), Bankruptcy Code. *Horizon Aviation of Va., Inc. v. Alexander*, 296 B.R. 380 (E.D. Va. 2003). With respect to a *listed* creditor, only the Bankruptcy Court may make a determination as to whether a debt is of the kind specified in § 523(a)(2), (4), or (6), and a complaint seeking such a determination must be filed within 60 days of the first date set for the meeting of creditors. § 523(c), Bankruptcy Code; Fed.R.Bankr.P. 4007(c). But a complaint to determine the dischargeability of an unlisted debt may be filed "at any time." Fed.R.Bankr.P. 4007(b). Moreover, by failing to list the creditor, the debtor effectively waives the exclusive jurisdiction of the bankruptcy court to determine the dischargeability of the debt, and that issue may be determined in a non-bankruptcy court having jurisdiction to adjudicate or enforce the debt. *In re Toussaint*, 259 B.R. 96, 100 (Bankr. E.D. N.C. 2000).

In any event, merely amending the schedules after the bar date has passed for filing a proof of claim or dischargeability complaint has no effect on the dischargeability of the debt: either the debt was discharged or it wasn't, and amending the schedules cannot change the result. *In re Woolard*, 190 B.R. 70, 74 (Bankr. E.D. Va. 1995). At one time, the local rules of this

3

court allowed the filing of amended schedules in a closed case in which there was no distribution to creditors upon notice to the creditor being added and the filing of an affidavit that the omission of the creditor was not intentional. Former Loc.Bankr.R. 1009-1(C). That provision, however, was repealed effective December 1, 2009, and had effectively been a dead letter for many years. The purpose of the provision, as this court has previously noted, was to address the "practical difficulty . . . that many collection attorneys, and a significant number of state court judges, assume that a debt not listed on a debtor's schedules is *per se* excepted from the debtor's discharge, and that the best evidence the debt was discharged is a copy of the discharge order and the debtor's filed schedules listing the debt." *Woolard*, 190 B.R. at 75. The rule thus allowed the filing of amended schedules in a closed case as a "pragmatic response" to those concerns. *Id.* In recent years, however, the reported opinions of this court have consistently affirmed that merely amending the schedules has no legal effect, *see, e.g.*, *In re Carberry*, 186 B.R. 401 (Bankr. E.D. Va. 1995), and the rule permitting amended schedules to be filed in a closed case was ultimately repealed as accomplishing no useful purpose as well as being inconsistent with Rule 1009(a), Federal Rules of Bankruptcy Procedure, which allows schedules to be amended by the debtor "as a matter of course at any time *before the case is closed*." (emphasis added).

B.

Because no bar date was set for filing proofs of claim, Nationwide's judgment is not excepted from discharge under § 523(a)(3)(A) even if the debtor's omission of Nationwide or the Hilton Hotel or both was intentional. Whether it is excepted from discharge under

4

§ 523(a)(3)(B) depends on whether the debt is of the type specified in § 523(a)(2), (4) or (6),

Bankruptcy Code. As this court explained in *Woolard*:

> If there is a dispute as to whether the debt falls within one of the excepted
> categories, the state court has both the jurisdiction and the duty to decide the
> issue. Alternatively, either the debtors or the creditor could request that the
> bankruptcy case be reopened for the purpose of filing an adversary complaint in
> this court to obtain an authoritative determination as to whether the debt has been
> discharged.

190 B.R. at 76.

C.

Only brief discussion is required with respect to Nationwide's request for sanctions. The

only authority cited by Nationwide is Rule 9011, which allows a court to impose sanctions

against an attorney or unrepresented party who, in "*presenting to the court* (whether by signing,

filing, submitting, or later advocating) a petition, pleading, written motion or other paper"

(emphasis added) does so for an improper purpose or urges legal positions not warranted by

existing law or by a nonfrivolous argument for the extension, modification or reversal of existing

law or the establishment of new law, or makes factual contentions that are without evidentiary

support. Fed.R.Bankr.P. 9011(b). Because the rule addresses only pleadings and papers

"presented to" the court, it has no applicability to pleadings and papers that are served on a party

but, for whatever reason, are never filed with the court. But even if that were not the case, the

present motion, to the extent it seeks an award of sanctions, fails to comply with Rule 9011(c),

which requires (a) that a request for sanctions be made *separately* from other motions or requests

and (b) that it be not be filed with the court, unless within 21 days after service on the opposing

party, the party fails to withdraw the challenged pleading or paper. Fed.R.Bankr.P.

9011(c)(1)(A).

5

## O R D E R

For the foregoing reasons, it is

**ORDERED:**

1. The motion to strike is denied as moot, since the debtor has not—and may not—file amended schedules in the closed case.

2. The motion for sanctions is denied.

3. The entry of this order is without prejudice to the right of either the movant or the debtor (a) to litigate the dischargeability of the judgment debt before the state court or (b) to bring an adversary proceeding in this court to obtain such a determination.

4. The clerk will mail a copy of this order, or give electronic notice of its entry, to the parties listed below.

Date: Jan 8 2010                          /s/ Stephen S. Mitchell
_____                   _____
                                          Stephen S. Mitchell
Alexandria, Virginia                      United States Bankruptcy Judge

                                          Entered on Docket: January 8, 2010

Copies to:

Robert L. Vaughn, Jr., Esquire
O'Connor & Vaughn, LLC
11490 Commerce Park Dr., Suite 510
Reston, VA 20191
Counsel for Nationwide Registry & Security, Ltd.

Tommy Andrews, Jr., Esquire
Tommy Andrews, Jr., P.C.
122 N. Alfred Street
Alexandria, VA 22314
Counsel for the debtor

6

Page 1

V I R G I N I A:

    IN THE CIRCUIT COURT OF FAIRFAX COUNTY

-------------------------------x

NATIONWIDE REGISTRY & SECURITY,

        Plaintiff,

-vs-                              Case No.

NAHID AHMADPOUR,                  2007-14478

        Defendant.

-------------------------------x

                Wednesday, August 12, 2009

                Reston, Virginia


          PARTIAL TRANSCRIPT

            -- EXCERPT --

      DEPOSITION OF NAHID AHMADPOUR

        The deposition of NAHID AHMADPOUR was

taken on Wednesday, August 12, 2009, commencing

at 10:04 a.m., at the law offices of O'Connor &

Vaughn, LLC, 11490 Commerce Park Drive, before

CHERYL NICHOLSON, CLR, Stenotype Reporter and

Notary Public in and for the Commonwealth of

Virginia.

**EXHIBIT**

*D*

Page 2

```
 1    APPEARANCES:

 2

 3         On behalf of the Plaintiff:

 4         ROBERT L. VAUGHN, JR., ESQ.

 5         O'Connor & Vaughn, LLC

 6         11490 Commerce Park Drive

 7         Suite 510

 8         Reston, Virginia 20191

 9         703.689.2100

10

11

12

13

14

15

16

17

18

19

20

21

22
```

Nahid Ahmadpour
August 12, 2009

Page 3

1                    C O N T E N T S

2

3                EXAMINATION OF NAHID AHMADPOUR

4     BY MR. VAUGHN ......... 4

5

6                    E X H I B I T S

7                (Retained by counsel)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Nahid Ahmadpour Case 18-00039   Doc 109-1   Filed 05/01/19   Page 30 of 90 ecurity v. Ahmadpour
August 12, 2009                    Nationwide Reg. ..ry & Security v. Ahmadpour
                                                          Case No. 2007-14478

Page 4

```
 1                P R O C E E D I N G S

 2                     NAHID AHMADPOUR,

 3       having been duly sworn, testified as follows:

 4              EXAMINATION ON BEHALF OF PLAINTIFF

 5

 6       Q.    Did you tell your bankruptcy counsel

 7   not to list my client as a creditor?

 8       A.    No.

 9       Q.    Why was my client not listed as a

10   creditor?

11       A.    Because he said -- because I had to

12   deal with the government and you guys not

13   supposed to come after me for five years.

14       Q.    Sounds like you made a conscious

15   decision not to list my client as a creditor,

16   correct?

17       A.    That's what my attorney suggested me.

18   He said that I'm paying $50, and I settle down

19   with the Nevada cases, and I'm paying off to the

20   government for that.  So everything is settled,

21   like your case is settled.  That's what he said.

22       Q.    So your attorney told you that my
```

Nahid Ahmadpour    Case 18-00039   Doc 109-1   Filed 05/01/19   Page 31 of 90   Nationwide Regy .ry & Security v. Ahmadpour
August 12, 2009                                                        Case No. 2007-14478

Page 5

 1    client should not be listed as a creditor

 2    because it was his belief that the matter was

 3    resolved with whatever settlement you reached

 4    with the Nevada government?

 5         A.    That's what my attorney said, yes.

 6         Q.    So then a conscious decision was made

 7    that you would not list my client as a creditor

 8    on your bankruptcy case; is that correct?

 9         A.    That's all what my attorney said, yes.

10         Q.    Again, make sure you're answering my

11    question.

12              Was it a conscious decision not to

13    list my client as a creditor on your bankruptcy

14    schedules?

15         A.    Well, this question, I'm sorry. I just

16    not clear what's your question is.

17         Q.    Let me rephrase it.  Did you choose --

18    strike that.

19              Did you intentionally leave my client

20    off the list of creditors?

21         A.    Not me, my attorney doing all these

22    things for me.

Case 18-00039   Doc 109-1   Filed 05/01/19   Page 32 of 90
Nahid Ahmadpour                                    Nationwide Regi_ry & Security v. Ahmadpour
August 12, 2009                                    Case No. 2007-14478

Page 6

1          Q.    On your attorney's advice, you

2    intentionally left my client off of the list of

3    creditors in your bankruptcy filings?

4          A.    I don't know.  I know everything is

5    there.  I don't know what they did, so.

6          Q.    All right, ma'am.

7          A.    My attorney for Nevada case, he did

8    left them I guess, because I settled down with

9    them already so.

10         Q.    Did you have a discussion with your

11   attorney about whether or not my client should

12   be listed as a creditor on your bankruptcy

13   schedules?

14         A.    What I remember, I put everything in

15   front of him, because I'm not there, and he took

16   care of everything.

17         Q.    That wasn't my question.  You have

18   already said that you had a discussion with your

19   attorney.

20         A.    Right.

21         Q.    You volunteered that information, that

22   you had a discussion with your attorney as to

Page 7

1   whether or not my client should be listed.

2        A.    Right.

3        Q.    You said the discussion was that since

4   you had settled the matter with the state of

5   Nevada, that you believe that took care of my

6   client?

7        A.    Yes.

8        Q.    And based upon that understanding, you

9   made a choice not to list my client as a

10  creditor?

11       A.    Yes.  That's what my attorney

12  suggested.

13       Q.    Have I confused you at all about that

14  question?

15       A.    No.

16       Q.    You understand what I'm asking?

17       A.    Sure.  We didn't put your client

18  because my attorney suggested, since it is

19  settled down already with the Nevada, for five

20  years we could not put it in bankruptcy.

21       Q.    Cannot put it in your bankruptcy.

22  That's what he told you.

Page 8

1        A.    That's what he suggested me, that we

2    don't put that in bankruptcy.

3              (Whereupon, at 12:57 p.m., signature

4    having been waived, the deposition was

5    concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Page 9

```
 1   UNITED STATES OF AMERICA )

 2   COMMONWEALTH OF VIRGINIA )

 3            I, Cheryl Nicholson, the reporter

 4   before whom the foregoing deposition was taken,

 5   do hereby certify that the witness whose

 6   testimony appears in said deposition was sworn

 7   by me; that the testimony of the witness was

 8   taken by me in machine shorthand and thereafter

 9   transcribed at my direction; that said

10   deposition is a true record of the testimony

11   given by said witness; that I am neither counsel

12   for, related to, nor employed by any party to

13   the action in which this deposition was taken;

14   and, further, that I am not a relative or

15   employee of any attorney or counsel employed by

16   any party hereto, or financially or otherwise

17   interested in the outcome of this action.

18   _____

19                    Cheryl Nicholson

20   Notary Public for the Commonwealth of Virginia.

21   Notary Registration Number - 270604

22   My Commission expires July 31, 2012.
```

VIRGINIA:

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

Nationwide Registry & Security Ltd

      Plaintiff/Complainant,

v.                    Chancery/Law No. 2009-17377

Nahid Ahmadpour, et al

      Defendant

## ORDER

This matter came to be heard on the 18th day of October 20 10 on the Plaintiff(s)/Complainant(s)/Defendant(s)'s motion Complaint to Set Aside

_____

Upon the matters presented to the Court it is hereby

ORDERED as follows: For the reasons stated from the bench, which are incorporated herein by reference,

(1) The transfer by Defendant Ahmadpour of her 100% interest in NEMETAF, Inc., a District of Columbia corporation to Defendant Yani Bakashtoo on or about December 7, 2005 is void and is hereby set aside & Defendant Ahmadpour is deemed to be the 100% owner of NEMETAF, Inc.

(2) Plaintiff is awarded attorneys fees of $15,000

ENTERED this 18 day of October, 2010.

_____
Judge

SEEN and no: [objective as to stay of closing on real estate or being neg'd to take no consent]

SEEN and Objected to for finding that statutory elements were met

_____    _____
Counsel for Plaintiff/Complainant    Counsel for Defendant   #71167
                                         Adam T. Knoll

EXHIBIT E

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| In re: | ) |
| | ) |
| YOURI BEITDASHTOO | ) |
| | )    Case No. 11-16702-BFK |
| | )    Chapter 7 (Converted Chapter 13) |
| | ) |
| ——————————————— | ) |
| | ) |
| NATIONWIDE REGISTRY & | ) |
| SECURITY LTD. | ) |
| | ) |
|      Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| YOURI BEITDASHTOO | ) |
| | ) |
| and | ) |
| | ) |
| DONALD F. KING, TRUSTEE | ) |
| | ) |
|      Defendants | ) |
| ——————————————— | ) |

## **ORDER GRANTING RELIEF FROM THE STAY**

Upon consideration of the Motion of Nationwide Registry & Security, Ltd, ("NRS"), to lift the automatic stay; it is, therefore

**ORDERED** that the automatic stay imposed by 11 U.S.C. § 362 is modified to permit NRS to enforce its rights under that certain Deed of Trust against the property known as Lot Sixty-six (66), Section Four (4), Chain Bridge Forest, also known as 4054 - 41st Street, North, McLean, Virginia 22101 (the "Property") dated August 2, 2011, and recorded as Instrument No. 2011-029643.001 in Deed Book 21787 at Page 1887 in the Clerk's Office of the Circuit Court of the County of Fairfax,("NRS Trust"); and it is further,

*Robert L. Vaughn, Jr., VSB 20633*
*11490 Commerce Park Drive, Suite 510*
*Reston, VA 20191*
*(703) 689-2100*



**ORDERED** that the automatic stay imposed by 11 U.S.C. § 362 is modified to permit NRS

to pursue its pending action against the Debtor and his wife, Nahid Ahmadpour in the Circuit Court

of Fairfax County, Virginia, Case No. Case No. 2010-15001.

Dated: **Jul 12 2012** _____, 2012.

# /s/ Brian F. Kenney

BRIAN F. KENNEY
UNITED STATES BANKRUPTCY JUDGE

Entered on Docket: **7/12/2012 sas**

**I ASK FOR THIS:**

**O'CONNOR & VAUGHN LLC**
11490 Commerce Park Drive, Suite 510
Reston, Virginia 20191
(703) 689-2100 Telephone
(703) 471-6496 Facsimile

By    /s/ Robert L. Vaughn, Jr.
       Robert L. Vaughn, Jr., VSB # 20633
       *Counsel for NRS*


   /s/ Nathan A. Fisher      *[with permission via email of 7/7/12 to Robert L. Vaughn]*
Nathan A. Fisher, Esq.
8977 Chain Bridge Road, #2
Fairfax, Virginia 22030
*Counsel for Debtor*


**ODIN FELDMAN & PITTLEMAN, P.C.**
9302 Lee Highway, Suite 1100
Fairfax, Virginia 22030
(703) 218-2134 Telephone
(703) 218-2160 Facsimile

By    /s/ James W. Reynolds *[via email dated 6/29/2012]*
       James W. Reynolds, VSB #33226
       *Counsel for Donald F. King, Chap. 7 Trustee*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re: )
)
NAHID AHMADPOUR ) Case No. 11-17929-BFK
) Chapter 13
Debtor )

**ORDER DENYING CONFIRMATION AND DISMISSING CASE**

A hearing was held March 14, 2012, on the Objection (Docket No. 44) to Confirmation

filed by Nationwide Registry & Security, Ltd. ("NRS"). The Debtor did not appear at the

hearing, but was present by counsel. NRS was also present by counsel. The Chapter 13 Trustee,

Thomas P. Gorman, Esquire, was also present at the hearing.

The burden is on the Debtor to demonstrate that all of the requirements for confirmation

of a Chapter 13 plan have been satisfied. *See, e.g.*, *Tillman v. Lombard*, 156 B.R. 156, 158 (E.D.

Va. 1993) (holding that "the debtor bears the burden of demonstrating that a proposed Chapter

13 plan meets the requirements of 11 U.S.C. § 1325, including the good faith requirement of

subsection (a)(3)"); *In re Allen*, No. 7-98-01521-WSR-13, 1999 Bankr. LEXIS 1766, at *30

(Bankr. W.D. Va. Sept. 9, 1999) (holding that the debtor "has the obligation to propose a plan

which can be confirmed by the Court under the requirements of the Bankruptcy Code"). This the

Debtor has failed to do. Further, upon consideration of the representations made by the parties at

the hearing, and the arguments of counsel, the Court finds that the Debtor is not proceeding with

the present case in good faith, in violation of 11 U.S.C. §§ 1325(a)(3) and (a)(7). Specifically,

the Court finds that, instead of using her disposable income for the purpose of repaying her

creditors in a Chapter 13 plan, the Debtor has spent inordinately large sums of money at various



casinos during the course of this case. Accordingly, for the reasons stated on the record, it is

### ORDERED:

1. Confirmation of the Debtor's Plan is denied without leave to amend.

2. The case is dismissed.

3. The clerk will mail a copy of this order, or give electronic notice of its entry, to the

parties listed below.

Date: Mar 19 2012 _____ /s/ Brian F. Kenney _____

Brian F. Kenney

Alexandria, Virginia                           United States Bankruptcy Judge

Copies to:

Entered on Docket: March 19, 2012

Nahid Ahmadpour
4054 41 Street, N.
Mc Lean, VA 22101
Debtor

Nathan A. Fisher, Esquire
3977 Chain Bridge Road, #2
Fairfax, VA 22030
Counsel for the Debtor

Robert L. Vaughn, Esquire
O'Connor & Vaughn LLC
11490 Commerce Park Drive, Suite 510
Reston, Virginia 20191
Counsel for Nationwide Registry & Security, Ltd.

Thomas P. Gorman, Esquire
300 N. Washington St. Ste. 400
Alexandria, VA 22314
Chapter 13 Trustee

Page 2 of 2

# CLIENT: Nationwide Registry/Ahmadpour

Account #N32

| DATE | RECEIVED | WITHDRAWALS | RLV Portion | BALANCE | CHECK # | PAYABLE TO | |
|------|----------|-------------|-------------|---------|---------|------------|---|
| 6/27/2011 | $1,937.65 | | | $1,937.65 | 230098878 | RLV TRUST | Citibank |
| 3/7/2013 | $5,356.67 | | | $7,294.32 | 335500 | RLV TRUST | Trustee |
| 4/4/2013 | $1,800.00 | | | $9,094.32 | 335915 | RLV TRUST | Trustee |
| 4/23/2013 | | | $1,818.86 | $7,275.46 | 1196 | OP | |
| 4/23/2013 | | $7,275.46 | | $0.00 | 1197 | NRS | |
| 5/6/2013 | $1,800.00 | | | $1,800.00 | 336327 | RLV Trust | Trustee |
| 6/5/2013 | $1,800.00 | | | $3,600.00 | 336739 | RLV Trust | Trustee |
| 6/6/2013 | | $2,880.00 | | $720.00 | 1206 | NRS | |
| 6/6/2013 | | | $720.00 | $0.00 | 1207 | OP | |
| 7/8/2013 | $1,800.00 | | | $1,800.00 | 337140 | RLV TRUST | |
| 7/17/2013 | | | $360.00 | $1,440.00 | 1217 | OP | |
| 7/17/2013 | | $1,440.00 | | $0.00 | 1218 | NRS | |
| 8/5/2013 | $1,800.00 | | | $1,800.00 | 337553 | RLV TRUST | |
| 9/5/2013 | | | $360.00 | $1,440.00 | 1225 | OP | |
| 9/5/2013 | | $1,440.00 | | $0.00 | 1226 | NRS | |
| 9/5/2013 | $1,800.00 | | | $1,800.00 | 337946 | RLV TRUST | Trustee |
| 10/3/2013 | $1,800.00 | | | $3,600.00 | 338364 | RLV Trust | Trustee |
| 10/9/2013 | | $2,880.00 | | $720.00 | | NRS | |
| 10/9/2013 | | | $720.00 | $0.00 | | OP | |
| 11/5/2013 | $1,800.00 | | | $1,800.00 | 338784 | RLV Trust | Trustee |
| 1/8/2014 | $3,600.00 | | | $5,400.00 | 339622 | RLV Trust | Trustee |
| 1/13/2014 | | | $1,080.00 | $4,320.00 | 1006c | OP | |
| 1/13/2014 | | $4,320.00 | | $0.00 | 1005c | NRS | |
| 2/11/2014 | $1,800.00 | | | $1,800.00 | 400080 | RLV TRUST | |
| 3/6/2014 | $1,800.00 | | | $3,600.00 | 400491 | RLV Trust | |
| 4/2/2014 | | | $720.00 | $2,880.00 | 1015 | OP | |
| 4/2/2014 | | $2,880.00 | | $0.00 | 1017 | NRS | |
| 4/4/2014 | $1,800.00 | | | $1,800.00 | 400875 | RLV TRUST | |
| 4/29/2014 | | $1,440.00 | | $360.00 | 1021 | NRS | |
| 4/29/2014 | | | $360.00 | $0.00 | 1020 | OP | |
| 5/6/2014 | $1,800.00 | | | $1,800.00 | 401271 | RLV TRUST | |
| 6/6/2014 | $1,800.00 | | | $3,600.00 | 401653 | RLV TRUST | |
| 7/8/2014 | $1,800.00 | | | $5,400.00 | 402028 | RLV Trust | |
| 8/5/2014 | $1,800.00 | | | $7,200.00 | 402394 | RLV TRUST | |
| 8/5/2014 | | $5,760.00 | | $1,440.00 | 1038 | NRS | |
| 8/5/2014 | | | $1,440.00 | $0.00 | 1039 | OP | |
| 9/4/2014 | $1,800.00 | | | $1,800.00 | 402766 | RLV TRUST | |
| 9/17/2014 | | $1,440.00 | $360.00 | $0.00 | 1047/1048 | NRS/OP | |
| 10/7/2014 | $1,800.00 | | | $1,800.00 | 403123 | RLV TRUST | |
| 11/7/2014 | $1,800.00 | | | $3,600.00 | 403452 | RLV TRUST | |
| 12/1/2014 | $1,800.00 | | | $5,400.00 | 403769 | RLV TRUST | |
| 1/5/2015 | | $4,320.00 | $1,080.00 | $0.00 | 1075/1073 | NRS/OP | |
| 1/5/2015 | $1,800.00 | | | $1,800.00 | 404073 | RLV Trust | |



| DATE | RECEIVED | WITHDRAWALS | RLV Portion | BALANCE | CHECK # | PAYABLE TO |
|---|---|---|---|---|---|---|
| 2/2/2015 | $1,800.00 | | | $3,600.00 | 404407 | RLV TRUST |
| 2/2/2015 | | $2,880.00 | $720.00 | $0.00 | 1083/1084 | NRS/OP |
| 3/4/2015 | $1,800.00 | | | $1,800.00 | 404726 | RLV TRUST |
| 4/6/2015 | $1,800.00 | | | $3,600.00 | 405040 | RLV TRUST |
| 4/7/2015 | | $2,880.00 | $720.00 | $0.00 | 1094/1093 | NRS/OP |
| 5/4/2015 | $1,800.00 | | | $1,800.00 | 405376 | RLV TRUST |
| 6/3/2015 | $1,800.00 | | | $3,600.00 | 405714 | RLV Trust |
| 6/3/2015 | | $2,880.00 | $720.00 | $0.00 | 1107/1108 | NRS/OP |
| 7/13/2015 | $1,800.00 | | | $1,800.00 | 406053 | RLV TRUST |
| 8/5/2015 | $1,800.00 | | | $3,600.00 | 406378 | RLV TRUST |
| 9/3/2015 | $1,600.00 | | | $5,200.00 | 406683 | RLV TRUST |
| 9/3/2015 | | $4,160.00 | $1,040.00 | $0.00 | 1126/1127 | NRS/Op |
| 10/5/2015 | $2,000.00 | | | $2,000.00 | 407032 | RLV TRUST |
| 11/5/2015 | $1,800.00 | | | $3,800.00 | 407354 | RLV TRUST |
| 11/5/2015 | | $3,040.00 | $760.00 | $0.00 | 1137/1136 | NRS/Op |
| 12/7/2015 | $1,600.00 | | | $1,600.00 | 407692 | RLV TRUST |
| 1/4/2016 | $2,000.00 | | | $3,600.00 | 408018 | RLV TRUST |
| 2/4/2016 | $1,800.00 | | | $5,400.00 | 408333 | RLV TRUST |
| 2/4/2016 | | $4,320.00 | $1,080.00 | $0.00 | 1154/1155 | NRS/Op |
| 3/3/2016 | $1,600.00 | | | $1,600.00 | 408657 | RLV TRUST |
| 4/6/2016 | $1,800.00 | | | $3,400.00 | 409000 | RLV Trust |
| 5/5/2016 | $2,000.00 | $4,320.00 | $1,080.00 | $0.00 | 1154/1153 | NRS/Op |
| 6/6/2016 | $1,600.00 | | | $1,600.00 | 409614 | RLV TRUST |
| 7/6/2016 | $1,800.00 | | | $3,400.00 | 409914 | RLV TRUST |
| 7/12/2016 | | $2,750.00 | $650.00 | $0.00 | 1190/1191 | NRS/Op |
| 8/3/2016 | $2,000.00 | | | $2,000.00 | 410200 | RLV TRUST |
| 9/6/2016 | $1,800.00 | | | $3,800.00 | 410484 | RLV Trust |
| 9/7/2016 | | $2,461.13 | $1,338.87 | $0.00 | 1206/1207 | NRS/OP |
| 10/3/2016 | $1,826.00 | | | $1,826.00 | 1016435 | RLV TRUST |
| 10/31/2016 | $1,858.00 | | | $3,684.00 | 1018367 | RLV TRUST |
| 12/5/2016 | $1,858.00 | | | $5,542.00 | 1020222 | RLV TRUST |
| 1/9/2017 | $1,858.00 | | | $7,400.00 | 1022215 | RLV TRUST |
| 1/11/2017 | | $4,440.00 | $2,960.00 | $0.00 | 1233/1232 | NRS/Op |
| 2/3/2017 | $1,858.00 | | | $1,858.00 | 1023982 | RLV TRUST |
| 3/6/2017 | $1,858.00 | | | $3,716.00 | 1025984 | RLV TRUST |
| 4/4/2017 | | $2,229.60 | $1,486.40 | $0.00 | 1247/1246 | NRS/OP |
| 6/12/2017 | $7,639.77 | | | $7,639.77 | 1031126 | RLV TRUST |
| 7/6/2017 | | $4,583.86 | $3,055.91 | $0.00 | 1266/1265 | NRS/Op |
| | $101,650.09 | $77,020.05 | $24,630.04 | | | |

| | |
|---|---|
| Debtor 1 | NAHID AHMADPOUR |
| Debtor 2 (Spouse, if filing) | |

United States Bankruptcy Court for the: District of Maryland

Case number: 18-11248

## Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1: Identify the Claim

**1. Who is the current creditor?**

Nationwide Registry and Security, Ltd.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☐ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Robert L. Vaughn, Jr., Esq.
Name

11490 Commerce Park Dr., #510
Number    Street

Reston       VA        20191
City         State      ZIP Code

Contact phone  703-689-2100

Contact email  rvaughn@oconnorandvaughn.com

Where should payments to the creditor be sent? (if different)

Name

Number    Street

City         State      ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
         MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

**EXHIBIT**
tabbies

**Part 2:**   **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6.  Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___ |
| 7.  How much is the claim? | $ 194,816.96 _____ . Does this amount include interest or other charges?<br>☐ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8.  What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Fairfax Circuit Ct judgement Orders 1/17/08 & 10/18/10 [attached] |
| 9.  Is all or part of the claim secured? | ☐ No<br>☑ Yes.  The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:**  Va Code Section 55-80, et seq. _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**  $ Unknown _____<br>**Amount of the claim that is secured:**  $ 194,816.96 _____<br><br>**Amount of the claim that is unsecured:** $_____  (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**  $ N/A _____<br><br>**Annual Interest Rate** (when case was filed) 6.00 %<br>☑ Fixed<br>☐ Variable |
| 10. Is this claim based on a lease? | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition.  $_____ |
| 11. Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

Amount entitled to priority

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$_____

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$_____

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.

$_____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:    Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  08/27/2018
                  MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | Robert Lee Vaughn, Jr. | | |
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | O'Connor & Vaughn LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 11490 Commerce Park Dr., #150 | | |
| | Number        Street | | |
| | Reston | VA | 20191 |
| | City | State | ZIP Code |
| Contact phone | 703-689-2100 | Email | rvaughn@oconnorandvaughn.com |

# AHMADPOUR JUDGMENT COMPUTATION

Principal:     $80,000
               18% intrest 10/10/2005
               $16,000 attorney's fees [Case No. 2007-14478]
               $15,000 attorney's fees [Case No. 2009-17377]

| | |
|---|---|
| 10/10/2005 to 10/9/2006 | $14,400 |
| 10/9/2007 | $14,400 |
| 10/9/2008 | $14,400 |
| 10/9/2009 | $14,400 |
| 10/9/2010 | $14,400 |
| 10/9/2011 | $14,400 |
| 10/9/2012 | $14,400 |
| 10/9/2013 | $14,400 |
| 10/9/2014 | $14,400 |
| 10/9/2015 | $14,400 |
| 10/9/2016 | $14,400 |
| 10/9/2017 | $14,400 |

t

                                    $172,800
10/10/2017 to 3/1/2018              $5,601.90 [142 days x $39.45/day]
As of 3/1/2018 Total Interest:      $178,401.90

           Total Payments:    $101,650.09
                              * $76,751.81

Amounts due as of 3/1/2018:

       Principal:             $80,000
       Unpaid Interest:       $76,751.81
       Attorney's Fees:       $31,000
                              * $187,751.81

   Interest  3/1/18 to  8/27/18 . . . . . : . . 7,065.15

* *interest continues to accrue at $39.45/day*

     AMOUNT DUE AS OF 8/27/18      $194,816.96

# EXHIBIT J

Exhibits introduced by parties in Lift Stay
proceedings in Case #11-16702



## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| **YOURI BEITDASHTOO,** | * | **Case No. 11-16702-BFK** |
| | * | Chapter 7 |
| Debtor. | * | |
| **DONALD F. KING, TRUSTEE,** | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | **Adv. Pro. No. 12-_____-BFK** |
| | * | |
| **MARC E. ALBERT, TRUSTEE and** | * | |
| **NATIONWIDE REGISTRY AND** | * | |
| **SECURITY LTD.,** | * | |
| | * | |
| Defendants. | * | |

### COMPLAINT

DONALD F. KING, TRUSTEE, by counsel, pursuant to 11 U.S.C. §541, files this

complaint against Marc E. Albert, Trustee and Nationwide Registry and Security, Ltd.

("NRS") for the determination of the bankruptcy estate's interest in certain property and,

in support thereof, states as follows:

    1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157

and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (O).

    2.    Youri Beitdashtoo (the "Debtor") filed a voluntary chapter 13 petition with

his wife on September 13, 2011. The case was subsequently dismissed as to his wife.

On March 27, 2012, the Court entered an order converting the case to chapter 7.

---

**JAMES W. REYNOLDS, ESQUIRE, VSB NO. 33226**
Counsel for Donald F. King, Trustee
**ODIN FELDMAN & PITTLEMAN PC**
1775 Wiehle Avenue, Suite 400
Reston, Virginia 20190
Direct: 703-218-2134
Fax: 703-218-2160
E-Mail: jim.reynolds@ofplaw.com



3.     Donald F. King (the "Beitdashtoo Trustee") is the duly appointed chapter 7
trustee in this case.

4.     On March 29, 2012, HEMETAF, Inc. ("HEMETAF") filed a voluntary
chapter 7 petition with the United States Bankruptcy Court for the District of Columbia.
The case is identified as case number 12-00232. Marc E. Albert (the "HEMETAF
Trustee") is the duly appointed chapter 7 trustee in the HEMETAF bankruptcy case.
Pursuant to its statements of financial affairs, HEMETAF is owned by the Debtor's wife,
Nahid Ahmadpour ("Ms. Ahmadpour"). Upon information and belief, the Debtor was
employed by HEMETAF prior to the filing of its chapter 7 bankruptcy petition.

5.     Upon information and belief, NRS is one of Ms. Ahmadpour's creditors.
Upon information and belief, NRS' claim is based upon a judgment it obtained against
Ms. Ahmadpour in the principal amount of $80,000.00.

6.     While this case was still pending in chapter 13, the Debtor paid the total
amount of $20,100.00 (the "Funds") to the chapter 13 trustee while attempting to get a
chapter 13 plan confirmed. Upon conversion the chapter 13 trustee turned the Funds
over to the Beitdashtoo Trustee pending further order of this Court.

7.     The Beitdashtoo Trustee contends that the Funds are property of the
Beitdashtoo bankruptcy estate. Upon information and belief, the Funds constitute the
Debtor's compensation and/or reimbursement of expenses while employed by
HEMETAF.

8.     The HEMETAF Trustee contends that the Funds are property of the
HEMETAF bankruptcy estate. Upon information and belief the HEMETAF Trustee
alleges that the Funds were derived entirely from HEMETAF's business operations or

- 2 -

the sale of HEMETAF assets. Upon information and belief, the HEMETAF Trustee further contends that the Debtor did not give any consideration or, in the alternative, gave insufficient consideration for his receipt of the Funds. Accordingly, upon information and belief, the HEMETAF Trustee asserts that the transfer of the Funds was either a fraudulent conveyance or a transfer for less than reasonably equivalent value. Based upon this, the HEMETAF Trustee believes that the transfers of the Funds can be avoided and recovered for the benefit of the HEMETAF bankruptcy estate.

9.      NRS contends that the Funds are subject to a garnishment that it served upon the chapter 13 trustee in the Beitdashtoo. Upon information and belief, NRS contends that, because Ms. Ahmadpour is the sole owner of HEMETAF, the Funds belong to her. As a result NRS asserts the Funds are subject to NRS' garnishment. According to NRS the Funds must be turned over to it.

10.     The parties have not been able to resolve their competing claims to the Funds.

WHEREFORE, Donald F. King, Trustee, by counsel, requests that the Court enter an order determining that the Funds belong to the Beitdashtoo bankruptcy estate and for such other relief as this Court deems appropriate.

> Respectfully submitted,
> **Donald F. King, Trustee**
> By counsel

- 3 -

/s/ James W. Reynolds

**James W. Reynolds, Esquire, VSB No. 33226**
**Counsel for Donald F. King, Trustee**
**ODIN FELDMAN & PITTLEMAN PC**
**1775 Wiehle Avenue, Suite 400**
**Reston, Virginia 20190**
**Direct: 703-218-2134**
**Fax: 703-218-2160**
**E-Mail: Jim.Reynolds@ofplaw.com**

#1790773v1 jwrpl-beitdashtoo complaint 31070/02384

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA**

_____Alexandria_____ **Division**

**In re** YOURI BEITDASHTOO,          **Case No.** 11-16702-BFK_____

                              **Chapter** 7____

**Debtor(s)**

## NOTICE TO DEFER PAYMENT OF CERTAIN FEES

I certify that I am trustee (or debtor in possession) in the above-referenced case and have filed the following action as trustee (or debtor in possession); that the estate is without funds for payment of the required fee and the money on deposit in the debtor's estate is presently less than the fee for filing this action; and this deferral was not initiated by a creditor. I hereby defer payment of this filing fee until the conclusion of the case and the determination that there is an estate realized. A deferred fee (liability) shall be disclosed in the trustee's final account.

          _X_ $293.00 Filing Fee – Complaint

          ___ Reopening Fee (deferral applicable only to trustee)
               Chapter 7 - $260.00
               Chapter 11 - $1,000.00
               Chapter 13 - $235.00
               Chapter 12 - $200.00

          ___ Fee for docketing an appeal/cross appeal ($293.00)

          ___ Motion to Convert to Chapter 7 ($15.00)

                                        Signature of Trustee/Debtor in Possession

Date: September    , 2012

[defercmp ver. 11/11]

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| **YOURI BEITDASHTOO**, | * | **Case No. 11-16702-BFK** |
| | * | Chapter 7 |
| _____Debtor._____ | * | |
| **DONALD F. KING, TRUSTEE**, | * | |
| | * | |
| Plaintiff and | * | |
| Counterclaims Defendant, | * | |
| v. | * | **Adv. Pro. No. 12-01406-BFK** |
| | * | |
| **MARC E. ALBERT, TRUSTEE and** | * | |
| **NATIONWIDE REGISTRY AND** | * | |
| **SECURITY LTD.**, | * | |
| | * | |
| Defendants and | * | |
| Counterclaims Plaintiffs. | * | |

### ORDER

THIS MATTER comes on upon (i) the complaint of Donald F. King, Trustee (the "Beitdashtoo Trustee"), the chapter 7 trustee in this case, for the determination of the bankruptcy estate's interest in certain funds, (ii) the counterclaim of Marc E. Albert, Trustee (the "Hemetaf Trustee"), the chapter 7 trustee in the bankruptcy case filed by HEMETAF, Inc. in the District of Columbia [case number 12-00232] and (iii) the counterclaim of Nationwide Registry and Security Ltd. ("NRS"), and

IT APPEARING that the Beitdashtoo Trustee is currently holding $20,100.00 (the "Funds"); that the Beitdashtoo Trustee, the Hemetaf Trustee and NRS assert ownership interests in the Funds; and that the Hemetaf Trustee and the Beitdashtoo Trustee have reached a settlement, which is subject to Court approval, pertaining to the division of the Funds between the two (2) bankruptcy estates, and

IT FURTHER APPEARING that, pursuant to 11 U.S.C. §363(p)(2), NRS has the burden of proving the validity of its interest in the Funds; and that for the reasons stated

**EXHIBIT**

**L**

in open court on April 19, 2013, NRS has failed to prove its interest in the Funds, it is
therefore

ORDERED that NRS has no interest in the Funds, and it is

FURTHER ORDERED that NRS' counterclaim is denied and dismissed, and it is

FURTHER ORDERED that the Beitdashtoo Trustee's complaint and the Hemetaf
Trustee's counterclaim are hereby stayed pending further order of the Court in
connection with a motion for approval of the settlement between the Beitdastoo Trustee
and the Hemetaf Trustee relating to the Funds, and it is

FURTHER ORDERED that, for purposes of filing an appeal pursuant to Rule
8002 of the Federal Rules of Bankruptcy Procedure ("Rule 8002"), this order shall not
be deemed a final order until such time as this Court enters an order relating to the
motion for approval of the settlement between the Beitdashtoo Trustee and the Hemetaf
Trustee; and that the deadline for appealing this order, pursuant to Rule 8002, shall be
the same deadline for appealing any order entered in this case on the motion for
approval of the settlement between the Beitdashtoo Trustee and the Hemetaf Trustee.

Dated: May 22 2013

/s/ Brian F. Kenney

**BRIAN F. KENNEY**
U.S. Bankruptcy Court

Entered: 5/22/2013 sas

I ask for this:

2

_/s/ James W. Reynolds_
**James W. Reynolds, Esquire, VSB No. 33226**
**Counsel for Donald F. King, Trustee**
**ODIN FELDMAN & PITTLEMAN PC**
**1775 Wiehle Avenue, Suite 400**
**Reston, Virginia  20190**
**Direct:  703-218-2134**
**Fax:  703-218-2160**
**E-Mail:  Jim.Reynolds@ofplaw.com**


Seen and Agreed:


_/s/ Katherine M. Sutcliffe Becker_
**Katherine M. Sutcliffe Becker, Esquire, VSB No. 65256**
**Counsel for Marc E. Albert, Trustee**
**STINSON MORRISON HECKER LLP**
**1775 Pennsylvania Avenue, N.W., Suite 800**
**Washington, D.C.  20006**
**(202) 785-9100**
**kbecker@stinson.com**


Seen and Objected To:


_/s/ Robert L. Vaughn, Jr._
**Robert L. Vaughn, Jr., Esquire, VSB No. 20633**
**Counsel for Nationwide Registry and Security Ltd.**
**O'CONNOR & VAUGHN, LLC**
**11490 Commerce Park Drive, Suite 510**
**Reston, Virginia  20191**
**(703) 689-2100**


PARTIES TO RECEIVE COPIES:

James W. Reynolds, Esquire (to be sent electronically)

3

Katherine M. Sutcliffe Becker, Esquire (to be sent electronically)

Robert L. Vaughn, Jr., Esquire (to be sent electronically)

#2050317v1  jwrpl-order nrs counterclaim  31070/02318

CHAIN BRIDGE FORE
File No. CF182MCL

APPRAISAL OF



LOCATED AT:

4054 41 ST ST.
MCLEAN, VA 22101

CLIENT:

AHMADPOUR, BEITASHTOO & NAHID
4054 41ST ST
MCLEAN, VA 22101

AS OF:

October 27, 2011

BY:

JOHN D. MURPHY

PHONE (703) 356-9590; FAX (703) 821-4045

**EXHIBIT**

tabbies

**M**

## Residential Appraisal Report

CHAIN BRIDGE FOR
File No. CF182MCL

The purpose of this appraisal report is to provide the client with a credible opinion of the defined value of the subject property, given the intended use of the appraisal.

Client Name/Intended User AHMADPOUR, BEITASHTOO & NAHID   E-mail dihanyd@aol.com

Client Address 4054 41ST ST   City MCLEAN   State VA   Zip 22101

Additional Intended User(s) TO BE DETERMINED

Intended Use MARKET

Property Address 4054 41 ST ST.   City MCLEAN   State VA   Zip 22101
Owner of Public Record VAUGHN ROBERT L JR TRUST   County FAIRFAX
Legal Description CHAIN BRIDGE FOREST LT 66 SEC 4
Assessor's Parcel # 31-4-24-66   Tax Year 2011   R.E. Taxes $ 10,798.00
Neighborhood Name CHAIN BRIDGE FOREST   Map Reference 0-F-8   Census Tract 470300
Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)
My research [X] did [ ] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Prior Sale/Transfer: Date 08/06/2011   Price $0   Source(s) TAX RECORDS
Analysis of prior sale or transfer history of the subject property (and comparable sales, if applicable)  SUBJECT HAS NOT SOLD WITHIN LAST 3 YEARS.
SUBJECT LAST TRANSFER $720,000 - 2/2002

Offerings, options and contracts as of the effective date of the appraisal   PROPERTY CURRENTLY ON MARKET FOR $1,410,000 SINCE 10/5/2011.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|---|
| Location [ ] Urban [X] Suburban [ ] Rural | | | Property Values [ ] Increasing [X] Stable [ ] Declining | | | PRICE $000 | AGE (yrs) | One-Unit | 70 % | |
| Built-Up [X] Over 75% [ ] 25-75% [ ] Under 25% | | | Demand/Supply [ ] Shortage [X] In Balance [ ] Over Supply | | | 900 Low | NEW | 2-4 Unit | % | |
| Growth [ ] Rapid [X] Stable [ ] Slow | | | Marketing Time [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | | | 1,800 High | 70 | Multi-Family | % | |
| Neighborhood Boundaries WEST OF POTOMAC RIVER, SOUTH OF RT. 123, SEE ATTACHED | | | | | | 1,150 Pred | 35 | Commercial | 10 % | |
| MAP | | | | | | | | Other PARK | 20 % | |

Neighborhood Description CLOSE TO TRANSPORTAION, SCHOOLS, SHOPPING, AND HOSPITALS. GOOD ACCESS TO MAJOR METROPOLITAN EMPLOYMENT CENTERS. AREA HAS ADEQUATE LOCAL SHOPPING AND SERVICE FACILITIES & EMPLOYMENT CENTERS WITHIN WASHINGT, D.C. REGION. ALL ESSENTIAL SERVICES ARE AVAILABLE.

Market Conditions (including support for the above conclusions)  HOMES IN THIS AREA REMAIN ON THE OPEN MARKET LESS THAN 6 MONTHS WHEN REASONABLY PRICED. THE CURRENT MARKET IS STABLE WITH FAVORABLE RATES. CONCESSIONS UP TO 3 POINTS & PAYING CLOSING COST IS CONSIDERED NORMAL.

Dimensions NO PLAT PROVIDED   Area 13,038 SF/ .030 AC   Shape RECTANGULAR   View AVERAGE
Specific Zoning Classification R-2C   Zoning Description SINGLE FAMILY RESIDENTIAL
Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)
Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No   If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street | [X] | |
| Gas | [ ] | | Sanitary Sewer | [X] | | Alley | | |

Site Comments: THE SUBJECT CONTAINS TYPICAL INGRESS/ EGRESS UTILITY EASEMENTS WHICH DO NOT ADVERSELY AFFECT THE VALUE.

| GENERAL DESCRIPTION | | FOUNDATION | | EXTERIOR DESCRIPTION | materials | INTERIOR | materials |
|---|---|---|---|---|---|---|---|
| Units [X] One [ ] One with Acc. unit | | [ ] Concrete Slab [ ] Crawl Space | | Foundation Walls | CONCRETE/AVG | Floors | HDWD/AVG |
| # of Stories 2 + BASEMENT | | [X] Full Basement [ ] Partial Basement | | Exterior Walls | BRICK/AVG | Walls | PLASTER/AVG |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | | Basement Area 1551 sq. ft. | | Roof Surface | CEDAR WD/AVG | Trim/Finish | CROWN/AVG |
| [X] Existing [ ] Proposed [ ] Under Const. | | Basement Finish 85 % | | Gutters & Downspouts | ALM/AVG | Bath Floor | CERAMIC/AVG |
| Design (Style) COLONIAL | | [X] Outside Entry/Exit [ ] Sump Pump | | Window Type | DH/AVG | Bath Wainscot | CERAMIC/AVG |
| Year Built 1973 | | | | Storm Sash/Insulated | THERMALS/AVG | Car Storage [ ] None | |
| Effective Age (Yrs) 1-5 | | | | Screens | YES/AVG | [X] Driveway # of Cars 2 | |
| Attic [ ] None | | Heating [X] FWA [ ] HW [ ] Radiant | | Amenities | | Driveway Surface ASPHALT/AVG | |
| [ ] Drop Stair [ ] Stairs | | [ ] Other Fuel ELEC | | [X] Fireplace(s) # 2 | Wood Stove(s) # | [X] Garage # of Cars 2 | |
| [ ] Floor [X] Scuttle | | Cooling [X] Central Air Conditioning | | [X] Patio/Deck | Fence | [ ] Carport # of Cars | |
| [ ] Finished [ ] Heated | | [ ] Individual [ ] Other | | [ ] Pool | Porch | [X] Att. [ ] Det. [ ] Built-in | |
| Appliances [X] Refrigerator [X] Range/Oven [X] Dishwasher [X] Disposal [X] Microwave [P] Washer/Dryer [ ] Other (describe) | | | | | | | |
| Finished area above grade contains: 8 Rooms 3 Bedrooms 2.5 Bath(s) 3,201 Square Feet of Gross Living Area Above Grade | | | | | | | |

Additional Features BRICK 2 STORY COLONIAL WITH CEDAR SHAKE ROOF, HARDWOOD FLOORS THROUGHOUT, CROWN MOLDING, FIREPLACES, UPDATED BATHROOMS, MODERN KITCHEN WSTAINLESS STEEL APPLIANCES, SKYLITE, FINISHED BASEMENT W/ EXIT: RECROOM, GAME RM, BEDROOM, BATH. LARGE DECK W/ VIEW OF PARK AND CREEK

Comments on the improvements  FUNCTIONAL UTILITY AVERAGE WITH NO EXTERNAL INADEQUACIES OBSERVED. PROPERTY IS IN AVERAGE CONDITION AND WELL MAINTAINED. THE SUBJECT PROPERTY IS OVER 30 YEARS OLD BUT HAS BEEN MODERNIZED AS NECESSARY AND IS MARKETABLE IN ITS PRESENT CONDITION.

gpar

**Residential Appraisal Report**

CHAIN BRIDGE FOR
File No. CF182MCL

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO. 3 | |
|---|---|---|---|---|---|---|---|
| | 4064 41 ST ST. | 4063 RIDGEVIEW CIRCLE | | 1490 HIGHWOOD DR | | 3851 RIXEY ST | |
| Address | MCLEAN, VA 22101 | MCLEAN, VA 22101 | | MCLEAN, VA 22101 | | ARLINGTON, VA 22207 | |
| Proximity to Subject | | 0.09 miles NE | | 0.15 miles W | | N/A | |
| Sale Price | $ | | $ 1,190,000 | | $ 1,065,000 | | $ 1,096,000 |
| Sale Price/Gross Liv Area | $ 0.00 sq ft | $ 356.50 sq ft | | $ 418.50 sq ft | | $ 309.06 sq ft | |
| Data Source(s) | | MLS | | MLS | | MLS | |
| Verification Source(s) | | TAX RECORD | | TAX RECORD | | TAX RECORD | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | NA | CNVTL DOM 38 | | CNVTL DOM 12 | | CNVTL DOM 37 | |
| Concessions | | SBSDY:$0 | | SBSDY:$1,000 | | SBSDY:$3,500 | |
| Date of Sale/Time | NA | C9/11;S10/11 | | C7/11,S8/11 | | C8/11;S7/11 | |
| Location | CHAIN BRIDGE | CHAIN BRIDGE | | CHAIN BRIDGE | | CHAIN BRIDGE | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 13,038 SF | 11,866 SF | 2,000 | 14,566 SF | -1,000 | 11,571 | 2,000 |
| View | PARK/AVG | AVERAGE | 25,000 | AVERAGE | 25,000 | AVERAGE | 25,000 |
| Design (Style) | COLONIAL | COLONIAL | | CONTEMP | | COLONIAL | |
| Quality of Construction | BRICK/AVG | BRICK/SID/AVG | 5,000 | BRICK/AVG | | BRICK/AVG | |
| Actual Age | 36+/- Years | 37 YEARS | | 42 YEARS | 4,000 | 42 YEARS | 4,000 |
| Condition | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Above Grade | Total / Bdrms / Baths | Total / Bdrms / Baths | | Total / Bdrms / Baths | | Total / Bdrms / Baths | |
| Room Count | 8 / 3 / 2.5 | 9 / 4 / 4 | -7,800 | 8 / 3 / 3 | -2,500 | 10 / 4 / 3.5 | -5,000 |
| Gross Living Area 75.00 | 3,201 sq ft | 3,338 sq ft | -10,300 | 2,557 sq ft | 48,300 | 3,543 sq ft | -25,700 |
| Basement & Finished | 1661 Sq.Ft. | 1668 SQFT | 0 | 1950 SQFT | 19,100 | 1683 SQFT | 5,600 |
| Rooms Below Grade | RR,GM,BR,FB | RR,EX,2BR,FB | -10,000 | RR,BR,FB | 7,500 | BR,FB | 17,500 |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | FWA/CAC | FWA/CAC | | FWA/CAC | | FWA/CAC | |
| Energy Efficient Items | INSULATED | INSULATED | | INSULATED | | INSULATED | |
| Garage/Carport | 2 CAR GARAGE | 2 CAR GARAGE | | 2 CAR GARAGE | | 2 CAR GARAGE | |
| Porch/Patio/Deck | DECK,PATIO | 2DECKS | -5,000 | POOL,CABANA | -25,000 | DECK,PATIO | |
| | MOD KIT | GRANITE KIT | -15,000 | GRANITE KIT | -15,000 | MOD KIT | |
| | 2 FP | 3 FP | -5,000 | 2 FP | | 3 FP | -5,000 |
| Net Adjustment (Total) | | ☐ + ☒ - $ | 20,800 | ☒ + ☐ - $ | 60,400 | ☒ + ☐ - $ | 18,400 |
| Adjusted Sale Price | | Net Adj. -1.7% | | Net Adj. 5.7% | | Net Adj. 1.7% | |
| of Comparables | | Gross Adj. 7.1% | $ 1,169,200 | Gross Adj. 13.8% | $ 1,125,400 | Gross Adj. 8.2% | $ 1,113,400 |

Summary of Sales Comparison Approach  COMP #1 IS MOST RECENT SALE AND CLOSEST IN SIZE. COMP #2 IS CONTEMPORAY STYLE
WITH POOL BUT 3 BEDROOM. COMP #3 IS LARGER IN SIZE TO SUBJECT. SEE COMP #4. REPORTED SALES SHOWN ARE
MOST RECENT FOUND SIMILAR IN STYLE AND CLOSEST IN PROXIMITY.

Site Value Comments  THE ESTIMATED SITE VALUE WAS DERIVED THROUGH ABSTRACTION AND/OR LOCAL SALES. COST
APPROACH SHOULD NOT BE RELIED UPON FOR INSURANCE PURPOSES. THE APPRAISER ASSUMES NO LIABILITY FOR
AND DOES NOT GUARANTEE ANY INSUARABLE VALUE ESTIMATE.

| ESTIMATED ☒ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | = $ | 478,000 |
|---|---|---|---|
| Source of cost data LOCAL BUILDERS | Dwelling 3,201 Sq Ft @ $ 180.00 | = $ | 576,180 |
| Quality rating from cost service | Effective date of cost data CURRENT | Basement 1551 Sq.Ft. Sq Ft @ $ 60.00 | = $ | 93,060 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | 2 FP,DECK,PATIO | = $ | 25,000 |
| Standard cost for homes similar in GLA & quality. Depreciation | Garage/Carport 483 Sq Ft @ $ 30.00 | = $ | 14,490 |
| observed reflects curable short-lived elements (repairs or | Total Estimate of Cost-New | = $ | 708,730 |
| replacements a typical buyer would expect to correct immediately | Less 50 Physical Functional External | | |
| following purchase) and long-lived elements) economic life of entire | Depreciation $38,468 | = $( | 38,468) |
| structure). Land value exceeds 40% land / improvement ratio to | Depreciated Cost of Improvements | = $ | 670,282 |
| positive location factors. | "As-is" Value of Site Improvements | = $ | 10,000 |
| | | | |
| | INDICATED VALUE BY COST APPROACH | = $ | 1,155,300 |

| INCOME APPROACH TO VALUE | | | |
|---|---|---|---|
| Estimated Monthly Market Rent $ NA X Gross Rent Multiplier | = $ | 0 Indicated Value by Income Approach | |

Summary of Income Approach (including support for market rent and GRM)

Indicated Value by: Sales Comparison Approach $ 1,180,000    Cost Approach (if developed) $ 1,155,300    Income Approach (if developed) $ 0
THE SALES COMPARISON APPROACH IS CONSIDERED TO BE THE BEST INDICATION OF VALUE AND IS SUPPORTED BY
THE COST APPROACH. DUE TO LACK OF SALES/RENTAL DATA THE INCOME APPROACH TO VALUE IS NOT CONSIDERED
APPROPRIATE AND WAS NOT USED.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,
☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, ☐ subject to the following
PROPERTY IS IN MARKETABLE CODITION. FINANCING OF COMPARABLES CONSIDERED TYPICAL IN MARKET PLACE.

Based on the scope of work, assumptions, limiting conditions and appraiser's certification, my (our) opinion of the defined value of the real property
that is the subject of this report is $ 1,150,000   as of OCT. 27, 2011                , which is the effective date of this appraisal.



**Residential Appraisal Report**

CHAIN BRIDGE FOR
File No. CF182MCL

| FEATURE | SUBJECT | COMPARABLE SALE NO. 4 | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 | |
|---|---|---|---|---|---|---|---|
| 4064 41 ST ST. | | 6802 CHAIN BRIDGE FORES | | | | | |
| Address MCLEAN, VA 22101 | | MCLEAN, VA 22101 | | | | | |
| Proximity to Subject | | 0.08 miles SSE | | | | | |
| Sale Price | $ | $ 1,030,000 | | $ | | $ | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 439.23 sq. ft. | $ | sq. ft. | $ | sq. ft. | $ |
| Data Source(s) | INSPECTION | MLS | | | | | |
| Verification Source(s) | TAX RECORD | TAX RECORD | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | NA | CNVTL DOM 93 | | | | | |
| Concessions | | SBSDY:$0 | | | | | |
| Date of Sale/Time | NA | C3/11,S6/11 | | | | | |
| Location | CHAIN BRIDGE | CHAIN BRIDGE | | | | | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | | | | |
| Site | 13,038 SF | 13,996 SF | | | | | |
| View | PARK/AVG | AVERAGE | | | | | |
| Design (Style) | COLONIAL | CONTEMP. | | | | | |
| Quality of Construction | BRICK/AVG | BRICK/AVG | | | | | |
| Actual Age | 38+/- Years | 39 YEARS | | | | | |
| Condition | AVERAGE | AVERAGE | | | | | |
| Above Grade | Total / Bdrms / Baths | Total / Bdrms / Baths | | Total / Bdrms / Baths | | Total / Bdrms / Baths | |
| Room Count | 8 / 3 / 2.6 | 8 / 2 / 2 | 2,500 | | | | |
| Gross Living Area 75.00 | 3,201 sq. ft. | 2,345 sq. ft. | 64,200 | sq. ft. | | sq. ft. | |
| Basement & Finished | 1851 Sq.Ft. | 2345 SQFT | -20,800 | | | | |
| Rooms Below Grade | RR,GM,BR,FB | RR,3BR,FB | -10,000 | | | | |
| Functional Utility | AVERAGE | AVERAGE | | | | | |
| Heating/Cooling | FWA/CAC | FWA/CAC | | | | | |
| Energy Efficient Items | INSULATED | INSULATED | | | | | |
| Garage/Carport | 2 CAR GARAGE | 2 CAR GARAGE | | | | | |
| Porch/Patio/Deck | DECK,PATIO | PATIO | 10,000 | | | | |
| | MOD KIT | MOD KIT | | | | | |
| | 2 FP | 2 FP | | | | | |
| Net Adjustment (Total) | | [X] + [ ] - $ | 45,900 | [X] + [ ] - $ | 0 | [X] + [ ] - $ | 0 |
| Adjusted Sale Price | | Net Adj. 4.5% | | Net Adj. 0.0% | | Net Adj. 0.0% | |
| of Comparables | | Gross Adj. 10.4% $ | 1,075,900 | Gross Adj. 0.0% $ | 0 | Gross Adj. 0.0% $ | 0 |
| Summary of Sales Comparison Approach | COMP #4 IS OLDER SALE SIMILAR IN APPEAL BUT FEWER UPDATES. | | | | | | |

gpar

## Scope of Work, Assumptions and Limiting Conditions

Scope of work is defined in the Uniform Standards of Professional Appraisal Practice as " the type and extent of research and analyses in an assignment." In short, scope of work is simply what the appraiser did and did not do during the course of the assignment. It includes, but is not limited to: the extent to which the property is identified and inspected, the type and extent of data researched, the type and extent of analyses applied to arrive at opinions or conclusions.

The scope of this appraisal and ensuing discussion in this report are specific to the needs of the client, other identified intended users and to the intended use of the report. This report was prepared for the sole and exclusive use of the client and other identified intended users for the identified intended use and its use by any other parties is prohibited. The appraiser is not responsible for unauthorized use of the report.

The appraiser's certification appearing in this appraisal report is subject to the following conditions and to such other specific conditions as are set forth by the appraiser in the report. All extraordinary assumptions and hypothetical conditions are stated in the report and might have affected the assignment results.

1. The appraiser assumes no responsibility for matters of a legal nature affecting the property appraised or title thereto, nor does the appraiser render any opinion as to the title, which is assumed to be good and marketable. The property is appraised as though under responsible ownership.

2. Any sketch in this report may show approximate dimensions and is included only to assist the reader in visualizing the property. The appraiser has made no survey of the property.

3. The appraiser is not required to give testimony or appear in court because of having made the appraisal with reference to the property in question, unless arrangements have been previously made therefor.

4. Neither all, nor any part of the content of this report, copy or other media thereof (including conclusions as to the property value, the identity of the appraiser, professional designations, or the firm with which the appraiser is connected), shall be used for any purposes but the client and other intended users as identified in this report, nor shall it be conveyed by anyone to the public through advertising, public relations, news, sales, or other media, without the written consent of the appraiser.

5. The appraiser will not disclose the contents of this appraisal report unless required by applicable law or as specified in the Uniform Standards of Professional Appraisal Practice.

6. Information, estimates, and opinions furnished to the appraiser, and contained in the report, were obtained from sources considered reliable and believed to be true and correct. However, no responsibility for accuracy of such items furnished to the appraiser is assumed by the appraiser.

7. The appraiser assumes that there are no hidden or unapparent conditions of the property, subsoil, or structures, which would render it more or less valuable. The appraiser assumes no responsibility for such conditions, or for engineering or testing, which might be required to discover such factors. This appraisal is not an environmental assessment of the property and should not be considered as such.

8. The appraiser specializes in the valuation of real property and is not a home inspector, building contractor, structural engineer, or similar expert, unless otherwise noted. The appraiser did not conduct the intensive type of field observations of the kind intended to seek and discover property defects. The viewing of the property and any improvements is for purposes of developing an opinion of the defined value of the property, given the intended use of this assignment. Statements regarding condition are based on surface observations only. The appraiser claims no special expertise regarding issues including, but not limited to: foundation settlement, basement moisture problems, wood destroying (or other) insects, pest infestation, radon gas, lead based paint, mold or environmental issues. Unless otherwise indicated, mechanical systems were not activated or tested.

This appraisal report should not be used to disclose the condition of the property as it relates to the presence/absence of defects. The client is invited and encouraged to employ qualified experts to inspect and address areas of concern. If negative conditions are discovered, the opinion of value may be affected.

Unless otherwise noted, the appraiser assumes the components that constitute the subject property improvement(s) are fundamentally sound and in working order.

Any viewing of the property by the appraiser was limited to readily observable areas. Unless otherwise noted, attics and crawl space areas were not accessed. The appraiser did not move furniture, floor coverings or other items that may restrict the viewing of the property.

9. Appraisals involving hypothetical conditions related to completion of new construction, repairs or alteration are based on the assumption that such completion, alteration or repairs will be competently performed.

10. Unless the intended use of this appraisal specifically includes issues of property insurance coverage, this appraisal should not be used for such purposes. Reproduction or Replacement cost figures used in the cost approach are for valuation purposes only, given the intended use of the assignment. The Definition of Value used in this assignment is unlikely to be consistent with the definition of Insurable Value for property insurance coverage use.

11. The ACI General Purpose Appraisal Report (GPAR™) is not intended for use in transactions that require a Fannie Mae 1004/Freddie Mac 70 form, also known as the Uniform Residential Appraisal Report (URAR).

**Additional Comments Related To Scope Of Work, Assumptions and Limiting Conditions**
PROPERTY IS CONSIDERED TO BE IN VERY GOOD CONDITION. MARKETING TIME IS ESTIMATED TO BE 1-6 MONTHS AT INDICATED VALUE. HOWEVER PROPERTY SHOULD SELL QUICKLY WITH CURRENT FAVORABLE RATES.



This form Copyright © 2005-2019 ACI Division of ISO Claims Services, Inc.. All Rights Reserved.
(GPAR™) General Purpose Appraisal Report
GPARLM_05 011 2000

CHAIN BRIDGE FOR
File No. CF182MCL

## Appraiser's Certification

The appraiser(s) certifies that, to the best of the appraiser's knowledge and belief:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are the appraiser's personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3. Unless otherwise stated, the appraiser has no present or prospective interest in the property that is the subject of this report and has no personal interest with respect to the parties involved.

4. The appraiser has no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

5. The appraiser's engagement in this assignment was not contingent upon developing or reporting predetermined results.

6. The appraiser's compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

7. The appraiser's analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

8. Unless otherwise noted, the appraiser has made a personal inspection of the property that is the subject of this report.

9. Unless noted below, no one provided significant real property appraisal assistance to the appraiser signing this certification. Significant real property appraisal assistance provided by:

Additional Certifications:

Definition of Value:  [X] Market Value    [ ] Other Value:

Source of Definition: UNIVERSAL STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE, 2010-2011 EDITION
"THE MOST PROBABLE PRICE WHICH A PROPERTY SHOULD BRING IN A COMPETITIVE AND OPEN MARKET UNDER ALL CONDITIONS REQUISITE TO A FAIR SALE, THE BUYER AND SELLER EACH ACTING PRUDENTLY AN KNOWLEDGEABLY, AND ASSUMING THE PRICE IS NOT AFFECTED BY UNDUE STIMULUS. IMPLICIT IN THIS DEFINITION IS THE CONSUMMATION OF A SALE AS OF A SPECIFIED DATE AND THE PASSING OF TITLE FROM SELLER TO BUYER UNDER CONDITIONS WHEREBY:
1) BUYER AND SELLER ARE TYPICALLY MOTIVATED;
2) BOTH PARTIES ARE WELL INFORMED OR WELL ADVISED, AND ACTING WHAT THEY CONSIDER THEIR OWN BEST INTERESTS;
3) A REASONABLE TIME IS ALLOWED IN FOR EXPOSURE IN THE OPEN MARKET;
4) PAYMENT IS MADE IN TERMS OF CASH IN U.S. DOLLARS OR IN TERMS OF FINANCIAL ARRANGEMENTS COMPARABLE THERTO; AND
5) THE PRICE REPRESENTS THE NORMAL CONSIDERATION FOR THE PROPERTY SOLD UNAFFECTED BY SPECIAL OR CREATIVE FINANCING OR SALES CONCESSIONS GRANTED BY ANYONE ASSOCIATED WITH THE SALE."

ADDRESS OF THE PROPERTY APPRAISED:
4004 41 ST ST
MCLEAN, VA 22101
EFFECTIVE DATE OF THE APPRAISAL: October 27, 2011
APPRAISED VALUE OF THE SUBJECT PROPERTY $ 1,150,000

| APPRAISER | SUPERVISORY APPRAISER |
|---|---|
| Signature: | Signature: |
| Name: JOHN B MURPHY | Name: |
| State Certification # 4001 003071 | State Certification # |
| or License # | or License # |
| or Other (describe):          State #: | State: |
| State: VA | Expiration Date of Certification or License: |
| Expiration Date of Certification or License: 12/31/2011 | Date of Signature: |
| Date of Signature and Report: 10/28/2010 | Date of Property Viewing: |
| Date of Property Viewing: OCT. 27, 2011 | Degree of property viewing: |
| Degree of property viewing: | [ ] Interior and Exterior  [ ] Exterior Only  [ ] Did not personally view |
| [X] Interior and Exterior  [ ] Exterior Only  [ ] Did not personally view | |

**gpar**

Produced using ACI software, 800.234.8727 www.aclweb.com
Page 2 of 2

This form Copyright © 2005-2010 ACI Division of 660 Corona Services, Inc., All Rights Reserved.
gPAR™ General Purpose Appraisal Report 04/2010
GPAR_04 .09 041 10000

Murphy Appraisals

SUBJECT PROPERTY PHOTO ADDENDUM

| | |
|---|---|
| Name: AHMADPOUR, MITAJINTOO & NAHID | File No.: CF18SMCL |
| Property Address: 6864 41 ST ST. | Case No.: CHAIN BRIDGE FOREST |
| City: MCLEAN | State: VA | Zip: 22101 |



**FRONT VIEW OF
SUBJECT PROPERTY**

Appraised Date: October 27, 2011
Appraised Value: $ 1,150,000



**REAR VIEW OF
SUBJECT PROPERTY**



**STREET SCENE**

**COMPARABLE PROPERTY PHOTO ADDENDUM**

| | File No.: CS15 | |
|---|---|---|
| | Case No.: CHASE STONE FOREST | |
| City: MCLEAN | State: VA | Zip: 22101 |



COMPARABLE SALE #1

**4083 RIDGEVIEW CIRCLE**
**MCLEAN, VA 22101**
Sale Date: C9/11;S10/11
Sale Price: $ 1,190,000



COMPARABLE SALE #2

**1490 HIGHWOOD DR**
**MCLEAN, VA 22101**
Sale Date: C7/11,S8/11
Sale Price: $ 1,085,000



COMPARABLE SALE #3

**3851 RIXEY ST**
**ARLINGTON, 22207**
Sale Date: C8/11;S7/11
Sale Price: $ 1,098,000

COMPARABLE PROPERTY PHOTO ADDENDUM

| | | | |
|---|---|---|---|
| Owner/Client: AHMADZADEH, RUYA HTOO & NAHID | | File No.: CF182MCL | |
| Property Address: 4064 41 ST ST. | | Case No.: CHAIN BRIDGE FOREST | |
| City: MCLEAN | State: VA | Zip: 22101 | |



**COMPARABLE SALE #4**

**5802 CHAIN BRIDGE FORES**
MCLEAN, VA 22101
Sale Date: C3/11,88/11
Sale Price: $ 1,030,000

**COMPARABLE SALE #5**

Sale Date:
Sale Price: $

**COMPARABLE SALE #6**

Sale Date:
Sale Price: $

| CASE: AHMADPOUR MIRTASHTOO & NAHID | | File No.: CF183MCI |
| Property Address: 4084 41 ST ST. | | Case No.: CHAIN BRIDGE FOREST |
| City: MCLEAN | State: VA | Zip: 22101 |



KITCHEN



LIVING ROOM



DINING ROOM



**HALF BATH**



**RECROOM**



**BASEMENT BEDROOM**



| Case: AFHARROUD, MUTASHIBOO A NANID | | | File No.: CP166MCL |
|---|---|---|---|
| Property Address: 4694 41 ST ST. | | | Case No.: CHAIN BRIDGE FOREST |
| City: MCLEAN | | State: VA | Zip: 22101 |



BASEMENT BATH



MASTER BEDROOM



SITTING ROOM





MASTER BATH



FULL BATH



BEDROOM



**LOCATION MAP**

| | | |
|---|---|---|
| Client: AHMADPOUR, BEITASHTOO & NAHID | | File No.: CF182MCL |
| Property Address: 4054 41 ST ST. | | Case No.: CHAIN BRIDGE FOREST |
| City: MCLEAN | State: VA | Zip: 22101 |



George Washington Memorial Parkway

Grady Randall Ct

Comparable Sale 2
1490 Highwood Dr
McLean, VA 22101
(0.15 miles W)

Subject
4054 41ST St N
McLean, VA 22101

Comparable Sale 1
4063 Ridgeview Circle
McLean, VA 22101
(0.09 miles NE)

41ST St N

N River St

Upton St

Comparable Sale 4
5802 Chain Bridge Forest Ct
McLean, VA 22101
(0.09 miles SSE)

N Ridgeview Rd

40TH St N

N Stuart St

Comparable Sale 3
3651 RIXEY ST
ARLINGTON, 22101

© 2010 NAVTEQ  © AND  © 2011 Microsoft Corporation

0.17 mile

| Client: AHMADPOUR, MOTASHTOO & NAHID | | File No.: CF16MCL | |
| Property Address: 4064 41 ST ST. | | Case No.: CHAIN BRIDGE FOREST | |
| City: MCLEAN | State: VA | Zip: 22101 |

DEPARTMENT OF PROFESSIONAL AND OCCUPATIONAL REGULATION
COMMONWEALTH OF VIRGINIA

9960 Mayland Dr., Suite 400, Richmond, VA 23233
Telephone 1 (804) 367-8500

EXPIRES ON
12-31-2011

NUMBER
4001 000071

REAL ESTATE APPRAISER BOARD
CERTIFIED RESIDENTIAL REAL ESTATE APPRAISER

JOHN D MURPHY IV
1551 EVERS DR

MCLEAN VA 22101

CHAIN BRIDGE FOR
File No. CF182MCL

********* INVOICE *********

File Number: CF182MCL                          OCT. 26, 2011

YOURI SALON
1800 I ST. N.W.
WAHINGTON, DC 20006

Invoice # :           182
Order Date :
Reference/Case # :   CHAIN BRIDGE FOREST
PO Number :

RESIDENTIAL APPRAISAL REPORT

4054 41 ST ST.
MCLEAN, VA 22101

| | | | |
|---|---|---|---|
| APPRAISAL REPORT FEE | | $ | 400.00 |
| PAID BY CHECK | | $ | -400.00 |
| Invoice Total | | $ | 0.00 |
| State Sales Tax @ | | $ | 0.00 |
| Deposit | | ($ | ) |
| Deposit | | ($ | ) |
| Amount Due | | $ | 0.00 |

Terms:  PAID BY CHECK

Please Make Check Payable To:

MURPHY APPRAISAL SERVICES
1551 EVERS DR.
MCLEAN, VA 22101

Fed. I.D. #: 54-1007635

THANK YOU FOR YOUR BUSINESS

# APPRAISAL REPORT

## OF



4054 41St Street N
McLean, Va 22101-5805

# PREPARED FOR

Robert Vaughn
O'Connor & Vaughn, LLC
11490 Commerce Park Dr. Suite 510
Reston Va., Va. 20191

# AS OF

10/18/2011

# PREPARED BY

William Roth Real Estate Appraisal
PO Box 549
Purcellville, Va 20134



EXHIBIT

N

tabbies®

William Roth Real Estate Appraisal

File No.   10172011
Case No.   00029

# Table of Contents

| Page Title | Page # |
|---|---|
| Summary of Salient Features | 1 |
| Residential Appraisal Page 1 | 2 |
| Residential Appraisal Page 2 | 3 |
| Residential Appraisal Page 3 | 4 |
| Flood Map | 5 |
| Photo Subject | 6 |
| Photo Subject Extra | 7 |
| Photos (6) | 8 |
| Zoning Map | 9 |
| Photo Comparables 1-2-3 | 10 |
| Location Map | 11 |
| Sales Location Map | 12 |
| Appraiser Disclosure Statement | 13 |
| Limiting Conditions | 14 |

William Roth Real Estate Appraisal
PO Box 549
Purcellville, Va 20134

---

10/26/2011

O'Connor & Vaughn, LLC
11490 Commerce Park Dr. Suite 510
Reston Va., Va. 20191

RE:     Ahmadpour, Nahid
        4054 41St Street N
        McLean, Va 22101-5805
File No.   10172011
Case No.  00029

Dear   Vaughn

In accordance with your request, I have personally inspected and prepared an appraisal report of the real property located at:

                    4054 41St Street N, McLean, Va 22101-5805

The purpose of this appraisal is to estimate the market value of the property described in the body of this appraisal report.

Enclosed, please find the appraisal report which describes certain data gathered during our investigation of the property.  The methods of approach and reasoning in the valuation of the various physical and economic factors of the subject property are contained in this report.

An inspection of the property and a study of pertinent factors, including valuation trends and an analysis of neighborhood data, led the appraiser to the conclusion that the market value, as of  10/18/2011 is:

                    $        1,070,000

The opinion of value expressed in this report is contingent upon the limiting conditions attached to this report.

It has been a pleasure to assist  you.  If I may be of further service to you in the future, please let me know.

Respectfully submitted,

Signature: _William Roth_____

William Roth

William Roth Real Estate Appraisal

# SUMMARY OF SALIENT FEATURES

File No.   10172011
Case No.   00029

## SUBJECT INFORMATION

| | |
|---|---|
| **Subject Address** | 4054 41St Street N |
| **Legal Description** | CHAIN BRIDGE FOREST LT 66 SEC 4 |
| **City** | McLean |
| **County** | Fairfax |
| **State** | Va |
| **Zip Code** | 22101-5805 |
| **Census Tract** | 4703.00 |
| **Map Reference** | see map |

## SALES PRICE

| | |
|---|---|
| **Sale Price** | $ |
| **Date of Sale** | 10/17/2011 |

## CLIENT

| | |
|---|---|
| **Borrower** | Ahmadpour, Nahid |
| **Lender/Client** | O'Connor & Vaughn, LLC |

## DESCRIPTION OF IMPROVEMENTS

| | |
|---|---|
| **Size (Square Feet)** | 3400 |
| **Price per Square Foot** | $ 0.00 |
| **Location** | McLean |
| **Age** | 38 yrs |
| **Condition** | Good |
| **Total Rooms** | 7 |
| **Bedrooms** | 3 |
| **Baths** | 2.5 |

## APPRAISER

| | |
|---|---|
| **Appraiser** | William Roth |
| **Date of Appraised Value** | 10/18/2011 |

## VALUE

| | |
|---|---|
| **Final Opinion of Value $** | 1,070,000 |

Case 18-00039   Document 9-1   Filed 05/01/19   Page 78 of 90

File No.  10172011
Case No.  00029

## Residential Appraisal Report

The purpose of this summary appraisal report is to provide the client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

Property Address 4054 41St Street N  City McLean  State Va  Zip Code 22101-5805
Owner Ahmadpour, Nahid  Intended User Robert Vaughn and/or assigns  County Fairfax
Legal Description CHAIN BRIDGE FOREST LT 66 SEC 4
Assessor's Parcel # 31-4-24--66  Tax Year 2011  R.E. Taxes $ 10,086.00
Neighborhood Name Chain Bridge Forest  Map Reference see map  Census Tract 4703.00
Occupant X Owner | Tenant | Vacant  Special Assessments $ NA  | X | PUD  HOA $ 60  X per year | per month
Property Rights Appraised | X | Fee Simple | Leasehold | Other (describe)
Intended Use Establish opinion of value.
Client O'Connor & Vaughn, LLC  Address 11490 Commerce Park Dr. Suite 510, Reston Va., Va. 20191
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? X Yes | No
Report data source(s) used, offerings price(s), and date(s). MLS: FX7702897, Re/Max Preferred; Heather Bennett. $1,410,000.00 DOM 251

**CONTRACT**

I | did | X | did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. NA

Contract Price $  Date of Contract  Is the property seller the owner of public record? | Yes | No Data Source(s)
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the purchaser? | Yes | No
If Yes, report the total dollar amount and describe the items to be paid.

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | Present Land Use % |
|---|---|---|---|
| Location | Urban | X Suburban | Rural | Property Values | Increasing | X Stable | Declining | PRICE | AGE | One-Unit | 90 % |
| Built-Up | X Over 75% | 25-75% | Under 25% | Demand/Supply | Shortage | X In Balance | Over Supply | $ (000) | (yrs) | 2-4 Unit | % |
| Growth | Rapid | X Stable | Slow | Marketing Time | Under 3 mths | X 3-6 mths | Over 6 mths | 800 Low | 35 | Multi-Family | % |
| | | | | | | | | 1m+ High | 50 | Commercial | 5 % |
| | | | | | | | | 900 Pred. | 40 | Other open | 5 % |

Neighborhood Boundaries Chain Bridge Forest- see location map
Neighborhood Description A sought after location of older, renovated home with good access to Wash./McLean/CIA and other economic centers. Neighborhood has mature plantings, is well laid out, considered desirable.

Market Conditions (including support for the above conclusions) Market conditions are still slow with signs of improvement in the lower end. Mid and upper range activity has picked up, but prices remain low.

**SITE**

Dimensions See Site Map for Area Calculation  Area 0.30 Acres  Shape Rectangular  View Wooded
Specific Zoning Classification R-2C(R-2 W/Cluster Dev)  Zoning Description Single Family Detached
Zoning Compliance X Legal | Legal Nonconforming (Grandfathered Use) | No Zoning | Illegal (describe)
Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? X Yes | No If No, describe.

Utilities Public Other (describe)  Public Other (describe)  Off-site Improvements--Type  Public Private
Electricity X | Above ground  Water X  Street Asphalt  X
Gas X  Sanitary Sewer X  Alley None
FEMA Special Flood Hazard Area | Yes | X No FEMA Flood Zone X  FEMA Map # 51059C0170E  FEMA Map Date 09/17/2010
Are the utilities and/or off-site improvements typical for the market area? X Yes | No If No, describe.
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? | Yes | X No If Yes, describe.
No adverse environmental conditions were observed during the property inspection affecting the subject or surrounding area. Pre 1978 home with no evidence of peeling or flaking paint. Mold inspection not included in scope of report. Homes built prior to 1978 have potential for lead based paint.

**IMPROVEMENTS**

| General Description | Foundation | Exterior Description materials/condition | Interior materials/condition |
|---|---|---|---|
| Units X One | One with Accessory Unit | Concrete Slab | Crawl Space | Foundation Walls Concblk | Floors Wood/Cer |
| # of Stories 2+ | | X Full Basement | Partial Basement | Exterior Walls Brick/Sdg | Walls Drywall |
| Type X Det | Att. | S-Det/End Unit | Basement Area 1,200 sq. ft. | Roof Surface Shake | Trim/Finish Wood |
| X Existing | Proposed | Under Const. | Basement Finish 50% % | Gutters & Downspouts Aluminum | Bath Floor Ceramic |
| Design (Style) Dutch Colonial | | X Outside Entry/Exit X Sump Pump | Window Type Casement | Bath Wainscot Ceramic |
| Year Built 1973 | Evidence of | Infestation No | Storm Sash/Insulated Yes | Car Storage None |
| Effective Age (Yrs) 10 | Dampness | Settlement | Screens Yes | X Driveway # of Cars 2 |
| Attic None | Heating X FWA | HWBB | Radiant | Amenities Woodstove(s) # | Driveway Surface Asphalt |
| X Drop Stair | Stairs | Other Fuel Gas/Elec | X Fireplace(s) # 2 | Fence | X Garage # of Cars 2 |
| Floor | Scuttle | Cooling X Central Air Conditioning | X Patio/Deck Both X Porch Front | Carport # of Cars |
| Finished | Heated | Individual | Other | Pool Other | Att. Det. X Built-in |

Appliances P Refrigerator X Range/Oven X Dishwasher X Disposal X Microwave P Washer/Dryer | Other (describe)
Finished area above grade contains: 7 Rooms 3 Bedrooms 2.5 Bath(s) 3400 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.) Hardwood, ceramic, soapstone, handcrafted columns, skylights, removal of walls to open up floor plan, 2 zone heat/air, alarm, relatively new (2008-09) roof
Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). Subject is in overall good condition with upgrades and renovation evident through out.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? | Yes | X No If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? X Yes | No If No, describe Homes in the neighborhood are made up of different styles; contemporary, colonial, split, single level and Dutch colonial. Most were built in the 70's and 80's, subsequently renovated/enlarged.

NL - Residential 5/2007  This form may be reproduced unmodified without written permission, however, Bradford Technologies, Inc. must be acknowledged and credited.
Produced by ClickFORMS Software 800-622-8727  Page 2 of 14

File No.   10172011
Case No.   00029

## Residential Appraisal Report

| There are | 4 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ | | 1,099,000 | to $ | | 1,600,000 |
|---|---|---|---|---|---|---|---|
| There are | 6 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ | | 827,000 | to $ | | 1,190,000 |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 4054 41St Street N | 4063 Ridgeview Cir. | | 1490 Highwood Dr. | | 4042 41st Street | |
| | McLean, Va 22101-5805 | McLean, Va 22101 | | McLean, Va 22101 | | McLean, Va 22101 | |
| Proximity to Subject | | 0.09 miles NE | | 0.16 miles W | | 0.10 miles S | |
| Sale Price | $ | | $   1,190,000 | | $   1,065,000 | | $   827,000 |
| Sale Price/Gross Liv. Area | $   0.00   sq. ft. | $   356.50   sq. ft. | | $   416.50   sq. ft. | | $   273.48   sq. ft. | |
| Data Source(s) | MLS/PR | FX7659536 | | FX7844757 | | FX7494344 | |
| Verification Source(s) | Inspection | MLS/PR | | MLS/PR | | MLS/PR | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | Available | Conventional | | Conventional | | Conventional | |
| Concessions | N/A | N/A | | $1,000 | | $10,000 | |
| Date of Sale/Time | 10/17/2011 | 10/18/2011 | | 8/18/2011 | | 2/14/2011 | |
| Location | McLean | McLean | | McLean | | McLean | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 0.30 Acres | 0.27 Acres | | 0.33 Acres | | 0.27 Acres | |
| View | Wooded | Wooded | | Wooded | | Suburban | +20,000 |
| Design (Style) | Dutch Colonial | Spanish Colonial | | Contemporary | | Colonial | |
| Quality of Construction | Good | Good | | Good | | Good | |
| Actual Age | 38 yrs | 37 yrs | | 42 yrs | | 39 yrs | |
| Condition | Good | Good | | Good | | Fair | +82,000 |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 7   3   2.5 | 9   4   3.50 | -20,000 | 7   3   2.50 | | 9   4   2.50 | |
| Gross Living Area | 3400   sq. ft. | 3,338   sq. ft. | +3,100 | 2,557   sq. ft. | +42,150 | 3,024   sq. ft. | +18,800 |
| Basement & Finished | Full/1,200 sf | Full | | Full | | Full | |
| Rooms Below Grade | 50% | Superior | -15,000 | Superior | -15,000 | Inferior | +15,000 |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA/Central | FWA/Central | | FWA/Central | | FWA/Central | |
| Energy Efficient Items | Yes | Yes | | Yes | | Yes | |
| Garage/Carport | 2 Car Gar. Blt-In | 2 Car Gar. Att | 0 | 2 Car Gar. Att | 0 | 2 Car Gar. Att | 0 |
| Porch/Patio/Deck | Patio,Deck/Both,Porch/Fi | Patio,Deck,Porch | | Patio,Deck,Porch | | Patio | +15,000 |
| Fireplaces | 2 Fireplaces | 3 Fireplaces | -2,500 | 2 Fireplaces | 0 | 3 Fireplaces | -2,500 |
| | | | | Pool/Hrdsc | -20,000 | | |
| | | | | | | | |
| Net Adjustment (Total) | | [ ] + [X] - | $   -34,400 | [X] + [ ] - | $   7,150 | [X] + [ ] - | $   148,300 |
| Adjusted Sale Price | | Net Adj: -3% | | Net Adj: 1% | | Net Adj: 18% | |
| of Comparables | | Gross Adj : 3% | $ 1,155,600 | Gross Adj: 7% | $ 1,072,150 | Gross Adj: 19% | $   975,300 |

[ X ] did   did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research [ X ] did   did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)   MLS/PR - see below
My research   did [ X ] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)   MLS/PR

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 2/11/2002 | 11/17/2009 | 8/29/2008 | 9/04/1974 |
| Price of Prior Sale/Transfer | $720,000 | $975,000 | $1,012,000 | $130,000 |
| Data Source(s) | MLS/PR | PR/MLS | PR/MLS | PR/MLS |
| Effective Date of Data Source(s) | 10/17/2011 | 10/17/2011 | 10/17/2011 | 10/17/2011 |

Analysis of prior sale or transfer history of the subject property and comparable sales   Subject indicates two other transfers, 9/26/2005: Adding second name
(Beitashtoo) to owner list; 8/5/2011: Transfer to Trustee- no consideration given. Comp sales listed above.

Summary of Sales Comparison Approach   The subject is a nice home in a nice neighborhood. Chain Bridge Forest is an area of 35+ year homes that have
been renovated over the years. There have been a few new homes built on out lots but those are few and not in this report. There are currently 4
available of which the subject is one. Over the past year, 6 have sold. The 2nd location map is included to illustrate the relationship of the available
and sold properties. It was noticed that the exterior styles differ, but the interior of those seen have been "opened up" to create a larger feel during
the restoration process. The subject has received similar treatment. The location is the primary influence upon value as the homes are generally small
for million dollar properties. The close proximity to Washington DC, McLean, Tyson's, the CIA all contribute to this desirability. All aspects have been
bracketed with the exception of square footage. The subject is slightly larger and adjusted for same.

Indicated Value by Sales Comparison Approach $   1,070,000

Indicated Value by: Sales Comparison Approach $   1,070,000   Cost Approach (if developed) $   1,015,411   Income Approach (if developed) $
Greatest consideration given to the sales comparison approach, which appraiser finds most reliable indicator of market value. The market data
approach is supported by the cost approach. Income approach is not utilized in this report.

This appraisal is made [ X ] "as is,"   subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed,   subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or   subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$   1,070,000   , as of   10/18/2011   .

NL - Residential 5/2007   This form may be reproduced unmodified without written permission, however, Bradford Technologies, Inc. must be acknowledged and credited.
Produced by ClickFORMS Software 800-622-8727   Page   3 of 14

William Roth Real Estate Appraiser

File No.    10172011
Case No.    00029

## Residential Appraisal Report

**ADDITIONAL COMMENTS**

**COST APPROACH TO VALUE (if applicable)**

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    3 acre and above lots are supported by land appraisals in files. Small lot land values are extracted by residual land value method and supported by wholesale transfers of similar lots to builders. Most small lots are not sold in the retail market. Lots in the area are typically purchased for home building and not for income purposes. Accordingly, the income approach lacks rationale and is not used in this report.

| ESTIMATED | | REPRODUCTION OR | X | REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | | =$ | 450,000 |
|---|---|---|---|---|---|---|---|---|---|---|
| Source of cost data   M&S, Local Builders | | | | | Dwelling | 3400 | Sq. Ft. @ $ | 135.00 | =$ | 459,000 |
| Quality rating from cost service | B | | Effective date of cost data  10/01/2011 | Bsmt. | 1,500 | Sq. Ft. @ $ | 65.00 | =$ | 97,500 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | | | | | | | | |
| Cost figures are based on local builder prices for homes of subject | | | | | Garage/Carport | 483 | Sq. Ft. @ $ | 45.00 | =$ | 21,735 |
| quality. Physical depreciation is calculated based upon remaining life of | | | | | Total Estimate of Cost-new | | | | =$ | 578,235 |
| limited life systems. No functional obsolescence or external depreciation | | | | | Less | Physical | 10 | Functional | External | |
| was noted. Land/Improvement ratio is typical for the area. Approximately | | | | | Depreciation | 57,824 | 0 | 0 | =$ ( | 57,824 ) |
| 10 years of depreciation used out of 60. | | | | | Depreciated Cost of Improvements | | | | =$ | 520,411 |
| | | | | | *As-is* Value of Site Improvements | | | | =$ | 45,000 |
| Estimated Remaining Economic Life (HUD and VA only) | | 50 | | Years | Indicated Value By Cost Approach | | | | =$ | 1,015,411 |

**INCOME APPROACH TO VALUE (if applicable)**

| Estimated Monthly Market Rent $ | X Gross Multiplier | =$ | Indicated Value by Income Approach |
|---|---|---|---|
| Summary of Income Approach (including support for market rent and GRM) | | | |

**PROJECT INFORMATION FOR PUDs (if applicable)**

Is the developer/builder in control of the Homeowner's Association (HOA)?   | Yes | X | No   Unit type(s)   | X | Detached       | Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | | Total number of units | | Total number of units sold | |
|---|---|---|---|---|---|
| Total number of units rented | | Total number of units for sale | | Data source(s) | |

Was the project created by the conversion of existing building(s) into a PUD?   | Yes |    No  If Yes, date of conversion.

Does the project contain any multi-dwelling units?   | Yes |    No   Data source.

Are the units, common elements, and recreation facilities complete?   | Yes |    No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowner's Association?   | Yes |    No   If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

William Roth Real Estate Appraisal
## FLOOD MAP ADDENDUM

File No.   10172011
Case No.   00029

| Borrower | Ahmadpour, Nahid | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 4054 41St Street N | | | | | | |
| City  McLean | | County | Fairfax | State | Va | Zip Code | 22101-5805 |
| Lender/Client | O'Connor & Vaughn, LLC | | Address   11490 Commerce Park Dr. Suite 510, Reston Va., Va. 20191 | | | | |



## Flood Map Legends

### Flood Zones

Area inundated by 500-year flooding

Area outside of the 100 and 500 year flood plains

Area inundated by 100-year flooding

Area inundated by 100-year flooding with velocity hazard

Floodway area

Floodway areas with velocity hazard

Area of undetermined but possible flood hazard

Area not mapped on any published FIRM

## Flood Zone Determination

SFHA (Flood Zone): **Out**
Within 250 ft. of multiple flood zone? **No**
Community: **515525**
Community Name: **UNINCORPORATED AREA**
Zone: **X**   Panel: **51059C 0170E**   Panel Date: **09/17/2010**
FIPS Code: **51059**   Census Tract: **4703.00**

This Flood Report is for the sole benifit of the Customer that ordered and paid for the Report and is based on the property information provided by the customer. That customer's use of this report is subject to the terms agreed by that customer when accessing this product. No third party is authorized to use or rely on this report for any purpose. NEITHER FIRST AMERICAN FLOOD DATA SERVICES NOR THE SELLER OF THIS REPORT MAKES ANY REPRESENTATIONS OR WARRANTIES TO ANY PARTY CONCERNING THE CONTENT ACCURACY OR COMPLETENESS OF THIS REPORT INCLUDING ANY WARRANTY OR MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. Neither FAFDS nor the seller of this Report shall have any liability to any third party for any use or misuse of this Report.

William Roth Real Estate Appraisal
**SUBJECT PHOTO ADDENDUM**

File No.   10172011
Case No.   00029

| Borrower | Ahmadpour, Nahid | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 4054 41St Street N | | | | | | |
| City  McLean | | County | Fairfax | State | Va | Zip Code | 22101-5805 |
| Lender/Client | O'Connor & Vaughn, LLC | | Address | 11490 Commerce Park Dr. Suite 510, Reston Va., Va. 20191 | | | |



**FRONT OF
SUBJECT PROPERTY**
4054 41St Street N
McLean, Va 22101-5805



**REAR OF
SUBJECT PROPERTY**



**STREET SCENE**

William Roth Real Estate Appraisal
**SUBJECT PHOTO ADDENDUM**

File No.   10172011
Case No.   00029

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | Ahmadpour, Nahid | | | | | |
| Property Address | 4054 41St Street N | | | | | |
| City   McLean | | County | Fairfax | State | Va | Zip Code   22101-5805 |
| Lender/Client | O'Connor & Vaughn, LLC | | Address | 11490 Commerce Park Dr. Suite 510, Reston Va., Va. 20191 | | |



Rear



Living Room



Dining Room

William Roth Real Estate Appraisal

File No.    10172011
Case No.    00029

| Borrower | Ahmadpour, Nahid | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 4054 41St Street N | | | | | | |
| City  McLean | | County | Fairfax | State | Va | Zip Code | 22101-5805 |
| Lender/Client | O'Connor & Vaughn, LLC | | Address | 11490 Commerce Park Dr. Suite 510, Reston Va., Va. 20191 | | | |



Kitchen-Breakfast area



Bedroom



Bath



Bedroom



LL Rec Room



Master BR

William Roth Real Estate Appraisal
**ZONING LOCATION MAP**

File No. 10172011
Case No. 00029

| Borrower | Ahmadpour, Nahid | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 4054 41St Street N | | | | | | |
| City McLean | | County | Fairfax | State | Va | Zip Code | 22101-5805 |
| Lender/Client | O'Connor & Vaughn, LLC | | Address | 11490 Commerce Park Dr. Suite 510, Reston Va., Va. 20191 | | | |



Fairfax County

http://icare.fairfaxcounty.gov/Forms/PrintMap.aspx?pin=0314 24 0...

MAP #: 0314 24 0066
AHMADPOUR NAHID

4054 41ST ST N

Aerial Imagery © 2007 Commonwealth of Virginia

Source: Fairfax County Department
of Tax Administration, Real Estate Division.

1 of 1

10/16/2011 11:38 AM

William Roth Real Estate Appraisal
COMPARABLES 1-2-3

File No.   10172011
Case No.   00029

| Borrower | Ahmadpour, Nahid | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 4054 41St Street N | | | | | | |
| City McLean | | County | Fairfax | State | Va | Zip Code | 22101-5805 |
| Lender/Client | O'Connor & Vaughn, LLC | | Address | 11490 Commerce Park Dr. Suite 510, Reston Va., Va. 20191 | | | |



**COMPARABLE SALE #**   1
4063 Ridgeview Cir.
McLean, Va 22101



**COMPARABLE SALE #**   2
1490 Highwood Dr.
McLean, Va 22101



**COMPARABLE SALE #**   3
4042 41st Street
McLean, Va 22101

William Roth Real Estate Appraisal
**LOCATION MAP ADDENDUM**

File No. 10172011
Case No. 00029

| Borrower | Ahmadpour, Nahid | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 4054 41St Street N | | | | | | |
| City McLean | | County | Fairfax | State | Va | Zip Code | 22101-5805 |
| Lender/Client | O'Connor & Vaughn, LLC | | Address | 11490 Commerce Park Dr. Suite 510, Reston Va., Va. 20191 | | | |



William Roth Real Estate Appraisal
**SALES LOCATION MAP**

File No. 10172011
Case No. 00029

| Borrower | Ahmadpour, Nahid | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 4054 41St Street N | | | | | | |
| City McLean | | County Fairfax | | State | Va | Zip Code | 22101-5805 |
| Lender/Client | O'Connor & Vaughn, LLC | | Address | 11490 Commerce Park Dr. Suite 510, Reston Va., Va. 20191 | | | |



Matrix

http://matrix.mris.com/Matrix/Public/MapPrint.aspx?c=AAEAAAD*...

| | Stat | ML# | Address | List Price | BR | FB | HB Type | Adv Subdiv |
|---|---|---|---|---|---|---|---|---|
| | Act | FX7702897 | 4054 41st St N | $1,410,000 | 4 | 3 | 1 Detached | CHAIN BRIDGE FOREST |
| | Act | FX7683684 | 4056 41st St N | $1,325,000 | 5 | 3 | 1 Detached | CHAIN BRIDGE FOREST |
| | Act | FX7660779 | 5829 Upton St | $1,099,000 | 5 | 3 | 1 Detached | CHAIN BRIDGE FOREST |
| | Act | FX7327000 | 1515 Highwood Dr | $1,600,000 | 10 | 6 | 2 Detached | CHAIN BRIDGE FOREST |
| | Sold | FX7659536 | 4063 Ridgeview Cir | $1,299,000 | 6 | 5 | 0 Detached | CHAIN BRIDGE FOREST |
| | Sold | FX7644757 | 1490 Highwood Dr | $1,099,000 | 4 | 3 | 1 Detached | CHAIN BRIDGE FOREST |
| | Sold | FX7489885 | 5802 Chain Bridge Forest... | $1,069,000 | 5 | 3 | 0 Detached | CHAIN BRIDGE FOREST |
| | Sold | FX7516132 | 1509 Highwood Dr | $1,149,000 | 4 | 3 | 1 Detached | CHAIN BRIDGE FOREST |
| | Sold | FX7494344 | 4042 41st St N | $915,000 | 5 | 3 | 1 Detached | CHAIN BRIDGE FOREST |
| | Sold | FX7371826 | 5834 Upton St | $1,090,000 | 5 | 3 | 0 Detached | CHAIN BRIDGE FOREST |

1 of 1

10/26/2011 11:00 AM

# APPRAISER DISCLOSURE STATEMENT

**Appraiser:**

Name of Appraiser: William Roth

Class of Certification/Licensure:
☐ Certified General
☐ Certified Residential
☒ Licensed Residential
☐ Temporary  ☐ General  ☒ Licensed
☐ Registered Real Estate Appraiser Assistant

Certification/Licensure Number: 4001 006222

Scope:  This Report  ☒ is within the scope of my Certification or License.
☐ is not within the scope of my Certification or License.

Service Provided by:  ☒ Disinterested & Unbiased Third Party
☐ Interested & Biased Third Party
☐ Interested Third Party on Contingent Fee Basis

**Supervisor:**

Name of Supervisor: _____

Class of Certification/Licensure:
☐ Certified General
☐ Certified Residential
☐ Licensed Residential
☐ Temporary  ☐ General  ☐ Licensed

Certification/Licensure Number: _____

Scope:  This Report  ☐ is within the scope of my Certification or License.
☐ is not within the scope of my Certification or License.

Service Provided by:  ☐ Disinterested & Unbiased Third Party
☐ Interested & Biased Third Party
☐ Interested Third Party on Contingent Fee Basis

Signature of person preparing and reporting the Appraisal

*William Roth*

William Roth

Signature of Supervisor: _____

_____

This form must be included in conjunction with all appraisal assignments or specialized services performed by a state-certified or state-licensed real estate appraiser.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

## STATEMENT OF LIMITING CONDITIONS

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1.   The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2.   The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3.   The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4.   The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5.   The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6.   The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazard wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7.   The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8.   The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9.   The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10.   The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgage or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.